# In The United States Court of Federal Claims

No. 04-1726T

(Filed: November 15, 2006)

**This Order Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.**

EUGENE A. FISHER, Trustee, Seymour P. Nagan Irrevocable Trust, *
Plaintiff, *
v. *
THE UNITED STATES, *
Defendant. *

**ORDER**

This tax refund suit is before the court on plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment.

I.

Briefly, the core facts are as follows: In 1990, the Seymour P. Nagan Irrevocable Trust (the Trust) purchased a life insurance policy from Sun Life Assurance Company (Sun Life), a Canadian mutual life insurance and financial services company. The policy was a "participating policy" which entitled the holder to receive dividends from the company declared out of surplus. In addition, the policy holder was entitled to distributions from the company in the event of liquidation and to vote on the election of directors and certain other matters. On October 20, 1999, the eligible policyholders of Sun Life voted to convert the company into a stock company, Sun Life Financial Services, Inc. (Financial Services). As part of this "demutualization," Sun Life distributed the full value of the company to its participating policy holders through the issuance of shares of Financial Services stock. Eligible policyholders transferred to Sun Life their voting rights and right to receive a distribution in the event of solvent liquidation.

As part of this transaction, the Trust received 3,892 shares of Financial Services stock in exchange for its voting and liquidation rights. The Trust sold those shares on the open market for $31,579.00. It reported this amount, unreduced by any basis adjustment, on its federal income tax return for 2000 and paid the tax of $5,725.00 On February 11, 2004, plaintiff filed a timely claim for refund of the $5,725.00, and, upon that claim being denied, filed the instant suit.

II.

The Trust first asserts that the proceeds from the sale of the Financial Services stock should be deemed a distribution by Sun Life of a policy dividend, or the equivalent thereof, and should be excluded from gross income as a return of capital under the annuity rules of section 72 of the Code (Title 26). In this regard, section 72(a) generally provides that gross income includes any amount received as an annuity. Section 72(e) provides special rules applicable to amounts "received under [a] . . . life insurance contract" that are "not received as an annuity." 26 U.S.C. § 72(e)(1)(A). Treas. Reg. § 1.72-1(d) provides that "amounts not received as an annuity" and before the annuity starting date "are generally includible in the gross income of the recipient only to the extent that such amounts, when added to all amounts previously received under the contract which were excludable from the gross income of the recipient under the income tax law applicable at the time of receipt, exceed the premiums or other consideration paid." But, plaintiff did not receive the $31,579.00 at issue as a distribution under its life insurance contract with Sun Life, but rather received those proceeds upon an entirely unrelated sale of the stock it received in the demutualization. Indeed, had plaintiff received cash in exchange for its voting and liquidation rights, the exchange would not have been tax-free under section 354 of the Code.[1] Hence, the court perceives no basis for treating those proceeds as being received "under" a life insurance contract, at least as that term is ordinarily understood.[2] Plaintiff has provided neither

---

[1] The court, however, disagrees with defendant's claim that the application of section 354 of the Code to the distribution of the stock precludes section 72 treatment under that portion of section 72(e)(1)(A) which states that the rule provided thereby applies only "if no provision of this subtitle (other than this subsection) applies with respect to such amount." The latter language seemingly refers to situations in which the tax treatment of a received distribution to the recipient is directly controlled by another provision, such as 26 U.S.C. §§ 101 or 104. *See* Treas. Reg. § 1.72-2(b)(1)(i) (referring to the listed sections). Such is not the case here. Indeed, one cannot imagine any distribution under an insurance or annuity contract that would not, at some level of the transaction, implicate another provision of subtitle A of the Internal Revenue Code (26 U.S.C. §§ 1-1501). Defendant's interpretation of section 72(e) thus would render that section essentially moribund.

