# Sun Life of Canada's Plan to Demutualize

Notice of Special Meeting of Eligible Policyholders

and

Policyholder Information Circular

October 20, 1999

Sun Life Assurance Company of Canada

EXPANDING OUR HORIZONS

JOINT EXHIBIT 1

PENGAD-Bayonne, N. J.

DEFENDANT'S EXHIBIT

SL-0143

SUN LIFE ASSURANCE COMPANY OF CANADA

NOTICE OF A PUBLIC HEARING
TO ELIGIBLE POLICYHOLDERS RESIDENT IN THE UNITED STATES
OR WHOSE POLICY IS ADMINISTERED BY
SUN LIFE OF CANADA IN THE UNITED STATES
ON THE PLAN TO CONVERT FROM
A MUTUAL COMPANY TO A COMPANY WITH COMMON SHARES

The Commissioner of Insurance of the State of Michigan (the "Michigan Insurance Commissioner") has scheduled a public hearing pursuant to section 212(3) of the Michigan Insurance Code and Administrative Rule 500.2139. The purpose of the hearing is to consider the plan by Sun Life Assurance Company of Canada ("Sun Life of Canada") to convert from a mutual company to a company with common shares (the "Conversion Plan") adopted by the Board of Directors of Sun Life of Canada on September 28, 1999. Eligible policyholders and other interested persons will be given the opportunity at the hearing to present data, views, comments and arguments with respect to the Conversion Plan.

THE PUBLIC HEARING WILL BE HELD AT THE LAW AUDITORIUM, G. MENNEN WILLIAMS BUILDING, 525 WEST OTTAWA STREET, LANSING, MICHIGAN ON NOVEMBER 22, 1999 BEGINNING AT 10:00 A.M. (EASTERN STANDARD TIME).

The Conversion Plan is described in Part 1 of the Policyholder Information Circular, which includes as Schedule A a copy of the Conversion Plan and the exhibits to the Conversion Plan. Until the Conversion Plan is approved or disapproved by the Minister of Finance of Canada, a copy of the Policyholder Information Circular, including the Conversion Plan, may be examined by any eligible policyholder between the hours of 9:00 a.m. and 5:00 p.m. (Eastern Standard Time) at the principal offices of Sun Life of Canada, Secretary's Department, 150 King Street West, Toronto, Canada, in the United States offices of Sun Life of Canada, One Sun Life Executive Park, Wellesley Hills, Massachusetts or at the offices of Dykema Gossett PLLC, 800 Michigan National Tower, Lansing, Michigan, except on days on which those offices are closed for business.

Before it can become effective, the Conversion Plan must be approved by (i) the Michigan Insurance Commissioner pursuant to section 5915 of the Michigan Insurance Code, (ii) not less than two-thirds of the votes cast by Sun Life of Canada's voting eligible policyholders, (iii) other applicable regulatory authorities and (iv) the Minister of Finance of Canada pursuant to section 237(1) of the *Insurance Companies Act* (Canada). The Minister of Finance of Canada must also approve the issuance of Letters Patent of Conversion to effect the Conversion Plan.

The Notice of Hearing is addressed to each policyholder resident in the United States or whose policy is administered by Sun Life of Canada in the United States who is believed by Sun Life of Canada to be eligible to vote on the Conversion Plan and who is shown in the records of Sun Life of Canada to be resident in the United States or having a policy that is administered by Sun Life of Canada in the United States. Any eligible policyholder wishing to submit a written statement concerning the Conversion Plan for consideration by the Michigan Insurance Commissioner may do so by mailing or delivering a copy of that statement to the attention of The Honorable Frank M. Fitzgerald, Michigan Insurance Commissioner, Michigan Insurance Bureau, Department of Commerce, 611 West Ottawa, 2nd Floor, Lansing, Michigan 48933-7720, so that it is received no later than November 22, 1999. Any eligible policyholder wishing to make an oral statement at the hearing should mail or deliver a written notice of his or her intent to make an oral statement to the attention of The Honorable Frank M. Fitzgerald, Michigan Insurance Commissioner, at the same address, so that it is received no later than November 15, 1999. The Michigan Insurance Commissioner has reserved the right to restrict the length of any oral statement.

POLICYHOLDERS DO NOT NEED TO APPEAR AT THE HEARING OR SUBMIT ANY STATEMENTS TO THE PRESIDING OFFICER IN ORDER TO CONTINUE THEIR POLICIES OR TO PROTECT THEIR RIGHT TO RECEIVE ANY PAYMENT OR OTHER CONSIDERATION TO WHICH THEY MAY BE ENTITLED UNDER THE CONVERSION PLAN.

October 20, 1999

This Policyholder Information Circular contains information about Sun Life of Canada's plan to demutualize. You should read it carefully before you vote on the Demutualization Resolution.

Part 1 of this Policyholder Information Circular describes Sun Life of Canada's Conversion Plan and explains why the Sun Life of Canada Board unanimously recommends that you vote in favour of it.

Part 2 of this Policyholder Information Circular provides you with all material information about Sun Life of Canada and the common shares of the company that will become Sun Life of Canada's new holding company through the demutualization. Almost all eligible policyholders will have common shares of the holding company issued to them as their demutualization benefits.

The information in this Policyholder Information Circular is current as of September 28, 1999, unless otherwise indicated.

---

**Exchange Rates**

All references to Can.$ and dollars are to Canadian dollars, unless otherwise indicated. The following chart should help you to convert Canadian dollars to United States dollars, United Kingdom pounds, Philippine pesos and Hong Kong dollars by showing exchange rates for those currencies.

| | September 17, 1999 | December 31, 1998 |
|---|---|---|
| United States dollar | 0.680 | 0.645 |
| United Kingdom pound | 0.419 | 0.389 |
| Philippine peso | 27.248 | 25.000 |
| Hong Kong dollar | 5.280 | 5.000 |

For example, at September 17, 1999, Can.$100 expressed in U.S. dollars would be equal to U.S.$68.00 (Can.$100 x 0.680). Similarly, Can.$100 expressed in U.K. pounds would be equal to £41.90 (Can.$100 x 0.419), Can.$100 expressed in Philippine pesos would be equal to 2,724.80 Philippine pesos (Can.$100 x 27.248) and Can.$100 expressed in Hong Kong dollars would be equal to H.K.$528.00 (Can.$100 x 5.280).

For more information on exchange rates, see Part 2 of this Policyholder Information Circular under "Exchange Rate Information".

---

The Office of the Superintendent of Financial Institutions of Canada has reviewed Sun Life of Canada's plan to convert from a mutual life insurance company to a company with common shares but does not make any recommendation to eligible policyholders as to how to vote on the plan.

A copy of this Policyholder Information Circular has been registered with the Registrar of Companies as required by section 342C(2)(a) of the Companies Ordinance of Hong Kong. Neither the Securities & Futures Commission of Hong Kong nor the Registrar of Companies in Hong Kong takes any responsibility as to the contents of this Policyholder Information Circular. If you are in any doubt about this Policyholder Information Circular, you should consult your stockbroker, bank manager, solicitor, professional accountant or other professional advisor.

---

SUN LIFE ASSURANCE COMPANY OF CANADA

## NOTICE OF SPECIAL MEETING OF ELIGIBLE POLICYHOLDERS

**NOTICE IS HEREBY GIVEN** that a Special Meeting of eligible policyholders of Sun Life Assurance Company of Canada ("Sun Life of Canada") will be held at Roy Thomson Hall, 60 Simcoe Street, Toronto, Ontario, Canada, on Wednesday, December 15, 1999 at 10:00 a.m. (Toronto time), for the following purposes:

1. to consider and, if thought fit, to pass, with or without variation, a special resolution (the "Demutualization Resolution"):

   (a) approving the plan (the "Conversion Plan") to convert Sun Life of Canada from a mutual company to a company with common shares, substantially on the terms of the Conversion Plan attached as Schedule A to Part 1 of the Policyholder Information Circular;

   (b) confirming amendments to the by-laws of Sun Life of Canada necessary to implement the Conversion Plan and the restatement of those by-laws; and

   (c) authorizing the application by Sun Life of Canada's Board of Directors to the Minister of Finance of Canada for approval of the Conversion Plan and the issuance of Letters Patent of Conversion under the *Insurance Companies Act* (Canada) to effect the Conversion Plan; and

2. to transact any other business that may properly come before the Special Meeting or any continuation of the Special Meeting after an adjournment.

The text of the Demutualization Resolution is attached as Schedule B to Part 1 of the Policyholder Information Circular. The Policyholder Information Circular and A Guide to Sun Life of Canada's Plan to Demutualize for eligible policyholders that accompany this notice provide additional information relating to the Conversion Plan and are incorporated in and form part of this notice.

**DATED** at Toronto, Ontario, Canada this 20th day of October, 1999.

BY ORDER OF THE BOARD OF DIRECTORS

James E. Henkel
Vice President and Corporate Secretary

**It is expected that most eligible policyholders will vote by proxy through the mail and not in person at the Special Meeting. To vote by proxy through the mail, eligible policyholders should complete, sign, date and return the accompanying Voting Form. The form will be used at the Special Meeting or any continuation of the Special Meeting after an adjournment. To be valid, the Voting Form must be mailed to the address shown on the reverse of the Voting Form and received at that address by Monday, December 13, 1999. For your convenience, a reply envelope is enclosed for you to return the Voting Form.**

**You can also deliver the Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999.**

**Voting Forms returned by fax will not be accepted.**

*If you have questions about the proposed demutualization, please call Sun Life of Canada at one of the following numbers:*

| | *If calling within the country* | *If calling from outside the country* |
|---|---|---|
| *Canada* | *1 800 786-5433* | *1 506 862-2197* |
| *United States* | *1 888 891-8145* | *1 617 483-4207* |
| *United Kingdom* | *0845 606 6622* | *44 117 980 7258* |
| *Philippines* | *878-9800 (Metro Manila)*<br>*1-800-1-888-8786 (Provinces)* | *632 878-9800* |
| *Hong Kong* | *2103-8988* | *852 2103-8188* |

*Alternatively, you can visit Sun Life of Canada's Web site at www.sunlife.com or e-mail Sun Life of Canada through the Web site.*

# Policyholder Information Circular

## PART 1 & PART 2

**Part 1**

Table of Contents – Part 1 .......... (i)
Schedules .......... 91

**Part 2**

Table of Contents – Part 2

**Documents enclosed with the Policyholder Information Circular**

A Guide to Sun Life of Canada's Plan to Demutualize
Your Share Allocation Statement
Your Voting Form

Sun Life Assurance Company of Canada

EXPANDING OUR HORIZONS

## TABLE OF CONTENTS – PART 1

# POLICYHOLDER INFORMATION CIRCULAR – PART 1


1. OVERVIEW OF DEMUTUALIZATION
   - 1.1 What is a Demutualization? . . . 1
   - 1.2 Sun Life of Canada's Conversion Plan . . . 1
   - 1.3 Demutualization Benefits . . . 1
     - Initial Public Offering . . . 2
     - Form of Demutualization Benefits . . . 2
     - Eligible Policyholders in Canada, United States, United Kingdom, Philippines and Bermuda – Principal Jurisdictions . . . 2
     - Eligible Policyholders in Hong Kong, Republic of Ireland, Channel Islands and Isle of Man – Secondary Jurisdictions . . . 3
     - Eligible Policyholders in All Other Countries – Other Jurisdictions . 3
     - Special Rules . . . 3
   - 1.4 Protecting Policyholders' Interests . . . 4
   - 1.5 Reorganization . . . 4
   - 1.6 Regulatory Approvals . . . 4
   - 1.7 Experts' Opinions . . . 4
   - 1.8 Special Meeting . . . 5
   - 1.9 Voting . . . 6
     - How to Return Your Voting Form . . . 6
     - How to Vote in Person . . . 6
     - Number of Votes . . . 6
   - 1.10 Timetable . . . 7
2. RECOMMENDATION OF SUN LIFE OF CANADA BOARD . . . 8
3. WHY SUN LIFE OF CANADA IS DEMUTUALIZING . . . 8
   - 3.1 Background . . . 8
   - 3.2 Board Review . . . 9
   - 3.3 Advantages of Demutualization . . . 9
     - Benefits of Share Ownership . . . 9
     - Aligning Interests . . . 10
     - Entire Value for Eligible Policyholders . . . 10
     - Access to Capital . . . 11
     - Flexibility to Develop and Grow . . . 11
     - Competing Effectively . . . 11
     - Greater Management Accountability . . . 11
   - 3.4 Disadvantages of Demutualization and Responses of Sun Life of Canada Board . . . 12
     - Loss of Mutual Structure . . . 12
     - Loss of Voting Control . . . 12
     - Shareholders' Separate Interests . . . 13
     - Increased Exposure to Take-Over . . . 13
     - Additional Costs to be Incurred . . . 14
     - Potential Tax and Social Benefits Consequences . . . 14
   - 3.5 Alternatives Considered . . . 15
     - Retaining the Mutual Structure as It Is . . . 15
     - Retaining the Mutual Structure and Increasing Policy Dividends . . 15
     - Selling Sun Life of Canada . . . 16
     - Selling Subsidiaries . . . 16
     - Closing to New Business . . . 16
     - Creating a Mutual Holding Company . . . 17
   - 3.6 What Happens if the Conversion Plan is Not Approved? . . . 17
4. YOUR DEMUTUALIZATION BENEFITS . . . 18
   - 4.1 Conversion Plan . . . 18




SL-0148

4.2 Eligible Policyholders . . . . . 18
Who is the Owner of an Eligible Policy? . . . . . 18
What is an In Force Policy? . . . . . 19
4.3 Exchange of Ownership Rights . . . . . 19
4.4 Allocation of Financial Services Shares . . . . . 20
Two Components . . . . . 20
Individual Life Insurance Policies . . . . . 21
Group Insurance Policies . . . . . 22
4.5 Number of Financial Services Shares Allocated . . . . . 25
4.6 Share Allocation Statement . . . . . 25
4.7 Form of Demutualization Benefits . . . . . 26
4.8 Financial Services Shares . . . . . 27
Principal and Secondary Jurisdictions . . . . . 27
Other Jurisdictions and Minors - Mandatory Sale . . . . . 28
4.9 Cash from Sun Life of Canada . . . . . 29
Summary of Opinion as to Cash in Lieu of Financial Services Shares . . . . . 29
4.10 Policy Credits . . . . . 30
Form of Policy Credits . . . . . 30
Value of Policy Credits . . . . . 31
Summary of Opinion on Policy Credits . . . . . 31
4.11 Cash and Share Elections . . . . . 31
Principal Jurisdictions - Cash Election . . . . . 31
Secondary Jurisdictions - Share Election . . . . . 31
Information about Elections . . . . . 31
Benefits and Risks of Keeping and Selling Financial Services Shares . . . . . 32
How Shares Will be Sold . . . . . 33
Receiving Cash Proceeds . . . . . 33
4.12 Representations of Eligible Policyholders Who Sell Shares in Connection with the Initial Public Offering . . . . . 34
Non-Canadian Policyholders . . . . . 34
Canadian Policyholders . . . . . 34
4.13 Initial Public Offering . . . . . 34
Plan for Initial Public Offering . . . . . 34
Role of the Underwriters . . . . . 35
Size and Price of Initial Public Offering . . . . . 35
Prospectus . . . . . 36
Completion of Initial Public Offering . . . . . 37
Summary of Opinion on Access to Public Markets . . . . . 37
4.14 Listing on the Stock Exchanges . . . . . 37
4.15 Estimated Value of Benefits . . . . . 38
Summary of Valuation Report and Valuation Opinion . . . . . 38
Initial Share Price and Market Trading Price . . . . . 38
4.16 Holding Your Financial Services Shares . . . . . 39
4.17 Share Selling Service . . . . . 39
4.18 Right to Receive Demutualization Benefits . . . . . 39

5. DISTRIBUTION RULES . . . . . 40
5.1 Title Restrictions . . . . . 40
Assignments as Security and Liens or Other Security Interests . . . . . 40
Tax Liens and Garnishments . . . . . 40
Bankruptcy . . . . . 40
Other Title Restrictions . . . . . 40
5.2 Effect of Title Restrictions on Distribution of Demutualization Benefits . . . . . 41




SL-0149

Principal Jurisdictions . . . . . 41
Secondary Jurisdictions and Other Jurisdictions . . . . . 41
Policy Credits . . . . . 41
Interest . . . . . 41
5.3 Special Ownership Considerations . . . . . 41
Principal Jurisdictions and Secondary Jurisdictions . . . . . 41
Other Jurisdictions . . . . . 43
Other Special Ownership Considerations . . . . . 43
Governments and Government Agencies . . . . . 43
5.4 Conflicting Rights or Fiduciary Duties . . . . . 44
5.5 Policyholders Who Cannot Be Located . . . . . 44
Entitlement to Demutualization Benefits . . . . . 44
Principal Jurisdictions . . . . . 44
Secondary Jurisdictions . . . . . 45
Other Jurisdictions and Minors . . . . . 45
Policy Credits . . . . . 45
Claiming Demutualization Benefits . . . . . 45
Interest . . . . . 45
6. HOW TO VOTE . . . . . 46
6.1 Only Eligible Policyholders are Entitled to Vote . . . . . 46
6.2 There are Two Ways to Vote . . . . . 46
Vote by Proxy through the Mail . . . . . 46
Attend the Special Meeting . . . . . 47
6.3 Discretionary Authority . . . . . 47
6.4 Returning the Voting Form . . . . . 47
6.5 Revocation of Voting Forms . . . . . 47
6.6 Results of Vote . . . . . 48
6.7 Solicitation of Votes . . . . . 48
7. POLICYHOLDER COMMUNICATIONS . . . . . 49
7.1 News Releases . . . . . 49
7.2 Annual Report to Policyholders . . . . . 49
7.3 Information Brochures . . . . . 49
7.4 Information Mailing to Policyholders . . . . . 49
7.5 Market Research Study . . . . . 49
7.6 Notice to Policyholders with Lapsed Policies . . . . . 49
7.7 Policyholder Information Sessions . . . . . 50
7.8 Call Centres . . . . . 50
7.9 Web Site . . . . . 50
7.10 United Kingdom and Related Transfers . . . . . 50
7.11 Hong Kong Transfer . . . . . 51
7.12 Philippines Transfer . . . . . 51
7.13 Further Information . . . . . 51
8. FINANCIAL SERVICES AND CORPORATE REORGANIZATION . . . . . 52
8.1 Financial Services . . . . . 52
8.2 Corporate Reorganization . . . . . 52
United Kingdom and Related Insurance Business . . . . . 52
Philippines . . . . . 53
Hong Kong . . . . . 53
Other Jurisdictions . . . . . 54
Alternative Arrangements . . . . . 54
9. ONGOING RIGHTS OF PARTICIPATING POLICYHOLDERS . . . . . 55
9.1 Protection of Policyholders' Interests . . . . . 55
9.2 Restructuring of Participating and Other Accounts . . . . . 55

Participating Policies of Sun Life of Canada (Canada, United States and Philippines) . . . . 55
Transferred Participating Policies (United Kingdom and Hong Kong) . . . . 56
Account Arrangements Generally . . . . 57
9.3 Dividend Policy For Participating Policies . . . . 57
Participating Policies of Sun Life of Canada (Canada, United States and Philippines) . . . . 57
Transferred Participating Policies (United Kingdom and Hong Kong) . . . . 57
9.4 Voting Rights . . . . 58
Participating Policyholders . . . . 58
Participating Policyholders Voting in Sun Life of Canada . . . . 58
Shareholders of Financial Services . . . . 59

10. SUMMARIES OF ACTUARIAL OPINIONS . . . . 60
10.1 Actuarial Opinions . . . . 60
10.2 Appointed Actuary . . . . 60
Summary of Opinion of Appointed Actuary . . . . 60
10.3 Independent Actuary . . . . 60
Summary of Opinion of Independent Actuary . . . . 61

11. TAX CONSEQUENCES FOR POLICYHOLDERS . . . . 62
11.1 Canada . . . . 62
11.1.1 Residents of Canada . . . . 62
11.1.2 Non-Residents of Canada . . . . 64
11.2 United States . . . . 66
Residents of the United States . . . . 66
11.3 United Kingdom . . . . 70
Residents of the United Kingdom . . . . 71
11.4 Philippines . . . . 72
Individual Residents and Non-Resident Citizens or Aliens of the Philippines . . . . 72
11.5 Hong Kong . . . . 74
Residents of Hong Kong . . . . 75
11.6 Bermuda . . . . 75
Residents of Bermuda . . . . 75
11.7 Ireland . . . . 76
Residents of Ireland . . . . 76
11.8 Other Countries . . . . 76

12. SOCIAL BENEFITS CONSEQUENCES FOR POLICYHOLDERS . . . . 77
12.1 Canada . . . . 77
12.2 United States . . . . 77
12.3 United Kingdom . . . . 78
12.4 Philippines . . . . 78
12.5 Hong Kong . . . . 78
12.6 Bermuda . . . . 78
12.7 Ireland . . . . 79
12.8 Right to Renounce Demutualization Benefits . . . . 79

13. CONDITIONS TO DEMUTUALIZATION . . . . 80
13.1 Approval of Eligible Policyholders . . . . 80
13.2 Regulatory Approvals . . . . 80
Minister of Finance of Canada . . . . 80
Michigan Insurance Commissioner . . . . 80
United Kingdom Reorganization . . . . 81
13.3 Underwriting Agreements . . . . 81



SL-0151

14. ALTERNATIVE ARRANGEMENTS TO INITIAL PUBLIC OFFERING . . . . . . . 82
14.1 Right Not to Proceed with Initial Public Offering . . . . . . . . . . . . 82
14.2 Alternative Arrangements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
15. GENERAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
15.1 Amendments to and Withdrawal of the Conversion Plan . . . . . . . . 83
15.2 Amendment to Sun Life of Canada's By-Laws . . . . . . . . . . . . . . . . 83
15.3 Stock Option and Employee Share Purchase Plans . . . . . . . . . . . . . 83
15.4 Payment of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
15.5 Experts' Consents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
16. PART 1 GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

ADVISORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

TRANSFER AGENTS AND REGISTRARS . . . . . . . . . . . . . . . . . . . . . . . . . 89

SCHEDULES
A - Conversion Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
B - Demutualization Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . 153
C - Opinion of Sun Life of Canada's Appointed Actuary . . . . . . . . . . . 154
D - Opinion of Independent Actuary . . . . . . . . . . . . . . . . . . . . . . . . 167
E - Valuation Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 181
F - Opinion of Financial Advisors on Valuation Report . . . . . . . . . . . . 187
G - Opinion of Financial Advisors as to Cash in Lieu of Common Shares . . 190
H - Opinion of Financial Advisors on Access to Financial Markets . . . . . . . 194

PART 2 OF THE POLICYHOLDER INFORMATION CIRCULAR
The table of contents can be found at the beginning of Part 2 of this Policyholder Information Circular

# POLICYHOLDER INFORMATION CIRCULAR – PART 1

*Many words or expressions that are used frequently in Part 1 of this Policyholder Information Circular, including capitalized ones, are defined in the Part 1 Glossary. See section 16.*

## 1. OVERVIEW OF DEMUTUALIZATION

The Sun Life of Canada Board unanimously recommends that eligible policyholders vote in favour of demutualization. Part 1 of this Policyholder Information Circular explains Sun Life of Canada's plan to demutualize.

*The Sun Life of Canada Board unanimously recommends demutualization*

### 1.1 What is a Demutualization?

Demutualization is the process by which a mutual company is converted into a company with common shares.

In a mutual life insurance company, such as Sun Life of Canada, participating policyholders have both ownership rights in the company as a mutual company and contractual rights under their policies. In a demutualization, eligible policyholders receive common shares or other benefits in exchange for their ownership rights in the mutual company but they also retain their policies. Demutualization thus separates policyholders' ownership rights from their interests under their policies.

*Eligible policyholders receive benefits in exchange for their ownership rights*

After demutualization, common shareholders own the insurance company. Common shares represent their ownership interests. Common shareholders are entitled, among other things, to vote at meetings of shareholders and to receive dividends declared on their shares.

Typically, the shares issued to eligible policyholders in a demutualization are listed on a stock exchange. The listing may also be part of an offering of shares to investors. This is called an initial public offering. A listing provides eligible policyholders who receive shares with a public market through which they may sell their shares.

In connection with the demutualization process, insurance companies often reorganize their corporate structures. This usually involves the creation of a holding company, which will own the insurance company, and may also include the restructuring of the operating businesses of the insurance company. When a holding company is created, it is the holding company and not the insurance company that issues common shares to eligible policyholders. Those policyholders, along with investors who buy shares in the initial public offering, will own the holding company.

*Demutualizations often include a corporate reorganization*

In order to demutualize, insurance companies must comply with regulatory regimes in countries in which they operate. These regulatory regimes are designed to protect policyholders and to ensure they receive fair and equitable treatment.

*Demutualizations are regulated to protect policyholders*

### 1.2 Sun Life of Canada's Conversion Plan

The Conversion Plan is the legal document containing the plan for the demutualization of Sun Life of Canada. The Conversion Plan is attached as Schedule A to Part 1 of this Policyholder Information Circular.



SL-0153

1

*Eligible policyholders will receive demutualization benefits if Sun Life of Canada demutualizes*

## 1.3 Demutualization Benefits

As part of the Conversion Plan, and on completion of the demutualization, your ownership rights as a participating policyholder in Sun Life of Canada as a mutual company will cease. In exchange, you will be issued shares, receive cash or have policy credits applied to your policy as your demutualization benefits. Almost all eligible policyholders will have common shares of Sun Life of Canada's new holding company issued to them as their demutualization benefits. The holding company expects to change its name to Sun Life Financial Services of Canada Inc. before the Special Meeting. In Part 1 of this Policyholder Information Circular, the new holding company is referred to as Financial Services and the common shares are referred to as Financial Services Shares.

Eligible policyholders will not have to pay any money for their demutualization benefits. Your Share Allocation Statement included with this Policyholder Information Circular tells you the amount and form of demutualization benefits you will receive.

### *Initial Public Offering*

Financial Services plans to proceed with an initial public offering of Financial Services Shares shortly after demutualization. As part of the initial public offering, Financial Services intends to apply to list the Financial Services Shares on stock exchanges in Canada (Toronto), the United States (New York), the United Kingdom (London) and the Philippines (Manila), the four countries in which the largest number of eligible policyholders reside. Financial Services may also apply to list the Financial Services Shares on the Montreal Exchange depending on the outcome of a proposal to reorganize that exchange. In Part 1 of this Policyholder Information Circular, those exchanges are referred to as the Stock Exchanges.

### *Form of Demutualization Benefits*

The form of demutualization benefits you receive depends primarily on the jurisdiction in which you are resident, as well as the type of policy you hold. See the section below that includes your country of residence. There are special rules for some policyholders. For the principal categories of policyholders affected, see the section below called "Special Rules".

### *Eligible Policyholders in Canada, United States, United Kingdom, Philippines and Bermuda – Principal Jurisdictions*

*Canada, United States United Kingdom Philippines, Bermuda*

These countries are referred to in Part 1 of this Policyholder Information Circular as the Principal Jurisdictions. Generally, eligible policyholders resident in the Principal Jurisdictions will be issued demutualization benefits in the form of Financial Services Shares.

*Most eligible policyholders will have a choice to keep their Financial Services Shares or sell them for cash*

If you are one of these policyholders, you may elect to keep your Financial Services Shares or sell them for cash in connection with the initial public offering. You cannot make this election now. If demutualization is approved at the Special Meeting, Sun Life of Canada will send you detailed information – called the Choices Circular – and a form – called the Choices Form – which will allow you to make the election. Sun Life of Canada expects to mail the Choices Circular to you in late January or early February 2000. Unless you make the cash election, you will keep the Financial Services Shares issued to you.

If you are a Designated Canadian Policyholder, a different procedure applies if you want to receive cash instead of shares. See the section below called "Designated Canadian Policyholders".



SL-0154

### *Eligible Policyholders in Hong Kong, Republic of Ireland, Channel Islands and Isle of Man – Secondary Jurisdictions*

*Hong Kong*
*Republic of Ireland*
*Channel Islands*
*Isle of Man*

These jurisdictions are referred to in Part 1 of this Policyholder Information Circular as the Secondary Jurisdictions. Eligible policyholders resident in the Secondary Jurisdictions will be issued Financial Services Shares in the same manner as eligible policyholders in the Principal Jurisdictions. However, eligible policyholders in the Secondary Jurisdictions will keep their shares only if they make the share election by completing the Choices Form, which is expected to be mailed to them in late January or early February 2000. If you are resident in a Secondary Jurisdiction and do not make the share election, your shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale.

### *Eligible Policyholders in All Other Countries – Other Jurisdictions*

*All other countries – Eligible policyholders will be required to sell their shares*

All other countries are referred to in Part 1 of this Policyholder Information Circular as the Other Jurisdictions. Generally, eligible policyholders resident in the Other Jurisdictions will also have Financial Services Shares issued to them. However, if you are resident in an Other Jurisdiction, you will not be entitled to keep your shares. Instead, your shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale. In Part 1 of this Policyholder Information Circular, shares issued to policyholders in the Other Jurisdictions are called Mandatory Sale Shares and the cash proceeds from the sale of those shares are called Mandatory Sale Proceeds.

### *Special Rules*

*Special rules apply to some policyholders*

These are the special rules that apply to the following categories of eligible policyholders. The "Special Information" section of your Share Allocation Statement indicates whether you are in one of these categories.

#### *Designated Canadian Policyholders*

If you are a Designated Canadian Policyholder, you will also be entitled to elect shares or cash. However, if you elect cash, Financial Services Shares will not be issued to you and you will receive the cash directly from Sun Life of Canada.

#### *Policyholders Who Hold United States Tax-Qualified Retirement Contracts*

If you hold a specific type of United States tax-qualified retirement contract, you will not have Financial Services Shares issued to you as your demutualization benefits. Instead, credits will be applied to your policy. In Part 1 of this Policyholder Information Circular, those credits are referred to as Policy Credits.

#### *United Kingdom Group Pension Schemes*

If you are a trustee of a United Kingdom group pension scheme, the shares issued to you will be sold for you in the initial public offering and you will receive the cash proceeds from this sale unless you elect to keep your shares.

#### *Minors*

If you are a minor, and you do not have a legally appointed guardian, your shares will be sold for you in connection with the initial public offering and you will receive the cash proceeds from this sale. This will apply to all minors, regardless of the jurisdiction in which they are resident.

## 1.4 Protecting Policyholders' Interests

*Your interests under your policy will continue to be protected*

After demutualization, you will continue to own your policy. In addition, policyholders' interests under their policies will continue to be protected.

Your policy benefits will not be reduced and your policy premiums will not be affected by the demutualization.

For participating policyholders, your policy dividends – which in some jurisdictions, including the United Kingdom, are known as bonuses – will continue to be declared from time to time at the discretion of the Sun Life of Canada Board or the directors of a Sun Life of Canada subsidiary. As has always been the case, however, policy dividends are not guaranteed.

As an additional protection, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization.

## 1.5 Reorganization

*Sun Life of Canada will reorganize its corporate structure*

In connection with the demutualization, Sun Life of Canada is reorganizing its corporate structure by creating Financial Services, which will become the holding company of Sun Life of Canada. In addition, Sun Life of Canada will transfer its United Kingdom and related life insurance business and its life insurance businesses in the Philippines and Hong Kong to subsidiaries of Sun Life of Canada.

## 1.6 Regulatory Approvals

*The demutualization will comply with Canadian and other regulatory regimes*

Sun Life of Canada's demutualization and corporate reorganization are being implemented in accordance with the Canadian Insurance Act and the Canadian Demutualization Regulations made under that Act.

The demutualization and parts of the corporate reorganization require the approval of the Minister of Finance of Canada. In addition, the Michigan Insurance Commissioner in the United States and insurance regulators in the United Kingdom, the Philippines and Hong Kong must review and approve those aspects of the demutualization and corporate restructuring of Sun Life of Canada affecting policyholders in their jurisdictions.

*OSFI has reviewed the Conversion Plan and the related documents*

The Office of the Superintendent of Financial Institutions, the principal insurance regulator in Canada – in Part 1 of this Policyholder Information Circular, called OSFI – has reviewed the Conversion Plan, as well as this Policyholder Information Circular and the other material being sent with it to eligible policyholders. The Superintendent will recommend to the Minister of Finance of Canada whether or not to approve the Conversion Plan.

## 1.7 Experts' Opinions

Among other protections, the Canadian Demutualization Regulations require that experts review and provide opinions about significant components of the Conversion Plan. These include a review by the Independent Actuary and the Appointed Actuary of the actuarial arrangements made under the Conversion Plan and a report by financial advisors as to the value of Sun Life of Canada.

*Independent Actuary*

The Independent Actuary is Nicholas Bauer of Eckler Partners Ltd.

The Independent Actuary has provided an opinion on:

- the fair and equitable nature of the apportionment of the value of Sun Life of Canada among eligible policyholders,
- the protection of reasonable expectations of future policy dividends and other non-guaranteed benefits under participating policies of Sun Life of Canada issued before demutualization, and
- the impact of the demutualization on the future financial strength and vitality of Sun Life of Canada and the security of its policyholders.

*Opinion of Independent Actuary*

*Financial Advisors*

Sun Life of Canada's financial advisors are Morgan Stanley & Co. Incorporated and RBC Dominion Securities Inc. The financial advisors have been retained to provide the Valuation Report and an opinion on the Valuation Report, on whether cash is an appropriate substitute for the Financial Services Shares and on access to financial markets by eligible policyholders who keep their shares to the Sun Life of Canada Board and the Financial Services Board. They will receive a fee for these services. The financial advisors also expect to act as lead Underwriters for Financial Services in the initial public offering and to earn a fee for acting as Underwriters.

*Valuation of financial advisors*

The Valuation Report contains a range of estimated public equity market values for Financial Services (on the basis that this range is the same as that for Sun Life of Canada) based solely on estimated prices at which the Financial Services Shares could have been expected to be offered as of September 24, 1999 (the date of the valuation) in an initial public offering of Financial Services Shares conducted in a manner consistent with the Conversion Plan, as if the date of demutualization were September 24, 1999. This range was estimated at September 24, 1999 to have been between approximately Can.$5.6 billion and Can.$8.4 billion.

In the Valuation Report, the financial advisors also estimated that the Initial Share Price for the Financial Services Shares would have been between approximately Can.$14 and Can.$21 on the date of the valuation, based on Sun Life of Canada's advice that approximately 400 million Financial Services Shares would have been outstanding on that date.

These are summaries only, and eligible policyholders should read the complete Valuation Report and the related opinion in order to understand their terms. A copy of the Valuation Report is attached as Schedule E to Part 1 of this Policyholder Information Circular and a copy of the related opinion is attached as Schedule F to Part 1 of this Policyholder Information Circular. Each describes the information relied on and sets out the applicable assumptions, limitations and qualifications.

## 1.8 Special Meeting

*All eligible policyholders are entitled to vote on the Conversion Plan*

The Special Meeting has been called to allow you to vote on the Conversion Plan. All eligible policyholders are entitled to vote at the Special Meeting.

The Special Meeting will be held in Toronto, Canada at:

- 10:00 a.m. (Toronto time) on Wednesday, December 15, 1999,
- Roy Thomson Hall, 60 Simcoe Street, Toronto, Canada.

Before Sun Life of Canada can demutualize, the Demutualization Resolution must be approved by at least two-thirds of the votes cast by eligible policyholders at the Special Meeting. The Demutualization Resolution approves the Conversion Plan and related aspects of the demutualization.

## 1.9 Voting

*You can appoint someone to vote on your behalf or you can vote in person*

You can vote in one of two ways:

- by completing, signing, dating and returning by mail, or delivering, the Voting Form included with this Policyholder Information Circular, or
- by attending the Special Meeting in person.

By using the Voting Form, you will be appointing another person to vote on your behalf at the Special Meeting in accordance with your instructions. This process is known as appointing a proxyholder. It is expected that most eligible policyholders will vote in this manner.

### *How to Return Your Voting Form*

*Your Voting Form must be received by Monday, December 13, 1999*

To be valid, the completed, signed and dated Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. For your convenience, a reply envelope is enclosed for you to return the Voting Form.

You can also deliver the Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999. Alternatively, if you have chosen someone other than the Chairman to vote on your behalf, and you have not mailed in your Voting Form, that person should bring the completed Voting Form to the Special Meeting.

Voting Forms returned by fax will not be accepted.

### *How to Vote in Person*

You can vote in person by attending the Special Meeting. In order to do so, you should bring your Share Allocation Statement as identification to register to vote at the Special Meeting.

### *Number of Votes*

A total of 1,058,243 eligible policyholders are entitled to vote. Each eligible policyholder is entitled to one vote, regardless of the number or size of eligible policies owned.

## 1.10 Timetable

Although Sun Life of Canada cannot predict the precise timing of demutualization and the initial public offering of shares, it expects to complete the process in the first half of 2000. This is the proposed timetable, but it is not certain. With the exception of the dates for receipt of the Voting Forms and for the Special Meeting, the timing may change.

*Key dates to remember*

| 1999 | |
|---|---|
| **December 13** | Deadline for receipt of completed Voting Forms |
| **December 15** | Special Meeting to vote on demutualization |

| 2000 | |
|---|---|
| **Late January/ early February** | Choices Circular including Choices Form mailed |
| **Early March** | Deadline for receipt of completed Choices Forms; marketing of initial public offering begins |
| **Early April** | Marketing of initial public offering ends and Initial Share Price determined; approval of the Minister of Finance of Canada obtained; and demutualization occurs |
| **Next business day after demutualization** | Listing of Financial Services Shares on the Stock Exchanges; trading of shares begins |
| **Five business days after demutualization** | Completion of initial public offering |

Within two weeks of the initial public offering, Financial Services will mail to eligible policyholders confirmations of ownership of Financial Services Shares, cheques and confirmations of Policy Credits.

2

3

*The Sun Life of Canada Board believes demutualization is in the best interests of Sun Life of Canada and its policyholders as a whole*

## 2. RECOMMENDATION OF SUN LIFE OF CANADA BOARD

The Sun Life of Canada Board unanimously recommends that you vote in favour of the Conversion Plan.

After evaluating the relevant information, including the Actuarial Opinions and other expert opinions, the Sun Life of Canada Board has concluded that the Conversion Plan is in the best interests of Sun Life of Canada and its policyholders as a whole because:

- the entire value of Sun Life of Canada is being provided to eligible policyholders,
- it continues to protect the interests of policyholders,
- it has advantages that significantly outweigh any disadvantages, and
- it is superior to the other strategic alternatives for the future of Sun Life of Canada.

## 3. WHY SUN LIFE OF CANADA IS DEMUTUALIZING

### 3.1 Background

Under its current mutual structure, Sun Life of Canada has grown from a life insurance company into a leading international financial services provider. While it has been very successful under this structure, Sun Life of Canada believes it must continually explore options to build on that success and to create future opportunities for its customers and itself.

*The financial services industry is changing rapidly*

The financial services industry in which Sun Life of Canada operates is changing rapidly. These changes include:

- globalization of the financial services industry,
- increased competition from other participants in the financial services industry, such as banks, trust companies, mutual funds and money managers,
- changes in demographic trends, including aging populations and increased life expectancy,
- significant growth in wealth management products, including emphasis on retirement planning and savings, and away from traditional participating life insurance products,
- changes in distribution channels, including the use of independent third party brokers and financial planners to sell products and services, and
- advances in technology, which affect the delivery of products and services to customers.

*In order to build on its success, Sun Life of Canada requires improved access to capital*

These changes are causing a consolidation within the financial services industry. Smaller participants not able to meet the challenges are being acquired by larger ones that are seeking to expand their customer bases so they can compete more effectively. There are opportunities for insurance companies, such as Sun Life of Canada, to expand through strategic acquisitions and alliances that can enhance performance and deliver an attractive return on invested capital. But in order to do so, insurance companies must be able to respond quickly through improved access to capital and the flexibility to pay for acquisitions with common shares. This is not possible for a mutual company.

*Demutualizations are occurring in many countries*

In recent years, many mutual life insurance companies in the United States, the United Kingdom, Australia and elsewhere have responded to this changing industry environment by demutualizing. In June 1996, the Government of Canada announced that it intended to complete the development of the regulatory regime permitting large Canadian mutual life insurance companies to demutualize. The Canadian Demutualization Regulations came into force in March 1999.

## 3.2 Board Review

In anticipation of these regulatory changes in Canada, the Sun Life of Canada Board instructed management to consider demutualization and other structural alternatives available to Sun Life of Canada. As part of its review, management reported to the Sun Life of Canada Board several times in 1997. On January 27, 1998, the Sun Life of Canada Board instructed management to prepare a plan for demutualization.

*The Sun Life of Canada Board identified objectives for demutualization and considered advantages, disadvantages and alternatives*

In proceeding with the development of this plan, the Sun Life of Canada Board determined that the objectives of demutualization would be:

- to provide Sun Life of Canada and its worldwide businesses with increased flexibility to develop and grow and to compete more effectively in the financial services industry through improved access to capital, and
- to ensure that eligible policyholders receive the entire value of Sun Life of Canada.

On August 4, 1999, the Sun Life of Canada Board approved demutualization in principle, and on September 28, 1999, it adopted the Conversion Plan. In doing so, the Sun Life of Canada Board considered the advantages and disadvantages of demutualization for Sun Life of Canada and its policyholders and compared demutualization with remaining as a mutual company and other alternatives.

## 3.3 Advantages of Demutualization

The Sun Life of Canada Board concluded that demutualization has the following advantages.

### *Benefits of Share Ownership*

*Ownership of Financial Services Shares has several advantages over your ownership rights as an eligible policyholder*

Demutualization will provide eligible policyholders who receive Financial Services Shares with a form of ownership of Financial Services that has several advantages over their current form of ownership of Sun Life of Canada.

As a participating policyholder, you currently have ownership rights in Sun Life of Canada. The most important of these are the rights:

- to vote on matters submitted to participating policyholders, such as to elect the Sun Life of Canada Board,
- to participate in the distribution of profits of Sun Life of Canada from all its businesses,
- to participate in any distribution of demutualization benefits, and
- in the unlikely event of a liquidation if Sun Life of Canada were ever to become insolvent, to participate in the distribution of any remaining surplus after satisfaction of all obligations.

However, your current ownership rights are subject to three important limitations under Sun Life of Canada's existing structure:

- you cannot sell your ownership rights,
- in the absence of demutualization, there is no value to your ownership rights separate from your policy, and
- you lose your ownership rights when your policy ends - for example, when the insured dies or the policy matures.

3

Owning Financial Services Shares has many advantages. For example, eligible policyholders who keep their Financial Services Shares will have the right to receive shareholder dividends on Financial Services Shares declared from time to time at the discretion of the Financial Services Board and the right to vote on matters submitted to shareholders, such as electing the Financial Services Board. In addition, share ownership has three important advantages over your current ownership rights as a participating policyholder:

- you will be able to sell your Financial Services Shares,
- the market price of the Financial Services Shares on the Stock Exchanges will establish a clear value for the shares, which you can realize for cash when you sell them, and
- your rights as a shareholder continue as long as you hold Financial Services Shares, regardless of whether your policy ends.

Moreover, even though participating policyholders exchange their ownership rights on demutualization, they retain their policies and their interests under their policies will continue to be protected. Demutualization thus separates policyholders' ownership rights from their interests under their policies. See section 9, "Ongoing Rights of Participating Policyholders".

### *Aligning Interests*

***Demutualization recognizes the separate interests of Sun Life of Canada's owners and its customers***

After demutualization, ownership rights will be separate from policy rights. This will help Sun Life of Canada better align the interests of its owners with the worldwide business to be conducted by Financial Services.

Where most of a mutual insurance company's business relates to participating policies, there is a common interest between the company's owners, who benefit from the profits made on participating policy business, and the company's interest in writing participating policies. However, the nature of Sun Life of Canada's business is changing. Sun Life of Canada has experienced considerable growth in its non-participating protection business and its wealth management business, but participating policyholders are not benefiting from those businesses. Many of those businesses require the reinvestment of earnings to provide capital for future growth. Those earnings are not then available for participating policyholders even though they bear a significant amount of the business risk. Accordingly, the respective interests of Sun Life of Canada and its owners are diverging.

In the demutualization, eligible policyholders and investors who purchase Financial Services Shares will be the owners of Financial Services. The value of their shares will reflect the value of Financial Services and its worldwide businesses, including Sun Life of Canada, and future prospects. As a result, the interests of the shareholders, as owners, will be aligned with the interests of Financial Services.

### *Entire Value for Eligible Policyholders*

***Demutualization will provide the entire value of Sun Life of Canada to eligible policyholders while preserving capital***

Demutualization will enable the entire value of Sun Life of Canada to be provided to eligible policyholders rather than just a portion of it. At the same time, demutualization will preserve Sun Life of Canada's capital because Financial Services will issue shares to almost all eligible policyholders as their demutualization benefits. Although shares provide value to eligible policyholders, issuing them does not involve a distribution of Financial Services' assets. If instead, for example, Sun Life of Canada were to make a cash distribution to all eligible policyholders under its current structure, Sun Life of Canada's capital strength would be reduced by the amount of the distribution.

### *Access to Capital*

As a company with common shares, Sun Life of Canada will have improved access to capital through Financial Services.

*Demutualization will enable Sun Life of Canada to raise capital more effectively...*

As a mutual company, Sun Life of Canada's ability to raise capital is limited. Although Sun Life of Canada can raise capital by issuing various types of securities, such as debt securities, preferred shares and participating shares, it is not permitted to issue common shares. This prevents Sun Life of Canada from creating a capital structure based on an optimal combination of common shares and other securities. Sun Life of Canada's capital raising ability is also constrained because it cannot easily control the timing of increases in capital and so it cannot easily raise capital at the time it is most needed.

*...and to fund acquisitions*

To enhance value, the Sun Life of Canada Board believes that Financial Services should be able to grow, including through acquisitions in the financial services industry. Although Sun Life of Canada has considerable financial strength, it could require significant extra capital to finance this growth. It is highly desirable to have the flexibility to offer common shares rather than cash as payment in merger or acquisition transactions, which are often structured on this basis. The use of shares for acquisitions or to fund other business growth in areas such as product development, technology, distribution and marketing will also allow Financial Services to preserve cash for its operating businesses.

### *Flexibility to Develop and Grow*

*Financial Services and Sun Life of Canada will have greater flexibility to develop and grow*

The creation of Financial Services will afford increased flexibility to develop and grow, especially outside the protection business.

After demutualization, Financial Services and Sun Life of Canada will each be able to raise capital on a basis that is appropriate to it. This will allow management to make the best use of the capital structures of the two companies in the development of the wealth management and protection businesses.

The creation of Financial Services should also facilitate the possible future development of business through subsidiaries of Financial Services, rather than through Sun Life of Canada or its subsidiaries. This flexibility is likely to be of greatest utility in relation to the wealth management business.

### *Competing Effectively*

Demutualization will also allow Sun Life of Canada and Financial Services to continue to compete effectively in the changing competitive environment.

*Many of Sun Life of Canada's competitors are demutualizing*

Other large Canadian mutual life insurance companies have demutualized or are in the process of demutualizing. If and when those demutualizations are completed, none of the leading Canadian-based insurance company competitors of Sun Life of Canada will be mutual companies. In addition, a substantial number of Sun Life of Canada's insurance company competitors based in the United States, the United Kingdom and elsewhere are demutualizing or are already companies with common shares. Because these companies enjoy the advantages of common share capital, Sun Life of Canada will be at a competitive disadvantage if it remains a mutual company.

### *Greater Management Accountability*

*Management accountability should increase*

After demutualization, Financial Services will be required to make regular, comprehensive public disclosure of its operations and financial results, which will be scrutinized by shareholders, the media and financial analysts. Shareholders will have a direct financial interest in Financial Services' performance, dividend payments and share price. This increased level of scrutiny and interest from new stakeholders should increase management accountability for financial performance.

3

The Financial Services Board intends to adopt a stock option plan for key officers and employees of Financial Services and its subsidiaries. The option plan will be designed to align the interests of shareholders and plan participants, and will reward participants for creating shareholder value. This is an important consideration for investors, and will facilitate Financial Services' ability to recruit and retain senior management.

Under the Canadian Demutualization Regulations, Financial Services may not issue stock options or Financial Services Shares to any of its directors, officers or employees until one year after the Financial Services Shares are listed on a Canadian stock exchange. For more information about the proposed stock option plan, see section 15.3, "Stock Option and Employee Share Purchase Plans", and Part 2 of this Policyholder Information Circular under "Stock Option and Employee Share Purchase Plans".

## 3.4 Disadvantages of Demutualization and Responses of Sun Life of Canada Board

***The Sun Life of Canada Board considered possible disadvantages of demutualization***

You may wonder about the possible disadvantages of demutualization to Sun Life of Canada and its policyholders. The Sun Life of Canada Board considered the following possible disadvantages before it decided to proceed with the Conversion Plan and has the following responses to them.

### *Loss of Mutual Structure*

Why is the Sun Life of Canada Board recommending a change to the mutual company structure under which Sun Life of Canada has been successful for many years and which is financially strong?

*Response*

***The current mutual structure is no longer the most appropriate structure for Sun Life of Canada***

Sun Life of Canada's mutual structure has provided a solid foundation on which Sun Life of Canada has grown into a leading financial services company. However, the financial services industry is changing rapidly and Sun Life of Canada's business is changing along with it. Consistent with changing customer preferences, Sun Life of Canada is increasingly growing outside its traditional protection business in general and the participating policy business in particular.

In considering the implications of these changes, the Sun Life of Canada Board has concluded that the current structure is no longer the most appropriate one to enable Sun Life of Canada to continue to build on its strengths and grow in the future. Moreover, if eligible policyholders approve demutualization, the Sun Life of Canada Board will remain committed to the principles on which Sun Life of Canada has grown since it began business in 1871.

### *Loss of Voting Control*

How are the voting rights of participating policyholders affected by demutualization?

*Response*

Currently, participating policyholders have the exclusive right to elect the Sun Life of Canada Board and to vote on other matters submitted to them at policyholder meetings. As a result of demutualization, participating policyholders will lose their voting control.

Participating policyholders for whom Sun Life of Canada continues to be the insurer will have voting rights, but on most matters Financial Services, the sole shareholder of Sun Life of Canada, will control any vote. This is because participating policyholders of Sun Life of Canada will vote together as a group with Financial Services except to elect the Sun Life of Canada Board and on certain fundamental

matters, and after demutualization, Financial Services will have approximately 400 million votes (on a one vote per share basis) while participating policyholders of Sun Life of Canada will together have only approximately 750,000 votes (on a one vote per policyholder basis). Participating policyholders of Sun Life of Canada will be entitled to elect at least one-third of the Sun Life of Canada Board while Financial Services will be entitled to elect up to two-thirds. Participating policyholders of Sun Life of Canada will vote separately from Financial Services on fundamental matters such as an amalgamation with another company or the sale of all or substantially all of Sun Life of Canada's business.

Participating policyholders for whom a subsidiary of Sun Life of Canada becomes the insurer will no longer have the right to vote, including on any matters involving Sun Life of Canada.

*Eligible policyholders will be allocated Financial Services Shares in recognition of their loss of voting control*

In recognition of this loss of voting control, eligible policyholders will be allocated approximately 20% of the total number of Financial Services Shares to be allocated in the demutualization. In addition, eligible policyholders who keep the shares issued to them will have voting rights as shareholders of Financial Services.

For more information, see section 9.4, "Voting Rights".

### Shareholders' Separate Interests

After demutualization, will your interests as a participating policyholder be protected against the interests of shareholders of Financial Services, particularly with respect to the distribution of income?

*Response*

*Policyholders' interests will continue to be protected after the demutualization... ...under special arrangements established under the Conversion Plan...*

Sun Life of Canada and the regulators of Sun Life of Canada's business have taken care to ensure that policyholders' interests under their policies will continue to be protected after the demutualization.

As part of the Conversion Plan, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization. For a description of these arrangements, see section 9, "Ongoing Rights of Participating Policyholders", and Part 2 of this Policyholder Information Circular under "Restructuring of Participating and Other Accounts on Demutualization". These arrangements have been reviewed by the Appointed Actuary and the Independent Actuary. See section 10, "Summaries of Actuarial Opinions".

*...and under applicable legislation*

In addition, the Conversion Plan, the Canadian Insurance Act and other regulatory requirements applicable to Sun Life of Canada and its subsidiaries limit payments to or for the benefit of shareholders. The Canadian Insurance Act would also prohibit Financial Services or Sun Life of Canada from paying a dividend if it would result in either of them breaching the minimum capital surplus requirements it is required to maintain under the Canadian Insurance Act.

### Increased Exposure to Take-Over

At present, it would be very difficult, although perhaps not impossible, for another company to acquire control of a mutual life insurance company like Sun Life of Canada. After demutualization, however, will Financial Services be vulnerable to a take-over?

*Response*

The Canadian Insurance Act currently contains two limitations on the acquisition of control of a life insurance company like Sun Life of Canada after demutualization.

*No shareholder group may currently own more than 10% of Financial Services*

First, the Canadian Insurance Act requires demutualized insurance companies to be widely held. This means that no person may own, directly or indirectly, more than 10% of the Financial Services Shares. The reason for this limitation is to provide time for a demutualized insurance company to make the transition from a mutual company to a public company with common shares before being approached by possible acquirors.

*The Minister of Finance of Canada must approve ownership of more than 10% of Financial Services*

Second, the Canadian Insurance Act also requires the approval of the Minister of Finance of Canada for the acquisition, directly or indirectly, by any person of more than 10% of the Financial Services Shares.

3

In June 1999, the Canadian government announced its intention to change the ownership regime applicable to insurance companies like Financial Services. The proposal would allow an investor to hold up to 20% of any class of voting shares and up to 30% of any class of non-voting shares of an insurance company with shareholders' equity above Can.$5 billion, subject to a "fit and proper" test. The fit and proper test would include an examination of the proposed investor's past business record, the soundness of its business plan and the business reasons for the investment. This test would be designed to help ensure that key shareholders are not a source of weakness to regulated financial institutions.

The Canadian government also announced that, during a two-year transitional period after demutualization, demutualized insurance companies must remain widely held and mergers with or an acquisition of another demutualized insurance company would not be permitted. After this two-year transition period, Financial Services may be permitted, subject to regulatory approval, to merge with another demutualized insurance company and, in certain circumstances, to acquire a demutualized insurance company with less than Can.$5 billion in shareholders' equity, subject to a requirement that 35% of the acquired company's voting shares be held by the public. However, Financial Services, and any other demutualized insurance company with more than Can.$5 billion in shareholders' equity, must remain widely held.

### *Additional Costs to be Incurred*

What significant additional costs will there be as a result of demutualization and are they justified?

*Response*

*The additional costs are not material in relation to the benefits of demutualization*

The costs of demutualization and the initial public offering are estimated to be a total of approximately Can.$133 million after tax, which represents about 2% of the surplus of Sun Life of Canada. For more information about the assumptions on which this estimate is based, see Part 2 of this Policyholder Information Circular under "Notes to the Pro Forma Condensed Consolidated Financial Statements". The principal costs are professional advisors' fees for preparing the Conversion Plan and the prospectus for the initial public offering and commissions to be paid to the Underwriters for conducting the initial public offering. Other than the commissions, most of these costs have already been incurred.

In addition, there will be ongoing costs associated with maintaining shareholder services, maintaining listings on the Stock Exchanges, complying with more onerous public company disclosure requirements and additional corporate taxes resulting from the demutualization and corporate reorganization. The Sun Life of Canada Board believes that these additional ongoing costs are not significant in comparison to the advantages of demutualization to you and Sun Life of Canada. In addition, there are clear benefits:

- listing the Financial Services Shares on the Stock Exchanges will allow shareholders to sell their shares in a public market, and
- policyholders will benefit from public disclosure of information in deciding whether to hold or sell Financial Services Shares.

### *Potential Tax and Social Benefits Consequences*

Will the increase in your income as a result of receiving demutualization benefits or dividends on Financial Services Shares result in an increase in the taxes you have to pay or a reduction in your social benefits?



SL-0166

*Response*

Sun Life of Canada believes that, in almost every case, the amount of your demutualization benefits will be greater than the amount of any tax you may be required to pay resulting from any increase in your income.

*Demutualization benefits should be greater than any tax you may have to pay*

Some eligible policyholders who receive social benefits may be affected by the receipt of demutualization benefits. Social benefits include those provided under income assistance, medical and welfare programs. Sun Life of Canada recommends that those policyholders carefully consider the potential effect of their demutualization benefits on these programs and compare this with the value of the benefits they can expect from demutualization, in each case taking into account all tax consequences. In the exceptional case where receiving demutualization benefits is ultimately disadvantageous, an eligible policyholder may elect in writing before the date to be set out on the Choices Form to renounce the demutualization benefits. But before you do, you should check to make sure the renunciation will be effective for tax purposes. For a more detailed description, see section 12, "Social Benefits Consequences for Policyholders".

## 3.5 Alternatives Considered

The Sun Life of Canada Board recognized that, in the current financial services environment, the principal option for structural change is demutualization. Accordingly, the review by management of structural options and the consideration of them by the Sun Life of Canada Board focused primarily on demutualization as an alternative to remaining a mutual company, with or without changes under the mutual structure. However, the review included other structural alternatives, which the Sun Life of Canada Board also looked at before concluding it should recommend demutualization.

*The Sun Life of Canada Board considered various alternatives to demutualization*

### *Retaining the Mutual Structure as It Is*

Sun Life of Canada could retain its mutual structure, without significant change.

Sun Life of Canada is financially strong and could continue to operate successfully as a mutual company. However, the Sun Life of Canada Board believes that continuing as a mutual company would not serve the best interests of Sun Life of Canada and its policyholders as a whole in the long term.

*The advantages of demutualization to Sun Life of Canada and its policyholders as a whole outweigh any advantages of continuing as a mutual company*

The Sun Life of Canada Board has concluded that the advantages of demutualization significantly outweigh any disadvantages. As described under section 3.3, "Advantages of Demutualization", the advantages include:

- providing eligible policyholders who receive Financial Services Shares with a form of ownership interest that has several advantages over their current form of ownership of Sun Life of Canada, and
- providing Sun Life of Canada with improved access to capital and more flexibility to grow and develop.

As a mutual company, Sun Life of Canada could raise capital by issuing debt securities, preferred shares or participating shares. Sun Life of Canada does not, however, consider participating shares to be a satisfactory alternative to common shares because they are unusual equity interests, lack full voting rights and would be issued by a mutual company controlled by participating policyholders, making them less attractive to equity investors than common shares.

### *Retaining the Mutual Structure and Increasing Policy Dividends*

Sun Life of Canada could retain its mutual structure and increase ordinary policy dividends or pay extraordinary policy dividends to its participating policyholders in order to distribute to them a portion of its current surplus.



SL-0167

*Retaining the mutual structure and increasing policy dividends would reduce assets available to protect policyholders*

3

The Sun Life of Canada Board believes that this would be an inferior alternative because:

- it would reduce the assets available to protect the security of policyholders' benefits,
- only a limited portion of Sun Life of Canada's surplus could be distributed – in the demutualization, the entire value of Sun Life of Canada is being provided to eligible policyholders, and
- it would reduce Sun Life of Canada's capital, which would not be easy to replenish, leaving Sun Life of Canada's ability to pursue its business strategies significantly more limited than it was before the distribution.

### *Selling Sun Life of Canada*

Sun Life of Canada could be sold as a whole.

*Sale of Sun Life of Canada is not a practical alternative*

At present, it would be very difficult, although perhaps not impossible, to sell Sun Life of Canada while it remains a mutual company. A sale would have to occur through assumption reinsurance of all Sun Life of Canada's policies and the sale of the shares of its subsidiaries. In order to distribute value from the sale to participating policyholders, an extraordinary dividend would have to be declared. This process would be very complicated and lengthy.

Moreover, the Canadian Insurance Act prohibits the voluntary liquidation and dissolution of a solvent mutual life insurance company. OSFI has indicated to Sun Life of Canada that this prohibition would apply to a sale structured on that basis.

A "sponsored" demutualization – that is, a sale to a third party of all the shares of an insurance company at the time of its demutualization – is not permitted under the Canadian Insurance Act. Nor is the take-over of a demutualized insurance company. In a recent policy paper, the Canadian government indicated that, during a two-year transitional period after demutualization, it would not approve the merger of two large demutualized insurance companies, including Sun Life of Canada.

### *Selling Subsidiaries*

Sun Life of Canada could either sell all its interest or a minority interest in one or more of its subsidiaries.

*Sale of a subsidiary is not consistent with Sun Life of Canada's goals*

The sale of Sun Life of Canada's entire interest in a subsidiary engaged in the wealth management business or protection business would not be consistent with Sun Life of Canada's goal, which is to be a provider of a broad range of wealth management and protection products.

Although the sale of a minority interest in a subsidiary would allow Sun Life of Canada to maintain control of the subsidiary, it is a less attractive financial alternative since a minority interest would attract a lower purchase price. While this type of sale would raise some capital, access to capital would be significantly more limited than that available through demutualization. In addition, this type of a sale would not achieve the other advantages of demutualization, such as providing the entire value of Sun Life of Canada and the benefits of share ownership to eligible policyholders.

As well, demutualization will not prevent the later sale of one or more subsidiaries if doing so is consistent with Sun Life of Canada's future goals.

### *Closing to New Business*

Sun Life of Canada could stop selling new insurance, gradually "run off" its businesses in an orderly fashion as policies terminate by maturity, death or otherwise or by selling businesses, and eventually cease operations. The cash generated would be distributed to participating policyholders over time as enhanced policy dividends.

The Sun Life of Canada Board concluded that closing to new business would not be in the best interests of Sun Life of Canada and its policyholders as a whole for the following reasons:

*The "run off" of Sun Life of Canada would not be in the best interests of Sun Life of Canada and its policyholders as a whole*

- the value of Sun Life of Canada's existing businesses and its goodwill would probably decline, which would decrease its realizable value,
- it would eliminate the potential for profitable growth of Sun Life of Canada through expansion into or acquisition of new wealth management and protection businesses,
- implementation of the run-off would be an unusual transaction, subject to significant costs, risks and uncertainties,
- Sun Life of Canada would need to retain capital for some time to support the run-off and unforeseen future contingencies and as a result full distribution of the existing surplus would be deferred,
- eligible policyholders' rights to policy dividends would terminate with their policies, and they may not be able to receive the same share of value as they would on demutualization, and
- key management and employees would likely leave Sun Life of Canada.

The run-off of a significant life insurance company would also not be in the best interests of a strong competitive marketplace, employees or the communities in which Sun Life of Canada is a major employer.

Moreover, the Canadian Insurance Act prohibits the voluntary liquidation and dissolution of a solvent mutual life insurance company. OSFI has indicated to Sun Life of Canada that this prohibition would apply to such a run-off of its business.

### *Creating a Mutual Holding Company*

Under United States law, a mutual insurance company may demutualize by creating a mutual holding company. Under that structure, a mutual holding company would be formed, and participating policyholders would own the holding company in the same capacity as they currently own Sun Life of Canada. Sun Life of Canada would become a company with common shares. A majority of those shares would be owned by the mutual holding company and a minority of the shares of Sun Life of Canada could be sold to investors.

The Canadian Demutualization Regulations do not allow a mutual holding company structure.

*The Canadian Demutualization Regulations do not allow a mutual holding company structure*

However, even if this structure were allowed, it would not be preferable to demutualization because it would not provide the entire value of the company to eligible policyholders. The mutual holding company would continue to control Sun Life of Canada, and therefore only part of the value of Sun Life of Canada would be available to policyholders.

## 3.6 What Happens if the Conversion Plan is Not Approved?

If eligible policyholders do not approve the Conversion Plan:

*If demutualization is not approved, Sun Life of Canada would remain a mutual company*

- Sun Life of Canada would remain a mutual insurance company,
- you would retain your ownership rights in Sun Life of Canada, and
- you would not receive demutualization benefits under the Conversion Plan.

In that case, the Sun Life of Canada Board would continue to consider proposals to address changes in the financial services industry and increased competition. Those proposals could include another demutualization proposal or strategic alternative. Because your ownership rights terminate with your policy, you may not be eligible to participate in any later proposal adopted by the Sun Life of Canada Board and approved by policyholders.