*If your policy is subject to a title restriction or special ownership consideration, your receipt of demutualization benefits may be affected*

*Your Share Allocation Statement indicates if there is a title restriction on your policy*

5

## 5. DISTRIBUTION RULES

Your right to receive demutualization benefits and to make the Cash Election or the Share Election may be affected if your eligible policy is subject to a title restriction or special ownership consideration. Sun Life of Canada has developed rules to address those circumstances. Sun Life of Canada has also developed rules to address eligible policyholders who cannot be found. Once you have read this section, if you have any further questions, please contact Sun Life of Canada at one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular.

### 5.1 Title Restrictions

Your Share Allocation Statement tells you whether Sun Life of Canada's records indicate that your policy is subject to a title restriction. You may already have received a separate letter from Sun Life of Canada on this matter.

#### *Assignments as Security and Liens or Other Security Interests*

If Sun Life of Canada's records show you have assigned your eligible policy in connection with a loan or other matter for purposes of security or it is subject to a lien or other security interest, you will continue to be treated as the owner of the policy. For example, you may have borrowed money against your policy. In that case, Sun Life of Canada must receive a release from your lender of any entitlement it may have to demutualization benefits before distributing any demutualization benefits to you. Sun Life of Canada has asked lenders to eligible policyholders in the United Kingdom, Ireland and Malta to provide this release. In other jurisdictions it is your responsibility to obtain one and provide it to Sun Life of Canada. If Sun Life of Canada has not received a release, this is indicated in the "Special Information" section of your Share Allocation Statement. A policy loan or advance from Sun Life of Canada is not subject to this rule. Sun Life of Canada will retain your demutualization benefits until the title restriction has been removed or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Tax Liens and Garnishments*

If Sun Life of Canada's records show your eligible policy is subject to a lien for unpaid taxes or a court-ordered garnishment – a proceeding in which Sun Life of Canada is required by order of a court to pay amounts due under a policy to a creditor of the policyholder and not to the policyholder – Sun Life of Canada will retain your demutualization benefits. They will not be released until Sun Life of Canada has received notice that the tax lien or garnishment has been removed or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Bankruptcy*

If Sun Life of Canada's records show you have become bankrupt or are subject to other insolvency proceedings, Sun Life of Canada will retain your demutualization benefits. They will not be released until Sun Life of Canada receives satisfactory evidence of discharge of bankruptcy and your trustee in bankruptcy is not asserting an ongoing interest in the demutualization benefits or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Other Title Restrictions*

In all cases of title restrictions, including other circumstances not identified above, the Sun Life of Canada Board reserves the right to deal with demutualization benefits in its discretion in good faith and acting reasonably.

## 5.2 Effect of Title Restrictions on Distribution of Demutualization Benefits

Unless you satisfy Sun Life of Canada that any title restriction has been removed or any question of entitlement to receive benefits has been settled by the date to be set out on the Choices Form, your demutualization benefits will be dealt with as follows.

### *Principal Jurisdictions*

If you are resident in a Principal Jurisdiction and Financial Services Shares are issued to you, they will be held on your behalf in the Sun Life of Canada Share Account or by another nominee of Financial Services, and they will not be sold even if you elect to sell them under the Cash Election. Dividends paid on those shares will also be held on your behalf. The shares will not be transferred out of the Sun Life of Canada Share Account, and any dividends paid on the shares will be retained, until the title restriction is removed or otherwise settled to Sun Life of Canada's satisfaction.

### *Secondary Jurisdictions and Other Jurisdictions*

If you are resident in a Secondary Jurisdiction or an Other Jurisdiction, Financial Services Shares will not be issued to you (even if you made the Share Election) or sold in the initial public offering. Instead, Sun Life of Canada will hold on your behalf cash equal to the amount you would have received if Financial Services Shares had been issued to you and sold on your behalf in the initial public offering less any applicable withholding taxes. Sun Life of Canada will hold this cash on your behalf until the title restriction is removed or otherwise settled to Sun Life of Canada's satisfaction.

### *Policy Credits*

If you are entitled to Policy Credits, they will be applied to your policy even if your policy is subject to a title restriction.

### *Interest*

You will not receive interest on cash held on your behalf or on dividends paid on Financial Services Shares.

## 5.3 Special Ownership Considerations

*If your policy is subject to a special ownership consideration, special requirements may need to be satisfied*

If your policy is subject to a special ownership consideration, you may need to provide additional documentation before you can make the Cash Election or the Share Election.

Where applicable, the required documentation and the completed Choices Form must be returned by mail to the address shown on the Choices Form and received at that address by the date to be set out on the Choices Form.

### *Principal Jurisdictions and Secondary Jurisdictions*

#### *Deceased Eligible Policyholders*

If an eligible policyholder dies, the estate of the deceased policyholder will be eligible to receive the demutualization benefits.

*How estate representatives can elect the form of demutualization benefits*

The legally appointed personal representative of the deceased policyholder will generally be permitted to make the Cash Election or Share Election on behalf of the estate by completing the Choices Form provided that:

- the policyholder did not do so before he or she died, and
- the personal representative provides satisfactory evidence of appointment to Sun Life of Canada - for example, letters probate, letters testamentary or letters of administration.



SL-0193

If the requested documents are not received by the date to be set out on the Choices Form, the estate will receive demutualization benefits as follows:

- if the address for the estate on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the estate on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the estate in the initial public offering.

*Trustees*

***How trustees can elect the form of demutualization benefits***

5

If you hold an eligible policy as a trustee, you may make the Cash Election or Share Election, provided all the trustees for that eligible policy sign the Choices Form.

If the names of all the trustees do not appear on the Choices Form or if any of the names have changed, you must provide to Sun Life of Canada the relevant trust documentation which names the trustees – for example, the trust declaration or the trust agreement. This documentation must be returned with the completed Choices Form.

If the required documents are not received by the date to be set out on the Choices Form, the trustee will receive demutualization benefits as follows:

- if the address for the trustee on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the trustee on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the trustee in the initial public offering.

For United Kingdom group pension schemes, special rules apply. See section 4.8, "Financial Services Shares – Principal and Secondary Jurisdictions", and for the tax treatment of United Kingdom group pension schemes, see section 11.3, "Tax Consequences for Policyholders – United Kingdom".

*Joint Owners*

***How joint owners can elect the form of demutualization benefits***

If an eligible policy is owned by more than one person, the joint owners may make the Cash Election or Share Election attributable to that eligible policy. To make the Cash Election or Share Election, all the joint owners must sign the Choices Form.

If the joint owners do not return the Choices Form by the date to be set out on the Choices Form, the joint owners will receive demutualization benefits as follows:

- if the address for the joint owners on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the joint owners on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the joint owners in the initial public offering.

The joint owners of shares will be treated as "tenants in common". As tenants in common, if one of the joint owners dies, his or her interest in the Financial Services Shares passes to the estate of the joint owner who has died, and not to the surviving owners. If you would like to change your ownership to joint tenants with the right of survivorship, you should contact the relevant transfer agent listed in Part 1 of this Policyholder Information Circular after demutualization. As joint tenants with the right of survivorship, if one of the joint owners dies, his or her interest in the Financial Services Shares passes to the surviving joint owners.

*Powers of Attorney/Guardians of Property*

***How attorneys and guardians can elect the form of demutualization benefits***

An attorney or a legal guardian of property may make the Cash Election or Share Election on behalf of an eligible policyholder. The attorney or legal guardian must return the completed Choices Form with the documentation relating to his or her appointment.

If the required documents are not received by the date to be set out in the Choices Form, the eligible policyholder will receive demutualization benefits as follows:

- if the address for the eligible policy on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the eligible policy on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the eligible policyholder in the initial public offering.

*Minors*

***Minors cannot elect to keep their shares***

Eligible policyholders who have not attained the age of majority in their jurisdiction of residence by the deadline for receipt of the Choices Form will have their shares sold on their behalf in connection with the initial public offering. However, if a guardian of property has been appointed, that person may make the Cash Election or Share Election. See "Powers of Attorney/Guardians of Property".

*Corporations*

***How corporations can elect the form of demutualization benefits***

In order for a corporation to make a valid Cash Election or Share Election, the Choices Form must be signed by a duly authorized officer or attorney of the corporation. The corporation must also provide a copy of its signing resolution (or by-law) along with a certificate of incumbency with the completed Choices Form.

If the required documents are not received by the date to be set out in the Choices Form, the corporation will receive demutualization benefits as follows:

- if the address for the corporation on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the corporation on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the corporation in the initial public offering.

***Other Jurisdictions***

In all cases of special ownership, eligible policyholders in the Other Jurisdictions will be required to sell their Financial Services Shares in the initial public offering and will receive Mandatory Sale Proceeds.

***Other Special Ownership Considerations***

In all cases of special ownership, including other circumstances not identified here, the Sun Life of Canada Board reserves the right to deal with demutualization benefits in its discretion in good faith and acting reasonably.

***Governments and Government Agencies***

Under the Canadian Insurance Act, a Canadian or non-Canadian government or government agency is not entitled to be registered as a shareholder or to vote any shares held by it. To avoid contravening these statutory provisions, governments or government agencies in a Principal Jurisdiction or Secondary Jurisdiction should sell their Financial Services Shares.

## 5.4 Conflicting Rights or Fiduciary Duties

*Fiduciary duties*

Sun Life of Canada may withhold demutualization benefits allocated to an eligible policyholder if it knows that another person, other than the eligible policyholder, may have rights to the demutualization benefits, that an eligible policyholder may be subject to trust or fiduciary duties or obligations or is a nominee with respect to the demutualization benefits or that a regulatory authority may impose terms and conditions with respect to the benefits. Sun Life of Canada will distribute the demutualization benefits to the policyholder or other person entitled to them once Sun Life of Canada is satisfied that the question of entitlement has been resolved or that the policyholder will comply with its trust or fiduciary duties or obligations or any terms and conditions imposed on it.

## 5.5 Policyholders Who Cannot Be Located

5

### *Entitlement to Demutualization Benefits*

*Who is a lost policyholder?*

Eligible policyholders whose current addresses are not known to Sun Life of Canada - in Part 1 of this Policyholder Information Circular, called lost policyholders - are still entitled to demutualization benefits. This section explains how Sun Life of Canada will deal with their demutualization benefits.

### *Principal Jurisdictions*

If Financial Services Shares are issued to a lost policyholder in a Principal Jurisdiction (other than to a trustee of a United Kingdom group pension scheme or a minor), they will be registered in the name of the lost policyholder and will not be sold in connection with the initial public offering. However, a share certificate will not be issued until that policyholder ceases to be a lost policyholder. The trustee of a United Kingdom group pension scheme can avoid this result if it gives Sun Life of Canada information about its current address and makes the Share Election before the deadline for receipt of the Choices Form.

Financial Services Shares issued to lost policyholders in the Principal Jurisdictions and not claimed will be cancelled on the date that is 35 months after the date Sun Life of Canada demutualizes. However, if legally entitled to do so, these policyholders can still claim their Financial Services Shares after that date and new Financial Services Shares will be issued to them at that time. Lost policyholders will also be entitled to claim dividends declared on their shares before cancellation and an amount equal to the amount of dividends to which the policyholder would have been entitled after the date of cancellation had the shares not been cancelled, less any applicable withholding taxes. Any new Financial Services Shares issued to lost policyholders will take into account the effect of any consolidation, subdivision or reclassification of the Financial Services Shares since demutualization.

If at the time these policyholders claim their Financial Services Shares they reside in an Other Jurisdiction, they will be required to sell their shares. They will receive the cash proceeds from the sale of their shares based on the then current market price of the Financial Services Shares, after deducting commissions and any applicable withholding taxes. The Financial Services Board will decide how this sale will occur.

If the common shareholders of Financial Services exchange or convert their Financial Services Shares for securities, property or cash after cancellation of a lost policyholder's Financial Services Shares but before the lost policyholder claims its Financial Services Shares, the lost policyholder will not be issued Financial Services Shares. Instead, it will receive the same type of consideration (securities, property or cash) that other common shareholders previously received or, at Financial Services' discretion, an equivalent amount in cash.

### *Secondary Jurisdictions*

All lost policyholders whose addresses are shown on Sun Life of Canada's records to be in a Secondary Jurisdiction will have their Financial Services Shares sold on their behalf in the initial public offering and will generally be entitled to the cash proceeds from this sale less any applicable withholding taxes. In order to avoid the sale of their shares, they must give Sun Life of Canada information about their current address and make the Share Election before the deadline for receipt of the Choices Form.

### *Other Jurisdictions and Minors*

All lost policyholders whose addresses are shown on Sun Life of Canada's records to be in an Other Jurisdiction or who are minors will have their Financial Services Shares sold on their behalf in connection with the initial public offering and will generally be entitled to the cash proceeds from this sale less any applicable withholding taxes.

### *Policy Credits*

Lost policyholders who are entitled to Policy Credits will have their Policy Credits applied to their policies as of the date of demutualization.

### *Claiming Demutualization Benefits*

Lost policyholders must confirm their current mailing address to Sun Life of Canada and submit other documentation as may be required before being able to claim their Financial Services Shares, any amounts payable with respect to dividends on those shares or the cash proceeds from the sale of those shares.

There is an exception where Financial Services Shares or cash claimed by lost policyholders has been delivered or transferred to a government or governmental agency, authority or official under escheat, abandoned or unclaimed property legislation. In that case, Financial Services will only provide or pay to the claiming policyholder Financial Services Shares and any amounts payable with respect to dividends or, if those shares have been sold, the proceeds of the sale, which may be recoverable by Financial Services, on the request of the lost policyholder, from the government or governmental agency, authority or official.

### *Interest*

In all cases, lost policyholders will not receive interest on amounts owing to them or on dividends declared on their Financial Services Shares.

# 6. HOW TO VOTE

The purpose of the Special Meeting is to enable eligible policyholders to consider and to vote on the Demutualization Resolution. Before Sun Life of Canada can demutualize, at least two-thirds of the votes cast by eligible policyholders at the Special Meeting must be cast in favour of the Demutualization Resolution.

## 6.1 Only Eligible Policyholders are Entitled to Vote

*Who can vote?*

Only eligible policyholders (and their proxyholders) are entitled to vote at the Special Meeting. Each eligible policyholder is entitled to one vote at the Special Meeting, regardless of the number or size of eligible policies owned. If an eligible policy is jointly-owned, the joint owners together are entitled to one vote only.

## 6.2 There are Two Ways to Vote

*Vote by proxy through the mail or in person*

You can vote on the Demutualization Resolution in one of two ways:

- by completing, signing, dating and returning by mail, or delivering, the Voting Form included with this Policyholder Information Circular, or
- by attending the Special Meeting in person.

6

### *Vote by Proxy through the Mail*

If you are not able to attend the Special Meeting, you can appoint another person to vote on your behalf – known as appointing a proxyholder – by completing the Voting Form.

You can choose another person to vote on your behalf in one of two ways.

#### *Appoint the Person Named in the Voting Form to Vote on Your Behalf*

You can appoint the Chairman of the Special Meeting to vote on your behalf at the Special Meeting. Except in unforeseen circumstances, the Chairman of the Special Meeting will be Donald A. Stewart, who is also the Chairman of the Sun Life of Canada Board and Chief Executive Officer of Sun Life of Canada. As the Chairman is already named on the form, you can appoint the Chairman simply by completing and signing the Voting Form and returning it in the manner noted under section 6.4, "Returning the Voting Form". The Chairman will be at the Special Meeting and is prepared to vote on your behalf at the Special Meeting.

*You should specify how you want your proxyholder to vote at the Special Meeting*

If you appoint the Chairman and designate a Yes or No vote on your Voting Form, the Chairman must cast that Yes or No vote on your behalf regarding the Demutualization Resolution in accordance with your choice. **If you return the Voting Form, but do not specify how you wish to vote, the Chairman will vote Yes on your behalf for the Demutualization Resolution and will vote on any other matter that may properly come before the Special Meeting in accordance with the best judgment of the Chairman.**

#### *Appoint Another Person to Vote on Your Behalf*

**You can appoint any other person to vote on your behalf at the Special Meeting. To do so, you should print that person's name in the blank space on the Voting Form.** That person does not have to be a policyholder of Sun Life of Canada, but to vote on your behalf, that person must attend the Special Meeting. If you have not mailed the Voting Form, that person must bring the completed Voting Form to the Special Meeting in order to vote at the Special Meeting.



SL-0198

The person you appoint must vote in accordance with your instructions as indicated on the Voting Form. If you do not specify how you wish your proxyholder to vote, the proxyholder may vote either Yes or No on your behalf on the Demutualization Resolution, at the discretion of the proxyholder.

*Attend the Special Meeting*

You may attend the Special Meeting in person and vote. In order to register to vote in person at the Special Meeting, you should bring with you to the Special Meeting as identification your Share Allocation Statement.

If you are disabled and require special assistance at the Special Meeting, please call Sun Life of Canada at 1 800 SUN LIFE (1 800 786-5433) from in Canada and collect to 1 506 862-2197 from outside Canada.

## 6.3 Discretionary Authority

*The Chairman has discretion to vote on new matters at the Special Meeting*

If any changes are made to matters in the notice of Special Meeting or if any new matters properly come before the Special Meeting, and if you have appointed the Chairman of the Special Meeting to vote on your behalf, the Chairman will have the discretion to vote on those matters in accordance with the best judgment of the Chairman. At the date of this Policyholder Information Circular, the management of Sun Life of Canada knows of no such changes or other matters.

## 6.4 Returning the Voting Form

To be valid, your completed, signed and dated Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. If you do not date your Voting Form, it will be deemed to be dated the date it is mailed to you.

You can also deliver your Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999.

If the Special Meeting is adjourned, your Voting Form (if not already received by Monday, December 13, 1999) must have arrived at least 48 hours (excluding Saturdays, Sundays and holidays) before any continuation of the Special Meeting after an adjournment.

*Faxed forms will not be accepted*

Voting Forms returned by fax will not be accepted.

If you have lost your Voting Form, you can obtain a new one by calling one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular.

## 6.5 Revocation of Voting Forms

*You may revoke previous Voting Forms*

You may revoke your Voting Form by mailing or delivering a new Voting Form with a later date. New Voting Forms can be obtained by calling one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular. In order to be valid and revoke a previous Voting Form, the new Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. You may also revoke your Voting Form by giving written instructions, signed by you or by someone who is authorized by you in writing to do so, and:

- mailing the written instructions to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada or to the address shown on the inside back cover of your guide for receipt by Monday, December 13, 1999, or



SL-0199

- depositing the written instructions at Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999 or with the Chairman of the Special Meeting before the start of the Special Meeting or any continuation of the Special Meeting after an adjournment.

You may also revoke your Voting Form in any other manner permitted by law.

New Voting Forms or written instructions revoking Voting Forms sent by fax will not be accepted.

## 6.6 Results of Vote

*CIBC Mellon Trust Company will supervise registration and voting*

CIBC Mellon Trust Company will supervise registration and voting by eligible policyholders and proxyholders at the Special Meeting. The results of the vote will be announced at the Special Meeting and afterwards by news release.

## 6.7 Solicitation of Votes

*Sun Life of Canada will solicit votes*

This Policyholder Information Circular is being provided to you as part of the solicitation of proxies by management of Sun Life of Canada to be used at the Special Meeting and at any continuation of the Special Meeting after an adjournment. Sun Life of Canada expects that the solicitation will be made primarily by mail but votes may also be solicited personally by its employees and through advertising. Sun Life of Canada may also engage firms to assist it with the solicitation of votes from eligible policyholders.

## 7. POLICYHOLDER COMMUNICATIONS

*Sun Life of Canada is committed to answering any questions on demutualization*

Sun Life of Canada encourages all eligible policyholders to vote. To help you make an informed decision, Sun Life of Canada wants to ensure that you receive complete information about demutualization.

To achieve these objectives, Sun Life of Canada has provided, and is continuing to provide, information about demutualization to participating policyholders and other interested parties through the initiatives described below.

### 7.1 News Releases

On January 27, 1998, Sun Life of Canada issued a news release announcing that the Sun Life of Canada Board had directed management to prepare a plan for demutualization. Since that initial news release, Sun Life of Canada has issued further news releases as plans for the demutualization progressed and information concerning the demutualization became available. Sun Life of Canada will continue to provide information to keep participating policyholders informed and up-to-date on the progress of demutualization.

### 7.2 Annual Report to Policyholders

Sun Life of Canada's first direct communication about demutualization was its 1997 Annual Report to Policyholders, sent to policyholders worldwide in 1998. In that report, Sun Life of Canada advised of the Sun Life of Canada Board's decision to consider demutualization.

### 7.3 Information Brochures

A consumer brochure was produced in 1998 for distribution through Call Centres, the Web site and Sun Life of Canada's sales representatives. The brochure provided an overview of demutualization and was available in English, French and Chinese.

### 7.4 Information Mailing to Policyholders

Sun Life of Canada sent information packages on demutualization to holders of individual participating policies between January and May 1999. The packages included a brochure on demutualization and what it might mean for eligible policyholders and a Policyholder Information Form, which asked policyholders to confirm information such as their names and addresses.

### 7.5 Market Research Study

Sun Life of Canada hired an international research firm, AC Nielsen-DJC Research, to conduct a market research study to determine participating policyholders' level of knowledge and understanding of demutualization. In January to May 1999, telephone interviews were conducted with several hundred participating policyholders in each of Canada, the United States, the United Kingdom and Hong Kong. In addition, several hundred face-to-face interviews were conducted in the Philippines. The research was used to determine whether Sun Life of Canada's eligible policyholders had any unanswered questions or concerns about demutualization that should specifically be addressed in future communications. Frequently asked questions related to the value of benefits policyholders would receive and the timing and tax treatment of receipt of benefits.

### 7.6 Notice to Policyholders with Lapsed Policies

From December 1998 to February 1999, Sun Life of Canada notified policyholders whose policies had lapsed that they had the opportunity to exercise their contractual right to reinstate their policies and, by doing so, possibly to become eligible to receive demutualization benefits.

Call Sun Life of Canada with any questions on demutualization

Sun Life of Canada's Web site has a demutualization section

7

## 7.7 Policyholder Information Sessions

Policyholder information sessions were held in major centres in Canada, Manila and Hong Kong in February and March 1999. The purpose of the sessions was to provide information on Sun Life of Canada's possible demutualization to policyholders and other interested observers, to obtain comments from them on demutualization and to provide them with the opportunity to ask questions of Sun Life of Canada senior management. Issues and concerns identified at these sessions were taken into account in preparing the Conversion Plan and this Policyholder Information Circular.

## 7.8 Call Centres

In 1998, Sun Life of Canada expanded its Canadian Call Centre and established Call Centres in other jurisdictions to answer questions of eligible policyholders and other interested parties on demutualization. Sun Life of Canada's Call Centres provide an on-going, "live" resource to answer any questions about demutualization. The Call Centres can be reached by calling the following numbers:

| Country | If calling within the country | If calling from outside the country |
|---|---|---|
| Canada | 1 800 786-5433 | 1 506 862-2197 |
| United States | 1 888 891-8145 | 1 617 483-4207 |
| United Kingdom | 0845 606-6622 | 44 117 980-7258 |
| Philippines | 878-9800 (Metro Manila)<br>1 800 1 888-8786 (Provinces) | 632 878-9800 |
| Hong Kong | 2103-8988 | 852 2103-8188 |

If you do not live in one of these countries, you should call one of the numbers in the right hand column.

## 7.9 Web Site

Sun Life of Canada's Web site can be found at www.sunlife.com or if you are in the United Kingdom at www.sunlifeofcanada.com.

Sun Life of Canada's Web site provides user-friendly access to information about demutualization. The main page of Sun Life of Canada's corporate Web site, as well as the homepages of each of Sun Life of Canada's national office sites, contains a demutualization link that leads to the special section on demutualization. Policyholders can submit questions or express concerns or views about the demutualization process through the Web site.

For your convenience, Sun Life of Canada's Web site also has a link to OSFI's Web site.

## 7.10 United Kingdom and Related Transfers

In August 1999, Sun Life of Canada mailed to policyholders affected by the proposed transfer of its United Kingdom insurance business to Sun Life Assurance Company of Canada (U.K.) Limited, a wholly-owned subsidiary of Sun Life of Canada, a circular describing that transfer. In Part 1 of this Policyholder Information Circular, this company is referred to as Sun Life of Canada (U.K.). Policyholders were entitled to appear at a hearing to consider the transfer, which was held before the High Court of Justice in England on September 21, 1999.

Also in August 1999, Sun Life of Canada mailed to policyholders affected by the proposed transfers of its insurance business in the Republic of Ireland, Guernsey and Jersey, also to Sun Life of Canada (U.K.), circulars describing those transfers. Policyholders were entitled to appear at a court hearing held in Jersey, which was held on September 27, 1999, and are entitled to appear at court hearings in Ireland and Guernsey, which are scheduled for October 11 and 12, 1999, respectively.

## 7.11 Hong Kong Transfer

In October or November 1999, Sun Life of Canada expects to mail to its policyholders in Hong Kong a circular describing the proposed transfer of its insurance business in Hong Kong to Sun Life of Canada (International) Limited, a wholly-owned subsidiary of Sun Life of Canada. In Part 1 of this Policyholder Information Circular, this company is referred to as Sun Life of Canada (International). Policyholders are entitled to appear at a hearing to consider the transfer, which is expected to be held before the High Court of Hong Kong in November or December 1999.

## 7.12 Philippines Transfer

Sun Life of Canada expects to write to its policyholders in the Philippines later this year or early in 2000 to describe the transfer of the assets of its insurance business in the Philippines. This transfer is planned to occur shortly before or as soon as reasonably practicable after demutualization.

## 7.13 Further Information

If you would like additional copies of this Policyholder Information Circular, any of the documents accompanying it or any other public disclosure document of Sun Life of Canada, you may telephone Sun Life of Canada at one of the Call Centre numbers listed in section 7.8, e-mail Sun Life of Canada through the Web site or visit the demutualization section on Sun Life of Canada's Web site.

7

*Financial Services will become the holding company of Sun Life of Canada*

*Sun Life of Canada will be reorganized on demutualization*

*Effect of reorganization in Canada, United States, Philippines and Bermuda*

*Sun Life of Canada will reorganize its United Kingdom and related insurance operations*

# 8. FINANCIAL SERVICES AND CORPORATE REORGANIZATION

## 8.1 Financial Services

As part of the demutualization, Financial Services will become the holding company of Sun Life of Canada and Sun Life of Canada will become a wholly-owned subsidiary of Financial Services. Financial Services, a company incorporated under the Canadian Insurance Act, is currently a wholly-owned subsidiary of Sun Life of Canada.

Subject to compliance with any applicable regulatory requirements, Financial Services may carry on other activities as the Financial Services Board may approve. Financial Services does not have any present intention to issue any insurance policies or otherwise to insure risks directly.

Financial Services expects to change its name to Sun Life Financial Services of Canada Inc. before the Special Meeting. However, before it can do so, it must comply with the requirements of the Canadian Insurance Act relating to name changes.

## 8.2 Corporate Reorganization

Sun Life of Canada intends to complete a corporate reorganization in connection with the demutualization, subject to receipt of regulatory and other approvals. After completion of the corporate reorganization, its United Kingdom and related life insurance business and its life insurance business in the Philippines and Hong Kong will be carried on by subsidiaries of Sun Life of Canada.

Sun Life of Canada will continue as the insurer for all policies outstanding before demutualization in Canada, the United States, Bermuda and the Philippines and will be the insurer for all new policies issued in Canada, the United States and Bermuda after demutualization.

### *United Kingdom and Related Insurance Business*

At the time of demutualization, Sun Life of Canada will transfer its United Kingdom insurance business and that of Confederation Life Insurance Company (U.K.) Limited to Sun Life of Canada (U.K.). At the same time, Sun Life of Canada will transfer its insurance businesses in the Republic of Ireland and the Channel Islands to Sun Life of Canada (U.K.).

The transfers will take place in compliance with applicable United Kingdom and other relevant insurance legislation or, if the Irish and Channel Islands transfers have not been approved at the time of demutualization, those transfers will occur through indemnity reinsurance. The transfers require local regulatory and court approvals, as well as the approval of the Minister of Finance of Canada.

A full description of the transfers is contained in separate circulars sent to United Kingdom and other affected policyholders in August 1999.

As part of the regulatory process to approve the transfers of its United Kingdom and related insurance business, Sun Life of Canada has:

- consulted extensively with applicable regulatory authorities in the United Kingdom, Ireland and Canada,
- received reports from the appointed actuary for the United Kingdom insurance business which conclude that the transfers make adequate provision for meeting the reasonable benefit expectations of affected policyholders and that the transfers will not adversely affect the security of policyholders to any material extent, and
- received reports from independent actuaries in the United Kingdom and Canada which conclude that the reasonable expectations of policyholders should not be adversely affected by the transfers and that the terms of the transfers ensure adequate security of policyholders.

hearing for the purpose of approving the U.K. transfer took place before the High Court of Justice in England on September 21, 1999. At that time, the Court approved the U.K. transfer. The Jersey transfer has also received court approval. Court hearings to approve the Irish and Guernsey transfers have been scheduled for October 11 and 12, 1999, respectively. The U.K. and other transfers will become effective only if the demutualization of Sun Life of Canada is completed.

After the transfers become effective, Sun Life of Canada (U.K.) will replace Sun Life of Canada as the insurer under policies issued both before and after demutualization in those jurisdictions.

### *Philippines*

*Sun Life of Canada will reorganize its operations in the Philippines*

Subject to regulatory approval, Sun Life of Canada will transfer the assets of its insurance business in the Philippines (other than its policies) to Sun Life of Canada (Philippines), Inc., a wholly-owned subsidiary of Sun Life of Canada. In this Policyholder Information Circular, this company is called Sun Life of Canada (Philippines). This transfer is planned to occur shortly before or as soon as reasonably practicable after demutualization.

At the time of transfer, Sun Life of Canada will arrange for its policy obligations in the Philippines to be reinsured by Sun Life of Canada (Philippines) through indemnity reinsurance. Indemnity reinsurance is a form of reinsurance by which the reinsurer of a policy agrees to indemnify the issuer of the policy in return for a payment or payments from the issuer.

Sun Life of Canada will continue to be ultimately responsible for all policies issued in the Philippines and outstanding before the transfer. Any policies issued in the Philippines after the transfer will be issued by Sun Life of Canada (Philippines) and it and not Sun Life of Canada will be the insurer under those policies.

### *Hong Kong*

*Sun Life of Canada will reorganize its insurance operations in Hong Kong*

8

Subject to regulatory and court approval, at the time of or as soon as reasonably practicable after demutualization, Sun Life of Canada will transfer its insurance business in Hong Kong to Sun Life of Canada (International) Limited, a wholly-owned subsidiary of Sun Life of Canada. In this Policyholder Information Circular, that company is called Sun Life of Canada (International).

The transfer will take place in compliance with applicable Hong Kong insurance legislation. The transfer requires regulatory and court approval in Hong Kong, as well as the approval of the Minister of Finance of Canada.

A full description of the Hong Kong transfer will be contained in a circular which is expected to be sent to Hong Kong policyholders in October or November 1999.

As part of the Hong Kong regulatory process, Sun Life of Canada:

- has consulted extensively with regulatory authorities in Hong Kong and Canada, and
- has received reports from independent actuaries in Hong Kong and Canada which conclude that policyholder security under the Hong Kong transfer will be more than acceptable, the Hong Kong transfer preserves the contractual rights of holders of participating policyholders, and the Hong Kong transfer will preserve the reasonable expectations of future policy benefits under participating policies being transferred to Sun Life of Canada (International).

A hearing for the purpose of approving the Hong Kong transfer is expected to take place before the High Court of Hong Kong in November or December 1999. The Hong Kong transfer will become effective only if the demutualization of Sun Life of Canada is completed.

After the transfer becomes effective, Sun Life of Canada (International) will replace Sun Life of Canada as the insurer under policies issued both before and after demutualization in Hong Kong.

### *Other Jurisdictions*

Sun Life of Canada will continue as insurer under policies issued both before and after demutualization in all other jurisdictions.

### *Alternative Arrangements*

If at the time of demutualization the planned transfer to a subsidiary of Sun Life of Canada of insurance business in Hong Kong, Ireland or the Channel Islands has not taken place, Sun Life of Canada, rather than the subsidiary, will establish and maintain the special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization in the jurisdiction. Those arrangements will be structured on a basis determined by the Appointed Actuary with the approval of OSFI and will remain in place pending completion of the transfer of insurance business.

8

# 9. ONGOING RIGHTS OF PARTICIPATING POLICYHOLDERS

## 9.1 Protection of Policyholders' Interests

After demutualization, you will continue to own your policy. In addition, policyholders' interests under their policies will continue to be protected after demutualization.

Your policy benefits will not be reduced and your policy premiums will not be affected by the demutualization.

Your policy dividends – which in some jurisdictions, including the United Kingdom, are known as bonuses – will continue to be declared from time to time at the discretion of the Sun Life of Canada Board or the directors of a Sun Life of Canada subsidiary. As has always been the case, however, policy dividends are not guaranteed.

As an additional protection, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization.

The remainder of section 9 summarizes how policyholders' interests are protected. For a more detailed description, see section 10, "Summaries of Actuarial Opinions", along with Schedule C and Schedule D to Part 1 of this Policyholder Information Circular.

*Your interests under your policy will continue to be protected*

## 9.2 Restructuring of Participating and Other Accounts

Sun Life of Canada is required by the Canadian Insurance Act to maintain accounts for its participating policies which are separate from those for its non-participating policies and other businesses. Sun Life of Canada maintains these accounts for each major territory in which it does business. Each of these accounts records the policies, assets, liabilities and any surplus attributable to that type of business in the territory.

Sun Life of Canada will complete the corporate reorganization and restructure its accounts on demutualization so that future earnings which are not required to support participating policies issued before demutualization will be available to Financial Services and its shareholders. Careful consideration has been given to the amounts of assets, and earnings on assets, which must be maintained by Sun Life of Canada and its insurance subsidiaries to support these participating policies and to special arrangements designed to protect reasonable expectations of policyholders in respect of future dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under these policies.

9

### *Participating Policies of Sun Life of Canada (Canada, United States and Philippines)*

Following demutualization, Sun Life of Canada will continue to be responsible for all participating policies issued before demutualization other than those being transferred to its subsidiaries in the United Kingdom and Hong Kong. The Conversion Plan will require Sun Life of Canada to establish and maintain territorial accounts for these policies issued in Canada (including Bermuda and certain other countries), the United States and the Philippines. Sun Life of Canada will allocate sufficient assets in each of these territorial accounts to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet its contractual obligations, under these policies.

*Assets will be allocated to accounts for contractual obligations*



SL-0207

*Reasonable future dividend expectations will be protected*

Within each territorial account for participating policies issued before demutualization, a separate special sub-fund, known as the individual sub-fund, will be set up for the individual life insurance policies in the account. These policies receive policy dividends, when declared from time to time by the Sun Life of Canada Board. Sun Life of Canada will allocate assets to these individual sub-funds on a basis that reflects the current scale of policy dividends. Future dividends will be based on the future experience of those policies. Sun Life of Canada will keep records of the policy activity in these individual sub-funds, including premiums, claims and policy dividends, as well as the investment income, taxes, and expenses relating to these policies. The Conversion Plan will permit Sun Life of Canada to use the amounts in these individual sub-funds only for the purpose of supporting those policies, including to pay benefits, expenses, taxes and policy dividends. Accordingly, following demutualization, policy dividends should be similar to the policy dividends that would have been paid if demutualization had not occurred.

*Accounts for new participating policies*

Sun Life of Canada will also establish territorial accounts for participating policies issued by it after demutualization in Canada (including Bermuda) and the United States. Sun Life of Canada will allocate assets in each of these territorial accounts which it believes will be sufficient to support new participating policies issued by it after demutualization. In the Philippines, participating policies will be issued after demutualization only by Sun Life of Canada (Philippines), a wholly-owned subsidiary of Sun Life of Canada.

*Shareholders' account*

All the assets of Sun Life of Canada that are not set aside in its accounts for participating policies or transferred to its insurance subsidiaries in the corporate reorganization will be allocated to the account for its shareholder, Financial Services. In this way, eligible policyholders will benefit from the fact that the value of the Financial Services Shares allocated to them will reflect the value of the assets which are not required to protect reasonable expectations of future policy dividends and other non-guaranteed benefits, or to meet contractual obligations, under participating policies issued before demutualization. Eligible policyholders who continue to be shareholders of Financial Services will also benefit from the availability of earnings on these assets allocated to the shareholders' account. All Sun Life of Canada's assets will continue, nevertheless, to be available following demutualization to meet its policy obligations.

9

### *Transferred Participating Policies (United Kingdom and Hong Kong)*

*Safeguards for participating policies transferred to subsidiaries*

Arrangements will be put in place in Sun Life of Canada's subsidiaries in the United Kingdom and Hong Kong that are designed to safeguard participating policies issued by Sun Life of Canada before demutualization and transferred to those subsidiaries. These arrangements will protect reasonable expectations of future policy dividends, or bonuses, and other non-guaranteed policy benefits, under these transferred policies. All the assets of these subsidiaries will nevertheless be available following demutualization to meet their respective policy obligations. If the transfer of any of the insurance businesses of Sun Life of Canada in the Republic of Ireland, the Channel Islands or Hong Kong is not completed at the time of demutualization, Sun Life of Canada will put arrangements in place to protect the interests of the affected policies until the transfer of business is made.



SL-0208

***Account Arrangements Generally***

The arrangements with respect to the establishment and maintenance of the accounts for participating policyholders and shareholders of Sun Life of Canada and its insurance subsidiaries are complex. Following the initial restructuring of the participating accounts on demutualization and the corporate reorganization, there will be some limited circumstances in which transfers between these accounts and the shareholders' accounts for Sun Life of Canada and its insurance subsidiaries may be required or permitted. For a more detailed description, including information about the expected sizes of these accounts, see Part 2 of this Policyholder Information Circular under "Restructuring of Participating and Other Accounts on Demutualization".

## 9.3 Dividend Policy for Participating Policies

***Participating Policies of Sun Life of Canada (Canada, United States and Philippines)***

On demutualization, Sun Life of Canada will have a dividend policy for participating individual life insurance policies which reflects the new policyholder account arrangements and protections for policies issued by it before demutualization. This dividend policy, which is described below, will provide that policy dividends will be calculated separately for these policies and for participating individual life insurance policies issued by Sun Life of Canada after demutualization. Policies issued by Sun Life of Canada (Philippines) after the corporate reorganization will not be covered by this dividend policy.

The full text of this dividend policy for participating individual life insurance policies is in Part 3 of Exhibit D of the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular. Under this policy, participating individual life insurance policies sold by Sun Life of Canada before demutualization will be eligible to receive policy dividends which will be paid from the individual sub-funds maintained for the benefit of these policies, as described under section 9.2, "Restructuring of Participating and Other Accounts". The basis for determining policy dividends on these policies will be substantially the same as before demutualization. Policy dividends will generally reflect the experience of these policies over time, including the investment return, taxes and administrative expenses in connection with these policies and the rate of mortality of persons insured under these policies.

***The basis for determining dividends on pre-demutualization policies will be substantially the same as before demutualization***

9

Policy dividends on participating policies issued by Sun Life of Canada after demutualization will be distributed only from the earnings of those policies in the accounts maintained separately for them. These dividends will generally depend on such factors as the growth in the number of those policies, the experience of those policies and the capital requirements of Sun Life of Canada.

Under its dividend policy, the Sun Life of Canada Board will continue to establish dividend scales from time to time, and review them at least once each year.

***Transferred Participating Policies (United Kingdom and Hong Kong)***

Sun Life of Canada's subsidiaries in the United Kingdom and Hong Kong will establish dividend, or bonus, policies for the benefit of participating policies transferred to them, taking into account the special protections put in place for those policies. Policyholders in those countries have received or will receive separate information about the dividend policies and special protections which will apply to them.



SL-0209

## 9.4 Voting Rights

***How will demutualization affect voting rights of participating policyholders?***

After demutualization and completion of the corporate reorganization, participating policyholders and shareholders of Financial Services will have the following voting rights.

### *Participating Policyholders*

*Canada, United States and Bermuda*

Policyholders holding participating policies issued by Sun Life of Canada in Canada, the United States and Bermuda will continue to have the right to vote as a participating policyholder of Sun Life of Canada.

*United Kingdom and Related Jurisdictions*

Policyholders holding participating policies issued by Sun Life of Canada in the United Kingdom, the Republic of Ireland, the Channel Islands and the Isle of Man will no longer have the right to vote, including on any matters involving Sun Life of Canada. That is because those policies will no longer be participating policies of Sun Life of Canada, but will be participating policies of Sun Life of Canada (U.K.).

*Philippines*

Policyholders holding participating policies issued by Sun Life of Canada in the Philippines will continue to have the right to vote as participating policyholders of Sun Life of Canada.

*Hong Kong*

Policyholders holding participating policies issued by Sun Life of Canada in Hong Kong will no longer have the right to vote, including on any matters involving Sun Life of Canada. That is because those policies will no longer be participating policies of Sun Life of Canada, but will be participating policies of Sun Life of Canada (International).

*Other Jurisdictions*

Policyholders holding participating policies issued by Sun Life of Canada in all other jurisdictions will continue to have the right to vote as a participating policyholder of Sun Life of Canada.

9

### *Participating Policyholders Voting in Sun Life of Canada*

Each participating policyholder entitled to vote in Sun Life of Canada will have one vote, regardless of the number of or size of policies owned.

*Voting Together with Financial Services*

After demutualization, participating policyholders will vote together with Financial Services, the sole shareholder of Sun Life of Canada, on all matters on which participating policyholders and shareholders are entitled to vote in Sun Life of Canada, other than certain matters described below. Financial Services will be entitled to one vote for each common share of Sun Life of Canada held, or a total of approximately 400 million votes. It is expected that Sun Life of Canada will have approximately 750,000 participating policyholders who will be entitled to vote in Sun Life of Canada after demutualization.

*Voting Separately*

Participating policyholders will be entitled separately to elect at least one-third of the Sun Life of Canada Board. Financial Services will be entitled separately to elect the remainder of the Sun Life of Canada Board. Each member of the Sun Life of Canada Board has been designated as a policyholders' director or a shareholders' director for the remaining term of his or her office after demutualization, as follows:

| Policyholders' Directors | Shareholders' Directors |
|---|---|
| Dian N. Cohen | Prof. M. Colyer Crum |
| Bertin F. Nadeau | Stanley H. Hartt |
| Ronald W. Osborne | The Hon. Donald S. Macdonald |
| Sir Bob Reid | John M. MacLeod |
| William W. Stinson | Angus A. MacNaughton |
| W. Vickery Stoughton | John D. McNeil |
| | Alfred Powis |
| | Donald A. Stewart |
| | David G. Vice |
| | Jeannine Guillevin Wood |

***These individuals will be the members of the Sun Life of Canada Board***

Participating policyholders will also be entitled to vote separately on various fundamental corporate transactions such as an amalgamation or a sale of all or substantially all the assets or policies of Sun Life of Canada.

***Shareholders of Financial Services***

Eligible policyholders who receive Financial Services Shares in the demutualization and continue to hold them will be entitled to vote as shareholders of Financial Services. The other shareholders of Financial Services, who will include investors who purchase Financial Services Shares in the initial public offering, in the market or in future offerings of Financial Services Shares, will also have the right to vote. Each shareholder of Financial Services will be entitled to one vote for each Financial Services Share held.

9

# 10. SUMMARIES OF ACTUARIAL OPINIONS

## 10.1 Actuarial Opinions

All eligible policyholders are urged to read the Actuarial Opinions and to consider them in the context of all the other information in this Policyholder Information Circular.

## 10.2 Appointed Actuary

Sun Life of Canada has appointed Robert Wilson, a Fellow of the Canadian Institute of Actuaries, as the Appointed Actuary. Under the Canadian Insurance Act, part of the Appointed Actuary's role is to value Sun Life of Canada's policy liabilities at the end of each financial year and to provide an opinion as to whether the amount of policy liabilities makes appropriate provisions for all obligations to policyholders.

The Canadian Demutualization Regulations require the Appointed Actuary to give an opinion on specified actuarial aspects of the demutualization that affect policyholders.

***Summary of Opinion of Appointed Actuary***

In the opinion of Robert Wilson, in his capacity as the Appointed Actuary:

- the benefits to be provided to eligible policyholders and the method used to apportion the value of Sun Life of Canada among eligible policyholders are fair and equitable to those policyholders,
- the assets which will be allocated to the participating accounts of Sun Life of Canada on the demutualization of Sun Life of Canada are adequate:
  - to meet contractual obligations under the policies in respect of which the participating accounts are maintained,
  - to meet the reasonable expectations of the holders of those policies in respect of future dividends and other non-guaranteed policy benefits, and
  - to support future participating policies expected to be allocated to those accounts, and
- the future financial strength and vitality of Sun Life of Canada and the security of policyholders will not be materially adversely affected by demutualization.

The opinion of the Appointed Actuary is attached as Schedule C to Part 1 of this Policyholder Information Circular.

10

## 10.3 Independent Actuary

As part of any major transaction, OSFI generally requires insurance companies to select an independent actuary to consider and explain the impact of the proposed transaction on policyholders and to provide an opinion that the proposed transaction complies with the requirements of the Canadian Insurance Act.

The Canadian Demutualization Regulations require an independent actuary to give an opinion on the same actuarial aspects of the demutualization as the Appointed Actuary is required to address. Nicholas Bauer of Eckler Partners Ltd. is the Independent Actuary.

***Summary of Opinion of Independent Actuary***

In the opinion of Nicholas Bauer, in his capacity as the Independent Actuary, the Conversion Plan:

- provides for demutualization benefits and a method to apportion the value of Sun Life of Canada among eligible policyholders which are fair and equitable to eligible policyholders,
- allocates assets to each Pre-Conversion Individual Participating Closed Sub-Fund and to each Pre-Conversion Ancillary Participating Sub-Fund which are expected to be adequate to meet both the contractual obligations under the policies in respect of which it is maintained and the reasonable expectations of their policyholders for dividends and other non-guaranteed benefits,
- allocates assets to each Post-Conversion Individual Participating Sub-Account which are adequate to support the participating policies expected to be allocated to that Post-Conversion Individual Participating Sub-Account after the effective date of demutualization,
- does not materially adversely affect Sun Life of Canada's future financial strength and vitality or the security of its policyholders, and
- provides Policy Credits which, as of the date that the Initial Share Price is determined, will be appropriate substitutes for Financial Services Shares.

The opinion of the Independent Actuary, which is attached as Schedule D to Part 1 of this Policyholder Information Circular, is subject to the reliances and limitations stated in the opinion. The references to the various sub-funds and sub-accounts have particular meanings which are explained in the opinion.

10

*This discussion is not a complete summary of all relevant taxation laws. You should consult your own tax advisor.*

## 11. TAX CONSEQUENCES FOR POLICYHOLDERS

**The following discussion of taxation considerations to eligible policyholders of the demutualization is a general guide and is not a complete summary of all relevant taxation laws and does not address every type of eligible policyholder. The tax you must pay as a result of receiving demutualization benefits will vary depending on your particular tax situation and the form of demutualization benefits you receive. If you receive Financial Services Shares, your tax position will also depend on whether or not you sell your shares in connection with the initial public offering or afterwards. This general discussion is not tax advice to any particular policyholder and all policyholders should consult their own tax advisors to determine how the demutualization will affect them in their particular circumstances. This general discussion does not address estate or gift or territorial, state or other local tax legislation or considerations, and you should consult your own tax advisor with respect to these matters in your particular circumstances.**

The description of the tax consequences for each jurisdiction has been reviewed by a law or accounting firm retained by Sun Life of Canada in that jurisdiction.

*Tax Consequences – Canada*

### 11.1 Canada

In the opinion of Tory Tory DesLauriers & Binnington, as of the date of this Policyholder Information Circular, the following is a fair summary of the principal Canadian federal income tax considerations under the Canadian Tax Act generally applicable to eligible policyholders who receive Financial Services Shares, cash or Policy Credits in exchange for their ownership rights in Sun Life of Canada on the demutualization of Sun Life of Canada in accordance with the Conversion Plan.

This summary is based on the current provisions of the Canadian Tax Act as proposed to be amended by draft income tax legislation on the demutualization of life insurance companies released by the Department of Finance on December 15, 1998, with modifications proposed by the Department of Finance in a letter dated February 8, 1999, and all other specific proposals to amend the Canadian Tax Act which have been publicly announced before the date of this Policyholder Information Circular. If these proposals do not become law, your tax consequences may differ significantly from those described below. This summary is based on the assumption that Financial Services Shares will be listed on one or more of the Stock Exchanges within six months after the time of the demutualization. This summary is also based on counsel's understanding of Revenue Canada's published administrative practices as well as letters of Revenue Canada regarding the Canadian tax treatment of Policy Credits.

Each of the provinces, other than Quebec and, in the case of corporate income tax, Ontario and Alberta, levies its income tax on the basis of income as computed under the Canadian Tax Act and, accordingly, the following summary will apply, subject to these exceptions, for purposes of provincial income tax. In its budget of March 9, 1999 the Quebec government announced that it would amend its tax system to incorporate, with adaptations based on its general principles, most of the proposed amendments to the Canadian Tax Act relating to demutualization when these amendments are finalized. The government of Ontario, in its May 4, 1999 budget, also announced its intention to parallel, with necessary modifications, these proposed amendments to the Canadian Tax Act. Alberta has not to date made an announcement in this regard.

#### *11.1.1 Residents of Canada*

This part of the Canadian tax summary applies to policyholders who are resident in Canada for purposes of the Canadian Tax Act.

11