Your eligibility for a program in which eligibility is dependent on not having more than a specific level of total assets (for example, Medicaid) may be affected until you sell the Financial Services Shares and have disposed of the cash you receive for those Financial Services Shares. If you participate in a federal, state or municipal social benefits program in which the right to receive benefits is dependent on your not having more than a specified level of income (for example, Medicaid, food stamps or various welfare programs), selling the Financial Services Shares issued to you on demutualization or the receipt of dividends paid on Financial Services Shares you keep could raise your income above the specified level for some period of time.

If you or your dependents receive any publicly administered benefits at the federal, state or municipal level, and you have questions about the effect the receipt of demutualization benefits may have on your entitlement, you should contact the government agency that provides the benefits to you.

## 12.3 United Kingdom

If you keep Financial Services Shares issued to you on demutualization or elect to sell them, either under the Cash Election or after the initial public offering, it may affect your entitlement to receive some social security benefits, such as Income Support, Family Credit or Housing Benefit. Your entitlement to social security benefits may also be affected by the receipt of dividends paid on your Financial Services Shares.

If you have any questions about the effect the receipt of demutualization benefits may have on your entitlement to social security benefits, you should contact your investment advisor or your local Department of Social Security or Benefits Agency office.

## 12.4 Philippines

As a general rule, there are no social benefits consequences in the Philippines from the receipt of demutualization benefits. The only exception is if you are a "senior citizen" as defined in the Republic Act No. 7432. In that case, your receipt of additional income from demutualization above the specified poverty level could disqualify you from obtaining the special privileges and benefits available to a senior citizen. If you have any questions about the effect the receipt of demutualization benefits may have in that case, you should contact the relevant government agency.

## 12.5 Hong Kong

If you are receiving an old age allowance or benefits from the Comprehensive Social Security Assistance Scheme, you will need to disclose your receipt of Financial Services Shares or cash proceeds from the sale of those shares to the Social Welfare Department. You should consult with your case worker at the Social Welfare Department to find out more about the effect that the receipt of demutualization benefits has on your social benefit entitlement. If you do not have a case worker, you may call the Social Welfare Department hot-line at 2343-2255 to inquire in general how your social benefit entitlements may be affected by the receipt of demutualization benefits.

## 12.6 Bermuda

In general, there are no social benefits consequences in Bermuda from the receipt of demutualization benefits.

## 12.7 Ireland

Some social welfare benefits, such as unemployment assistance and the old age (non-contributory) pension, are means tested. Therefore, if you keep Financial Services Shares issued to you on demutualization or sell them, your entitlement to these benefits may be affected.

If you have any questions about the effect the receipt of demutualization benefits may have on your entitlement to social welfare benefits, you should contact your local Social Welfare Office.

## 12.8 Right to Renounce Demutualization Benefits

Sun Life of Canada recommends that eligible policyholders receiving social benefits carefully consider the potential effect of demutualization on these programs and compare this with the significant benefits that they can expect from demutualization, in each case taking into account all tax consequences. In the exceptional case where receiving demutualization benefits is ultimately disadvantageous, an eligible policyholder may elect in writing to renounce the right to receive demutualization benefits. Before you do, you should check to make sure the renunciation will be effective for tax purposes. Eligible policyholders who wish to renounce their demutualization benefits must do so in writing to Sun Life of Canada at Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada M5H 1J9 at any time before the date to be set out on the Choices Form. After that date, you may not change your decision.

12

*Eligible policyholders must approve demutualization by a two-thirds vote*

*The Minister of Finance of Canada must approve the demutualization*

*OSFI will continue to oversee the demutualization*

*United States regulatory approval*

## 13. CONDITIONS TO DEMUTUALIZATION

Demutualization will not occur until all conditions in the Conversion Plan have been satisfied. The following is a summary of the most important conditions.

### 13.1 Approval of Eligible Policyholders

The Demutualization Resolution must be approved by at least two-thirds of the votes cast by eligible policyholders at the Special Meeting.

### 13.2 Regulatory Approvals

***Minister of Finance of Canada***

If eligible policyholders approve the Demutualization Resolution, Sun Life of Canada will apply to the Minister of Finance of Canada for approval of the Conversion Plan. On receipt of the application, the Minister of Finance of Canada must refer it to the Superintendent for a recommendation. Before deciding whether to approve the Conversion Plan, the Minister of Finance of Canada may consider such factors as:

- whether the Conversion Plan is fair and equitable to Sun Life of Canada's eligible policyholders,
- whether the Conversion Plan is in the best interest of the Canadian financial system, and
- whether sufficient steps had been taken to inform you of the Conversion Plan.

If the Minister of Finance of Canada approves the Conversion Plan, it will be effective when all other conditions are satisfied and Letters Patent of Conversion are issued. These are the documents required from the Canadian government for Sun Life of Canada to demutualize.

Before being finalized, the Conversion Plan was sent to OSFI for review. OSFI has also reviewed this Policyholder Information Circular and the accompanying documents, and the Superintendent has authorized Sun Life of Canada to send them to you.

OSFI will continue to oversee each step in the demutualization process. The Superintendent will also provide a final recommendation to the Minister of Finance of Canada on the Conversion Plan.

***Michigan Insurance Commissioner***

The Michigan Bureau of Insurance is the primary regulator of Sun Life of Canada in the United States. Because of that, in order to become effective, the Conversion Plan must also be approved by the Michigan Insurance Commissioner following a public hearing. That hearing is scheduled to be held at the Law Auditorium, G. Mennen Williams Building, 525 West Ottawa Street, Lansing, Michigan on November 22, 1999 at 10:00 a.m. (Eastern Standard Time). The purpose of the hearing is to consider the Conversion Plan and to provide eligible policyholders and other interested persons with the opportunity to present data, views, comments and arguments with respect to the Conversion Plan. Eligible policyholders, among others, have the right to appear and to make an oral statement at the public hearing or to file a written statement with the Michigan Insurance Commissioner.

In order to approve the Conversion Plan, the Michigan Insurance Commissioner must be satisfied that the Conversion Plan conforms to the requirements of Michigan law and is fair and equitable to United States interested persons.

Under the Michigan Insurance Code, an action challenging the validity of, or arising out of acts taken or proposed to be taken under, the Conversion Plan, other than an appeal of the Michigan Insurance Commissioner's decision approving or disapproving the Conversion Plan, must be commenced within 30 days after eligible policyholders have approved the Conversion Plan. An action challenging the validity of the Michigan Insurance Commissioner's decision approving or disapproving the Conversion Plan must be commenced within 30 days after the Michigan Insurance Commissioner's decision.

### *United Kingdom Reorganization*

*United Kingdom court approval*

As part of the demutualization, Sun Life of Canada will transfer its United Kingdom insurance business to Sun Life of Canada (U.K.). This transfer, which is described under section 8.2, "Corporate Reorganization", requires approval of the High Court of Justice of England. The Court approved the transfer at a hearing held on September 21, 1999. The transfer also requires the approval of the Minister of Finance of Canada.

## 13.3 Underwriting Agreements

*The underwriting agreements must be signed*

Sun Life of Canada, Financial Services and the Underwriters must enter into underwriting agreements for the sale of Financial Services Shares in the initial public offering. The underwriting agreements and the initial public offering are discussed under section 4.13, "Initial Public Offering".

The underwriting agreements will be signed after the completion of the marketing of the initial public offering. The timing of the signing will determine the timing of demutualization, which will occur on the same day as the signing. When Sun Life of Canada, Financial Services and the Underwriters have signed the underwriting agreements, Sun Life of Canada will notify OSFI. If the Minister of Finance then approves the Conversion Plan, Letters Patent of Conversion will be issued and demutualization will occur.

1

## 14. ALTERNATIVE ARRANGEMENTS TO INITIAL PUBLIC OFFERING

Completion of the initial public offering is not a condition to demutualization and it will not occur until after Sun Life of Canada demutualizes. Sun Life of Canada expects that the initial public offering will be completed within five business days after the date it demutualizes.

### 14.1 Right Not to Proceed with Initial Public Offering

Once the underwriting agreements are signed, the Underwriters will have committed to purchase the Financial Services Shares to be sold in the initial public offering. However, the Underwriters will have the right not to proceed with the initial public offering in circumstances to be specified in the underwriting agreements, which are expected to include:

- a financial crisis in world markets,
- the commencement of a proceeding or a change in law which operates to prevent or restrict the demutualization or the initial public offering, or
- a material adverse change in the affairs of Financial Services.

The underwriting agreements will also include other standard conditions that would entitle the Underwriters to terminate the agreements if those conditions are not satisfied.

### 14.2 Alternative Arrangements

*Sun Life of Canada has a plan if the initial public offering does not happen as planned*

It is highly unusual for an offering not to be completed after the underwriting agreements are signed. However, even if that were to occur, the demutualization of Sun Life of Canada would still be legally effective and demutualization benefits will be provided to eligible policyholders but the following alternative arrangements will apply:

- Financial Services will continue to use reasonable commercial efforts to keep the Financial Services Shares listed on the Stock Exchanges,
- Cash Elections and Default Cash Elections will be cancelled and eligible policyholders who made them will keep the Financial Services Shares issued to them, with Designated Canadian Policyholders having Financial Services Shares issued to them,
- the Initial Share Price will still be used to determine the value of Policy Credits and the amount of any cash payment required to be made to eligible policyholders described in section 5.2, "Effect of Title Restrictions on Distribution of Demutualization Benefits – Secondary Jurisdictions and Other Jurisdictions", and in section 5.5, "Policyholders Who Cannot be Located – Secondary Jurisdictions" and "Policyholders Who Cannot be Located – Other Jurisdictions and Minors", and those Policy Credits and cash payments will be credited or made shortly after the scheduled completion date of the initial public offering.

In addition, Financial Services will arrange to sell the Mandatory Sale Shares on the Stock Exchanges within 60 days after the scheduled completion date of the initial public offering. Eligible policyholders entitled to the proceeds will receive the average price from all those sales and payments will be made shortly after the sales are completed. Payments will be made after deduction of any applicable withholding tax and reasonable expenses of sale, including commissions.

The Financial Services Board would implement these alternative arrangements on a basis that is consistent, so far as reasonably possible, with the other aspects of the Conversion Plan.

14



SL-0234

# 15. GENERAL MATTERS

## 15.1 Amendments to and Withdrawal of the Conversion Plan

Sun Life of Canada may amend the Conversion Plan at any time before eligible policyholders vote at the Special Meeting, if measures approved by the Superintendent and the Michigan Insurance Commissioner are taken by Sun Life of Canada in respect of that amendment.

The Sun Life of Canada Board may withdraw the Conversion Plan at any time before Letters Patent of Conversion are issued to effect the Conversion Plan.

## 15.2 Amendment to Sun Life of Canada's By-laws

As part of the Conversion Plan, Sun Life of Canada intends to amend its by-laws. Eligible Policyholders will vote on those amendments as part of the Demutualization Resolution at the Special Meeting. Those amendments include an amendment to create a new class of shares to be designated as "common shares". A copy of the amended and restated by-laws of Sun Life of Canada is set out in Exhibit A to the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular.

The common shares will be unlimited in number and have the following rights, privileges, restrictions and conditions:

- the right to vote at all meetings of shareholders and policyholders except where only holders of a specific class of shares, or policyholders, are entitled to vote,
- the right to receive any dividends declared on those shares, and
- in the event of dissolution, the right to receive the remaining property of Sun Life of Canada to which common shareholders are entitled.

The by-laws will also be amended to provide that at least one-third of the Sun Life of Canada Board must be elected by participating policyholders. The remainder of the Sun Life of Canada Board will be elected by Financial Services, the sole shareholder of Sun Life of Canada.

## 15.3 Stock Option and Employee Share Purchase Plans

The Canadian Demutualization Regulations provide that, before the listing of the Financial Services Shares on a stock exchange in Canada and for a period of one year afterwards, Financial Services may not issue or provide shares, share options or rights to acquire shares to any of its directors, officers or employees or any person who was a director, officer or employee during the year before the effective date of demutualization and who ceased to be a director, officer or employee, other than shares issued to that person as an eligible policyholder.

The Financial Services Board intends to establish a stock option plan for key officers and employees of Financial Services and its subsidiaries. The option plan will not become effective until the one year restriction period imposed by the Canadian Demutualization Regulations has ended. The option plan will be designed to align the interests of shareholders and plan participants, and will reward participants for the creation of shareholder value. Shareholder approval of the option plan will be required. The Financial Services Board will administer the option plan in compliance with applicable law and the rules of the Stock Exchanges on which the shares are listed. The Financial Services Board will determine the exercise price and option term at the time of grant. The exercise price of an option will not be less than the market price of Financial Services Shares at the time of grant and the options will be for a term not exceeding 10 years. The options will be exercisable by a holder subject to a vesting schedule to be established by the Financial Services Board at the time of grant.

Financial Services also intends to establish a voluntary employee share purchase plan on demutualization to facilitate employee ownership of Financial Services Shares. Shareholder approval is not required for the purchase plan. Eligible employees of Financial Services and its subsidiaries will be permitted to purchase Financial Services Shares through payroll deductions up to a maximum percentage of their base salary. All purchases of Financial Services Shares under the purchase plan will be made in the open market.

Initially, purchases of Financial Services Shares by employees under the purchase plan will not be made with a financial contribution from Financial Services. However, at a date following the one year restriction period imposed by the Canadian Demutualization Regulations, Financial Services may amend the purchase plan to provide for contributions by Financial Services towards the purchase price of Financial Services Shares.

Sun Life of Canada is prohibited by the Canadian Demutualization Regulations from providing its directors, officers or employees with a fee, compensation or any other consideration in relation to the demutualization, other than regular compensation relating to their position and any benefits to which they may be entitled as an eligible policyholder.

## 15.4 Payment of Interest

Unless otherwise stated, all amounts to be paid to eligible policyholders under the Conversion Plan will be paid without interest.

## 15.5 Experts' Consents

Each expert whose report appears as a schedule to Part 1 or Part 2 of this Policyholder Information Circular or whose opinion is referred to in section 11 of Part 1 of this Policyholder Information Circular has given and has not withdrawn its written consent to the issue of this Policyholder Information Circular with the inclusion of its report or opinion or reference to its name in this Policyholder Information Circular in the form and the context in which it is included.

## 16. PART 1 GLOSSARY

The following words or expressions that are used frequently in Part 1 of this Policyholder Information Circular have the following meanings.

| | |
|---|---|
| **Actuarial Opinions** ......... | The opinion of the Appointed Actuary and the opinion of the Independent Actuary. The Actuarial Opinions are attached as Schedule C and Schedule D to Part 1 of this Policyholder Information Circular. |
| **Appointed Actuary** ......... | Robert Wilson, Sun Life of Canada's actuary appointed under the Canadian Insurance Act. |
| **Canadian Demutualization Regulations** .............. | Mutual Company (Life Insurance) Conversion Regulations made under the Canadian Insurance Act, which establish the regime that allows Canadian federal mutual life insurance companies to convert to companies with common shares. |
| **Canadian Insurance Act** ..... | *Insurance Companies Act* (Canada). |
| **Canadian Tax Act** .......... | *Income Tax Act* (Canada). |
| **Cash Election** ............. | The process by which eligible policyholders in the Principal Jurisdictions who are issued Financial Services Shares as demutualization benefits (other than minors and trustees of United Kingdom group pension schemes) may elect to sell their Financial Services Shares for cash and Designated Canadian Policyholders may elect to receive as their demutualization benefits cash directly from Sun Life of Canada. |
| **Choices Circular** .......... | The Circular containing detailed information about the Cash Election and Share Election which Sun Life of Canada will send to eligible policyholders in Principal Jurisdictions and Secondary Jurisdictions in late January or early February 2000. |
| **Choices Form** ............ | The form by which eligible policyholders in Principal Jurisdictions and Secondary Jurisdictions may make the Cash Election or the Share Election. |
| **Conversion Plan** .......... | The plan to convert Sun Life of Canada from a mutual company to a company with common shares, which, for purposes of the Canadian Insurance Act, constitutes a conversion proposal. The Conversion Plan is attached as Schedule A to Part 1 this Policyholder Information Circular. |
| **Default Cash Election** ....... | Eligible policyholders in a Secondary Jurisdiction or the trustees of a United Kingdom group pension scheme who do not make the Share Election to keep Financial Services Shares will be deemed to have elected to sell their shares for cash in the initial public offering. |
| **demutualization benefits** .... | Financial Services Shares, cash or Policy Credits to be received by eligible policyholders on demutualization in exchange for their rights with respect to, or any interest in, Sun Life of Canada as a mutual company. |
| **Demutualization Resolution** .. | The special resolution approving the Conversion Plan to allow Sun Life of Canada to demutualize. The Demutualization Resolution is attached as Schedule B to Part 1 of this Policyholder Information Circular. |



SL-0237

| | |
|---|---|
| **Designated Canadian Policyholder** | Holder of a Canadian group insurance policy or group pension policy or a holder of any other eligible policy with an address in Canada who is not shown on Sun Life of Canada's records as an individual. |
| **DPSP** | A deferred profit sharing plan under the Canadian Tax Act. |
| **eligible policy** | In general, a participating policy that was in force on January 27, 1998. See section 4.2, "Eligible Policyholders". |
| **eligible policyholder** | The person (or persons) whose name appears on Sun Life of Canada's records as the owner of an eligible policy. See section 4.2, "Eligible Policyholders". |
| **ERISA** | United States Employee Retirement Income Security Act of 1974. |
| **Financial Services** | Sun Life of Canada Holdings Corp., a corporation formed for the purpose of becoming the holding company of Sun Life of Canada on demutualization and which expects to change its name to Sun Life Financial Services of Canada Inc. before the Special Meeting. |
| **Financial Services Board** | Board of Directors of Financial Services. |
| **Financial Services Shares** | Common shares of Financial Services. |
| **group insurance policy** | A policy, other than a pension policy,<br>■ under which the lives and/or the health of a number of persons (other than the members of a single family only) are insured severally under a single contract between Sun Life of Canada and an employer or other person, or periodic annuity payments are made to a number of persons (other than members of a single family only) under a single contract between Sun Life of Canada and an employer or other person, and<br>■ which is classified as a group insurance policy in Sun Life of Canada's records. |
| **Independent Actuary** | Nicholas Bauer, FCIA, FSA, MAAA, partner of Eckler Partners Ltd., the independent actuary retained to provide an opinion on the Conversion Plan as required under the Canadian Demutualization Regulations. |
| **Initial Share Price** | The price at which the Financial Services Shares are to be sold in the initial public offering. An estimate of the Initial Share Price is provided under section 4.15, "Estimated Value of Benefits". |
| **IRS** | Internal Revenue Service of the United States. |
| **lost policyholder** | An eligible policyholder whose current address is not known to Sun Life of Canada. |
| **Mandatory Sale Proceeds** | Cash proceeds from the sale of Mandatory Sale Shares. |
| **Mandatory Sale Shares** | Financial Services Shares issued to eligible policyholders whose address for mailing purposes as shown on Sun Life of Canada's records is in an Other Jurisdiction and to minors, all of which are required to be sold in connection with the initial public offering of Financial Services. |

**Michigan Insurance Commissioner** ............ Commissioner of Insurance of the State of Michigan.

**Minister of Finance of Canada** Includes any Minister of State to which the Minister of Finance has delegated any of his powers, duties and responsibilities under the Canadian Insurance Act.

**minor** .................. An eligible policyholder who has not attained the age of majority in the jurisdiction in which the policyholder is resident by the deadline for receipt by Sun Life of Canada of the Choices Form and for whom Sun Life of Canada does not have notice of the appointment of a guardian.

**Other Jurisdictions** ......... All jurisdictions other than the Principal Jurisdictions and the Secondary Jurisdictions.

**OSFI** .................. The Office of the Superintendent of Financial Institutions which administers the Canadian Insurance Act and is the primary regulator of financial institutions in Canada, including Sun Life of Canada.

**participating policy** ........ A policy that entitles the participating policyholder to participate in the profits of Sun Life of Canada.

**participating policyholder** ... An owner of a participating policy.

**pension policy** ........... A policy under which retirement benefits are provided to an individual or individuals after the termination of employment and which is subject to applicable legislation relating to pensions.

**Policy Credits** ............ Enhancements to the benefits under a participating policy. See section 4.10, "Policy Credits".

**policy dividend** ........... Dividend paid on participating policies, which, in some jurisdictions, including the United Kingdom, is called a bonus.

**Principal Jurisdictions** ...... Canada, the United States (including the States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, the insular possessions of the United States and United States military addresses), the United Kingdom (England, Scotland, Wales and Northern Ireland), the Philippines and Bermuda.

**RRIF** ................... Registered retirement income fund under the Canadian Tax Act.

**RRSP** ................... Registered retirement savings plan under the Canadian Tax Act.

**Secondary Jurisdictions** ..... Hong Kong, the Republic of Ireland, the Channel Islands (including Guernsey and Jersey) and the Isle of Man.

**Share Election** ............ The process by which eligible policyholders in the Secondary Jurisdictions (other than minors) or trustees of United Kingdom group pension schemes may elect to keep Financial Services Shares issued to them as their demutualization benefits rather than to receive the cash proceeds from the sale of those shares in the initial public offering.

**Share Selling Service** ....... The service for eligible policyholders to sell their Financial Services Shares after the initial public offering. See section 4.17, "Share Selling Service".

**Stock Exchanges** .......... Collectively, The Toronto Stock Exchange, the Montreal Exchange, the New York Stock Exchange, the London Stock Exchange and the Philippine Stock Exchange, which are all the public exchanges on which Sun Life of Canada intends to apply to list the Financial Services Shares.

**Sun Life of Canada** ......... Sun Life Assurance Company of Canada, a mutual life company incorporated under the Canadian Insurance Act.

**Sun Life of Canada (International), Sun Life of Canada (Philippines) and Sun Life of Canada (U.K.)** .... Sun Life of Canada (International) Limited, Sun Life of Canada (Philippines), Inc. and Sun Life Assurance Company of Canada (U.K.) Limited, respectively, all wholly-owned subsidiaries of Sun Life of Canada.

**Sun Life of Canada Share Account** ................. An arrangement under which CIBC Mellon Trust Company, the registrar and transfer agent for the Financial Services Shares in Canada, or its co-agents or their affiliates will hold Financial Services Shares as nominee for eligible policyholders who choose or are required to have their shares held by the nominee, which will be held in an account called the Sun Life of Canada Share Account.

**Sun Life of Canada Board** .... Board of Directors of Sun Life of Canada.

**Superintendent** ........... Superintendent of Financial Institutions appointed under the *Office of the Superintendent of Financial Institutions Act (Canada)*.

**Underwriters** ............. Investment dealers and investment banks who enter into underwriting agreements with Financial Services and Sun Life of Canada for the initial public offering.

**United States Tax Code** ...... United States Internal Revenue Code of 1986.

**Valuation Report** .......... The report of Morgan Stanley & Co. Incorporated and RBC Dominion Securities Inc., as required under the Canadian Demutualization Regulations, estimating a range of public equity market values of Sun Life of Canada as of September 24, 1999. The Valuation Report is attached as Schedule E to Part 1 of this Policyholder Information Circular.

**Your Share Allocation Statement** ............... The statement included with this Policyholder Information Circular which informs you about the demutualization benefits you will receive and related matters.

**Your Voting Form** ......... The form included with this Policyholder Information Circular on which eligible policyholders may appoint someone else – called a proxyholder – to vote on their behalf at the Special Meeting on the Demutualization Resolution. See section 6, "How to Vote".

# ADVISORS

**Consulting actuary**
Tillinghast-Towers Perrin
175 Bloor Street East
Toronto, Ontario
Canada M4W 3T6

**Independent actuary**
Nicholas Bauer
Eckler Partners Ltd.
Suite 2260, 1501 McGill College Avenue
Montreal, Quebec
Canada H3A 3M8

**Financial advisors**
***Canada:***
RBC Dominion Securities Inc.
Royal Bank Plaza
South Tower, 4th Floor
Toronto, Ontario
Canada M5J 2W7

***United States:***
Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036
U.S.A.

**Legal and tax advisors**
***Canada:***
Tory Tory DesLauriers & Binnington
Suite 3000, Aetna Tower
Toronto-Dominion Centre
Toronto, Ontario
Canada M5K 1N2

**Legal and tax advisors (cont.)**
***United States:***
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
125 West 55th Street
New York, New York 10019-5389
U.S.A.

Dykema Gossett PLLC
800 Michigan National Tower
Lansing, Michigan 48933-1707
U.S.A.

***United Kingdom:***
Freshfields
65 Fleet Street
London EC4Y 1HS
United Kingdom

***Philippines:***
Quasha Ancheta Pena & Nolasco
Don Pablo Building
114 Amarsolo Street
Makati City, Philippines

Romulo Mabanta Buenaventura Sayoc & De Los Angeles
30th Floor, Citibank Tower
8741 Paseo de Roxas
Makati City, Philippines

SyCip Gorres Velayo & Co.
6760 Ayala Avenue
1226 Makati City, Philippines

***Hong Kong:***
Freshfields
12th Floor
Two Exchange Square
Hong Kong

**Auditors**
Deloitte & Touche LLP
Suite 1400, BCE Place
181 Bay Street
Toronto, Ontario
Canada M5J 2V1

**Call Centre advisor**
Call Centre Support Associates Inc.
Suite 910, 505 Consumers Road
Toronto, Ontario
Canada M2S 4V8

**Logistics advisor**
Solid Solutions Associates
5 St. John's Lane
London EC1M 4BH
United Kingdom

**Plain language advisor**
Simplified Communications Group Inc.
Suite 210, 250 The Esplanade
Toronto, Ontario
Canada M5A 1J2

# TRANSFER AGENTS AND REGISTRARS

***Canada:***
CIBC Mellon Trust Company
320 Bay Street,
3rd Floor
Toronto, Ontario
Canada M5H 4A6

***United States:***
ChaseMellon Shareholder Services, L.L.C.
Overpeck Centre
85 Challenger Road
Ridgefield Park
New Jersey 07660
U.S.A.

***United Kingdom:***
IRG plc
Bourne House
34 Beckenham Road
Beckenham, Kent BR3 4TU
United Kingdom

***Philippines:***
The Hongkong and Shanghai Banking Corporation
33/F Philippine Stock Exchange Centre
West Tower, Exchange Road
Ortigas Centre, Pasig City
Philippines

***Hong Kong:***
Central Registration Hong Kong Limited
Room 1901-5, 19th Floor
Hopewell Centre
183 Queen's Road East
Wanchai, Hong Kong

***Bermuda:***
The Bank of N.T. Butterfield & Son Ltd.
65 Front Street
Hamilton HM 12
Bermuda

(This page has been left blank intentionally.)

# CONVERSION PLAN

# OF

# SUN LIFE ASSURANCE COMPANY OF CANADA

Under section 237 of
the *Insurance Companies Act* (Canada)

Dated as of September 28, 1999

## TABLE OF CONTENTS

### ARTICLE 1. INTERPRETATION


| | | Page |
|---|---|---|
| 1.1 | Definitions | 94 |
| 1.2 | Headings and Table of Contents | 99 |
| 1.3 | Gender and Number | 99 |
| 1.4 | Currency | 99 |


### ARTICLE 2. THE CONVERSION


| | | |
|---|---|---|
| 2.1 | Effective Date | 100 |
| 2.2 | Conversion and Consequences of Conversion | 100 |
| 2.3 | Designation of Policyholders' Directors and Shareholders' Directors | 101 |


### ARTICLE 3. ELIGIBILITY


| | | |
|---|---|---|
| 3.1 | General | 101 |
| 3.2 | Policies | 101 |
| 3.3 | In Force | 102 |
| 3.4 | Eligible Policies | 102 |
| 3.5 | Eligible Policyholders | 103 |
| 3.6 | Renunciation of Demutualization Benefits | 104 |


### ARTICLE 4. ALLOCATION AND DISTRIBUTION OF DEMUTUALIZATION BENEFITS


| | | |
|---|---|---|
| 4.1 | Method of Allocation of Demutualization Benefits | 104 |
| 4.2 | Allocation of Variable Component | 104 |
| 4.3 | Calculation of Certain Amounts | 105 |
| 4.4 | Rationale for Allocation of Benefits | 108 |
| 4.5 | Distribution of Financial Services Shares as Demutualization Benefits | 108 |
| 4.6 | Distribution of Policy Credits as Demutualization Benefits | 109 |
| 4.7 | Distribution of Cash as Demutualization Benefits | 110 |
| 4.8 | Restrictions on Distribution of Benefits – Title Restricted Policies | 110 |
| 4.9 | Restrictions on Distribution of Benefits – Lost Policyholders | 111 |
| 4.10 | Disputes and Additional Restrictions on Distribution of Benefits | 112 |
| 4.11 | Mandatory Sale for Policyholders in Other Jurisdictions and Minors | 113 |
| 4.12 | Cash Election for Policyholders in Principal Jurisdictions | 113 |
| 4.13 | Share Election for Policyholders in Secondary Jurisdictions and U.K. Pension Schemes | 114 |
| 4.14 | Initial Public Offering and Purchase of Buy-back Shares | 114 |
| 4.15 | Alternative Arrangements | 117 |
| 4.16 | Effect of Additional Share Issuances on Access to Financial Markets | 118 |
| 4.17 | Valuation of the Company | 118 |


### ARTICLE 5. RESTRUCTURING AND OPERATION OF PARTICIPATING ACCOUNT


| | | |
|---|---|---|
| 5.1 | Interpretation | 119 |
| 5.2 | Establishment of Sub-Accounts | 120 |
| 5.3 | Recording of Policies and Allocation of Liabilities as of the Effective Date | 121 |
| 5.4 | Allocation of Assets to the Pre-Conversion Participating Sub-Accounts as of the Effective Date | 121 |
| 5.5 | Transfer of Assets from the Shareholders' Account to Certain Post-Conversion Sub-Accounts as of the Effective Date | 122 |
| 5.6 | Operating Rules for Pre-Conversion Participating Sub-Accounts | 122 |

| | | Page |
|---|---|---|
| 5.7 | Transfers and Pre-Conversion Participating Sub-Accounts | 123 |
| 5.8 | Transfers from Post-Conversion Individual Participating Sub-Accounts | 123 |
| 5.9 | Mandatory Transfers from the Shareholders' Account | 124 |
| 5.10 | Provisions in Respect of Subsidiaries of the Post-Conversion Company | 124 |
| 5.11 | Amalgamation of Pre-Conversion and Post-Conversion Individual Participating Sub-Accounts | 125 |
| 5.12 | Dividend Policy | 125 |
| 5.13 | Reports by the Appointed Actuary | 126 |
| 5.14 | Amendments to Article 5 | 126 |

**ARTICLE 6.**
**FINANCIAL SERVICES AND CORPORATE REORGANIZATION**

| | | |
|---|---|---|
| 6.1 | Creation of Financial Services | 126 |
| 6.2 | Proposed Activities of Financial Services | 126 |
| 6.3 | Corporate Reorganization Related to the Conversion | 126 |

**ARTICLE 7.**
**CONDITIONS**

| | | |
|---|---|---|
| 7.1 | Effectiveness of Conversion Plan | 127 |

**ARTICLE 8.**
**ADDITIONAL PROVISIONS**

| | | |
|---|---|---|
| 8.1 | Notices | 127 |
| 8.2 | Authority to Remedy Errors | 127 |
| 8.3 | Amendments to or Withdrawal of Conversion Plan | 128 |
| 8.4 | Payment of Interest | 128 |
| 8.5 | Governing Law | 128 |

| | | |
|---|---|---|
| EXHIBIT A - | Form of Amended and Restated By-laws of the Company | 129 |
| EXHIBIT B - | Allocation of Value | 139 |
| EXHIBIT C - | Valuation Report | 141 |
| EXHIBIT D - | Restructuring and Operation of Participating Account | 142 |
| EXHIBIT E - | Excerpts from By-law of Financial Services Relating to Issuance of Shares | 149 |

**CONVERSION PLAN**
**OF**
**SUN LIFE ASSURANCE COMPANY OF CANADA**

**RECITALS:**

1. On January 27, 1998, the Board instructed management to prepare a conversion proposal to effect the demutualization of the Company.
2. On September 28, 1999, the Board unanimously adopted this Conversion Plan which provides for the conversion of the Company from a Life Company that is a Mutual Company into a Life Company with common shares.
3. The Board believes the Conversion is in the best interests of Sun Life of Canada and its policyholders as a whole.
4. On issuance of Letters Patent of Conversion, Eligible Policyholders' Ownership Rights will cease and Eligible Policyholders will receive in exchange therefor Financial Services Shares, Policy Credits or cash.
5. In connection with the Conversion, but subject to obtaining satisfactory regulatory approvals in all relevant jurisdictions, Sun Life of Canada will effect a corporate reorganization.

This Conversion Plan provides as follows.

## ARTICLE 1.

## INTERPRETATION

### 1.1 Definitions

As used in this Conversion Plan, the following terms have the following meanings:

**"Additional Primary Shares"** means newly issued Financial Services Shares sold in the Initial Public Offering, other than the Primary Shares and any shares issued pursuant to the exercise of an over-allotment option granted to the Underwriters in the Underwriting Agreements.

**"Appointed Actuary"** means the actuary of Sun Life of Canada appointed pursuant to the ICA.

**"Benefits Date"** means the date chosen by the Company as the deadline for receipt of the Choices Form.

**"Board"** means the board of directors of Sun Life of Canada.

**"Buy-back Shares"** has the meaning specified in section 4.14(b).

**"Cancellation Date"** has the meaning specified in section 4.9(d).

**"Cash Election"** has the meaning specified in section 4.12(a).

**"Choices Circular"** means a circular of the Company to be mailed to Eligible Policyholders in the Principal Jurisdictions and the Secondary Jurisdictions after the date of the Special Meeting and before the Effective Date describing, among other things, the Cash Election or the Share Election, as applicable.

**"Choices Form"** means the form by which Eligible Policyholders in the Principal Jurisdictions and the Secondary Jurisdictions may make the Cash Election or the Share Election, as applicable.

**"Common Shares"** means the common shares of the Post-Conversion Company.

**"Company"** means Sun Life Assurance Company of Canada, a Life Company, to which the ICA applies pursuant to section 13(1)(b) of the ICA, that is a Mutual Company.

**"Conversion"** means the conversion of the Company from a Life Company that is a Mutual Company into a Life Company with common shares pursuant to section 237.1 of the ICA and this Conversion Plan, as provided for in section 2.2(a).

**"Conversion Plan"** means this Conversion Plan (including all exhibits), as amended from time to time in accordance with section 5.14 or Article 8, being a conversion proposal as defined in section 236.1 of the ICA.

**"Demutualization Benefits"** means the Financial Services Shares to be issued to, Policy Credits to be credited for or cash to be received by, Eligible Policyholders upon Conversion in exchange for their Ownership Rights.

**"Designated Canadian Policyholder"** means a Person whose Residence is in Canada on the Benefits Date and who is the holder of an Eligible Policy which is a Group Insurance Policy, a Pension Policy or any other Policy which is classified on the Records of the Company as not issued to an individual.

**"Effective Date"** has the meaning specified in section 2.1.

**"Effective Time"** has the meaning specified in section 2.1.

**"Electing Shares"** means the Financial Services Shares subject to the Cash Election, which are comprised of the Buy-back Shares, the Resale Shares, allocated shares in respect of which Designated Canadian Policyholders have made the Cash Election and the Financial Services Shares deemed to be Electing Shares pursuant to section 4.13(c).

**"Eligibility Day"** means January 27, 1998.

**"Eligible Policy"** has the meaning specified in section 3.4.

**"Eligible Policyholder"** means the Owner of one or more Eligible Policies as determined pursuant to section 3.5.

**"Extra Premiums"** means, in respect of any Eligible Policy, that portion of the premium payable on the Policy, according to the Records of the Company, calculated by reference to a sub-standard risk insured under the Policy and payable either for the same period as the other portion of the premium under the Policy, or, if for a lesser period, at least twenty years.

**"Financial Services"** means Sun Life of Canada Holdings Corp., a corporation incorporated under the ICA which will own all of the Common Shares pursuant to this Conversion Plan.

**"Financial Services Board"** means the board of directors of Financial Services.

**"Financial Services Shares"** means the common shares of Financial Services.

**"Group Insurance Policy"** means a Policy, other than a Pension Policy,

(a) pursuant to which (i) the lives and/or the health of a number of Persons (other than the members of a single family only) are insured severally under a single contract between Sun Life of Canada and an employer or other Person; or (ii) periodic annuity payments are made to a number of Persons (other than members of a single family only) under a single contract between Sun Life of Canada and an employer or other Person; and

(b) which is classified as a group insurance policy on the Records of the Company.

**"ICA"** means the *Insurance Companies Act* (Canada), as amended.

**"In Force"** has the meaning specified in section 3.3.

**"Initial Public Offering"** means the initial public offering of Financial Services Shares, as provided for in section 4.14.

**"Initial Share Price"** means the price per share at which Financial Services Shares will be sold to the Underwriters pursuant to the Underwriting Agreements and offered to the public in the Initial Public Offering and includes such price in each currency in which it is expressed.

**"IPO Residency Date"** means the date on which the closing of the Initial Public Offering occurs.

**"IPO Shares"** means the Financial Services Shares to be sold to the Underwriters pursuant to the Underwriting Agreements and offered to the public in the Initial Public Offering, other than Financial Services Shares issued pursuant to an over-allotment option granted to the Underwriters in the Underwriting Agreements.

**"Letters Patent of Conversion"** means the letters patent of the Post-Conversion Company to be issued by the Minister to effect this Conversion Plan.

**"Life Company"** means a company incorporated or continued under the ICA or to which the ICA applies pursuant to section 13(1)(b) of the ICA that is permitted to insure risks falling within the class of life insurance, other than a company that is also permitted to insure risks falling within any other class of insurance other than accident and sickness insurance, accident insurance, personal accident insurance, sickness insurance and loss of employment insurance.

**"Lost Policyholder"** means an Eligible Policyholder who is classified on the Records of the Company on the Effective Date as having a current address which is unknown to Sun Life of Canada or who is deemed to be a Lost Policyholder under section 4.10(c).

**"Lost Policyholder Claim Date"** has the meaning specified in section 4.9(a).

**"Mandatory Sale"** has the meaning specified in section 4.11(a).

**"Mandatory Sale Shares"** has the meaning specified in section 4.11(a).

**"Market Conduct Settlements"** means claims of policyholders which remain outstanding under settlement agreements entered into by the Company in respect of class actions and related legal actions brought prior to the Effective Date in Canada and the United States related to market conduct in the sale of whole life insurance policies.

**"Michigan Commissioner"** means the Michigan Commissioner of Insurance, or such governmental officer, body or authority as may succeed the Commissioner as the primary insurance regulator in the State of Michigan.

**"Michigan Insurance Code"** means the *Michigan Insurance Code of 1956*, as amended.

**"Minister"** means the Minister of Finance (Canada) or a Minister of State who is delegated the powers, duties and functions of the Minister of Finance (Canada) under the ICA in respect of the Conversion.

**"Minor"** means an Eligible Policyholder who, on the Benefits Date, is classified on the Records of the Company as not having attained the age of majority according to the laws of the jurisdiction in which the policyholder resides and for whom on the Benefits Date the Company has not received notice of the proper appointment of a guardian of property.

**"Misrepresentation"** means:

(a) an untrue statement of material fact; or

(b) an omission to state a material fact that is required to be stated or that is necessary to make a statement not misleading in the light of the circumstances in which it was made,

where "material fact" means a fact that significantly affects, or would reasonably be expected to have a significant effect on, the market price or value of the Financial Services Shares.

**"Mutual Company"** means:

(a) a company that is incorporated or continued as a mutual company under the ICA;

(b) a company to which the ICA applies, pursuant to section 13(1)(b) of the ICA, that had no issued and outstanding shares on June 1, 1992; or

(c) a company that is converted into a mutual company under sections 226 to 236 of the ICA,

and that is not converted into a company with common shares under the ICA.

**"Other Jurisdictions"** means all jurisdictions other than:

(a) the Principal Jurisdictions;