[2] *See* The American Heritage Dictionary 1874 (4th ed. 2000) ("under" means "[s]ubject to the restraint or obligation of" or "[i]n view of; because of"); *Fitch v. Atomic Energy Comm'n*, 491 F.2d 1392, 1395-96 (C.C.P.A. 1974) (invention made "under" a contract " where it is "specifically provided for by that contract"); *Hoffheins v. Heslop*, 210 A.2d 841, 843 (D.C. App. 1965) (payment not "under" the contract where "entirely unrelated"); *see also In re Brothers*, 94

authority nor even a cohesive theory to the contrary.[3] Accordingly, section 72(e) avails plaintiff naught.

The Trust next argues that there was no capital gain realized on the sale of the Financial Services Stock because the proceeds were offset by the Trust's basis in the stock. Plaintiff essentially argues that a portion of the premiums it paid were for the voting and liquidation rights that it exchanged for the stock. As such, it contends that under section 358(a)(1) of the Code, it acquired a basis in the Sun Life stock equal to the basis in the ownership rights surrendered. While defendant does not dispute the applicability of section 358(a)(1), it argues, as a matter of law and based upon the meager evidence in the record, that the voting and liquidation rights were worthless. Yet, all of the cases that it cites appear to hinge on the individual facts presented, most of which involved interests very different from those impacted here – none of these cases suggest a universal rule or at least a rule that applies upon the undisputed facts of this case. *See, e.g.*, *Paulsen v. Comm'r*, 469 U.S. 131, 140-41 (1985) (shares in savings & loan did not have significant value where debt characteristics of shares greatly outweighed their equity characteristics).[4] Indeed, while questions on this issue abound, including, *inter alia*, the consistency of the claimed tax treatment with how Sun Life treated its transactions with plaintiff and other policy holders, there is some indication that the voting and liquidation rights may have had some value, not only because Sun Life had a surplus of nearly over $5.7 billion as of June 30, 1999, but also because the Sun Life stock exchanged, at least in part, for those rights apparently had value. To the extent that the voting and liquidation rights had some value that would diminish the amount of income that would be taxed here. In short, the court views the amount of the premiums that should be attributed to the liquidation and voting rights as a material question of fact that cannot be resolved on the record presented and thus requires a trial.

---

B.R. 82, 85 (1988) ("payments made 'under an insurance policy' are those made on the occurrence of a future contingency for which the insured and the insurance carrier have contracted").

[3] Certainly, nothing in *Moseley v. Comm'r*, 72 T.C. 183 (1979) warrants a different conclusion. That case did not involve the question whether a particular distribution was "under" an insurance contract.

[4] Defendant cites various cases in which courts have refused to allocate basis among items for which a single consideration was paid. *See*, *e.g.*, *Lane Bryant, Inc. v. United States*, 35 F.3d 1570, 1575 (Fed. Cir. 1994); *Stokely-Van Camp, Inc. v. United States*, 974 F.2d 1319, 1325-26 (Fed. Cir. 1992). In these cases, however, the taxpayer attempted to make a basis allocation that was contradicted by the purchase agreement. *See*, *e.g.*, *Lane-Bryant*, 35 F.3d at 1575; *Stokely-Van Camp*, 974 F.2d at 1325-26; *see also Comm'r v. Danielson*, 378 F.2d 771 (3d Cir. 1967), *cert. denied*, 389 U.S. 858 (1967). Such is not the case here. Nor do any of the revenue rulings cited by defendant control this question, as they involve at least arguably different facts. *See*, *e.g.*, Rev. Rul. 71-233, 1971-1 C.B. 113 (holding that shareholder's basis in proprietary interest was zero because no portion of premiums created such interest).

The court will not tarry on any of the other issues raised by the parties, which issues, to the extent left unresolved here, this court believes are best resolved in the context of the trial that will be scheduled herein. Accordingly, plaintiff's motion for partial summary judgment is hereby **DENIED** and defendant's cross-motion for summary judgment is hereby **DENIED**. On or before December 15, 2006, the parties shall file a joint status report proposing a schedule for a trial to commence no later than May 1, 2007, and indicating the location thereof.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge