A

(b) the Secondary Jurisdictions; and

(c) political subdivisions of the Principal Jurisdictions and Secondary Jurisdictions.

**"Owner"** means, in respect of any Policy, the Person or Persons specified or determined pursuant to section 3.5.

**"Ownership Rights"** means all Eligible Policyholders' rights with respect to, or any interest in, the Company as a Mutual Company that will cease on the Effective Date pursuant to section 237.1 of the ICA.

**"Participating Policy"** means a Policy that entitles the policyholder to participate in the profits of the Company or, after the Effective Time, the Post-Conversion Company.

**"Pension Policy"** means a Policy under which retirement benefits are provided to an individual or individuals after the termination of employment and which is subject to applicable legislation relating to pensions.

**"Permitted Group Premiums"** means, in respect of an Eligible Policy which is a Group Insurance Policy, for any period during which premiums are paid or payable to Sun Life of Canada, the amount of premiums in respect of regular group life insurance coverage, survivor income benefit and creditor life coverage (other than premiums for accidental death and dismemberment coverage and other than premiums paid for paid-up coverage and non-regular or cost plus premiums) and, in the case of a Policy issued through the Company's United Kingdom branch, premiums in respect of group health coverage, less, in either case, the aggregate amount of premiums reinsured during that period on a first dollar proportional basis with any insurance company or reinsurance company owned or controlled, directly or indirectly, by the holder of the Policy.

**"Person"** means an individual, corporation, joint venture, partnership, association, trust, trustee, unincorporated entity, organization or government or any department or agency thereof.

**"Policy"** has the meaning specified in section 3.2.

**"Policy Credit"** means:

(a) for an individual or joint ordinary life insurance Policy, an increase in the dividend accumulation value, if that is the dividend option elected for the Policy, and an increase in the paid-up addition cash value, if any other dividend option has been elected for the Policy;

(b) for a Policy which is In Force as extended term life insurance pursuant to a nonforfeiture provision of a life insurance policy, an extension of the coverage expiry date;

(c) for a Policy which is a deferred annuity certificate, an increase in the deferred annuity payment (and if the annuity payment is on a life basis, the increase will be on a life annuity with cash refund basis); and

(d) for a Policy which is an individual accumulation annuity, an increase in the account value, to which no sales or surrender or similar charges will be applied.

**"Policy Loan"** means an advance made by Sun Life of Canada to a policyholder on the security of or against the cash surrender value of a Policy.

**"Post-Conversion Company"** means the Life Company with common shares resulting from the Conversion of the Company.

**"Primary Shares"** has the meaning specified in section 4.14(c).

**"Principal Jurisdiction Lost Policyholders"** has the meaning specified in section 4.9(b).

**"Principal Jurisdictions"** means Canada, the United States (including the States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, the insular possessions of the United States and United States military addresses), the United Kingdom (England, Scotland, Wales and Northern Ireland), the Philippines and Bermuda.

**"Records of the Company"** means the books and records of Sun Life of Canada kept in the ordinary course of business, as corrected in those cases where there is a demonstrable error in the books and records.

**"Resale Shares"** has the meaning specified in section 4.14(d).

**"Resale Shares Transfer Fees"** means all taxes, stamp duties, commissions (other than any applicable underwriting fees or commissions as provided in the Underwriting Agreements) and transfer or administrative charges payable to stock exchanges, depositaries, governmental taxation authorities, local dealers and other third parties which are incurred in connection with a sale of Resale Shares in a manner varied pursuant to section 4.14(d), but excluding capital gains or income taxes which may be payable in respect of such sale.

**"Residence"** means, in respect of an Eligible Policyholder, the mailing address of the policyholder as shown on the Records of the Company.

**"Secondary Jurisdictions"** means Hong Kong, the Republic of Ireland, the Channel Islands (including Guernsey and Jersey) and the Isle of Man.

**"Settlement Option"** means an option exercised upon the death of an insured under a Policy other than a Group Insurance Policy or the maturity of a Policy other than a Group Insurance Policy under which the proceeds are paid as a series of payments instead of as a single payment.

**"Share Election"** has the meaning specified in section 4.13(a).

**"Share Selling Service"** has the meaning specified in section 4.14(j).

**"Shareholding Nominee"** has the meaning specified in section 4.5(b).

**"Special Meeting"** means the meeting of Eligible Policyholders of the Company duly called for the purposes of the Conversion in accordance with section 237(1.1) of the ICA.

**"Stock Exchanges"** has the meaning specified in section 4.14(i).

**"Subsidiary"** means, in respect of Sun Life of Canada or Financial Services, a body corporate controlled by Sun Life of Canada or Financial Services, respectively. For the purposes of determining control:

(a) a Person controls a body corporate if securities of the body corporate to which are attached more than 50 per cent of the votes that may be cast to elect directors of the body corporate are beneficially owned by the Person and the votes attached to those securities are sufficient, if exercised, to elect a majority of the directors of the body corporate;

(b) a Person controls an unincorporated entity, other than a limited partnership, if more than 50 per cent of the ownership interests, however designated, into which the entity is divided are beneficially owned by the Person and the Person is able to direct the business and affairs of the entity; and

(c) the general partner of a limited partnership controls the limited partnership.

For this purpose, where a Person controls an entity, the Person is deemed to control any entity that is controlled, or deemed to be controlled, by the entity and a Person is deemed to control an entity where the aggregate of:

(d) any securities of the entity that are beneficially owned by the Person; and

(e) any securities of the entity that are beneficially owned by any entity controlled by the Person,

is such that, if the Person and all of the entities specified in paragraph (e) that beneficially own securities of the entity were one Person, that Person would control the entity.

**"Sun Life of Canada"** includes the Company and the Post-Conversion Company, as the context may require.

**"Superintendent"** means the Superintendent of Financial Institutions appointed to such office pursuant to the *Office of the Superintendent of Financial Institutions Act* (Canada) or such governmental officer, body or authority as may succeed such Superintendent in such appointment.

**"Title Restricted Policy"** means an Eligible Policy which is recorded on the Records of the Company as being subject to a Title Restriction, which Title Restriction has not been removed and the removal of which has not been confirmed with Sun Life of Canada, in a manner satisfactory to Sun Life of Canada, on or prior to the Benefits Date.

**"Title Restriction"** means an assignment for the purposes of security (other than an assignment to secure a Policy Loan), a lien, any other security interest, a court-ordered garnishment, a bankruptcy or insolvency proceeding, or other title restriction.

**"Transfer Agent"** means CIBC Mellon Trust Company, the registrar and transfer agent for the Financial Services Shares, or its successors or assigns, and **"Co-Transfer Agent"** means any of the delegated subagents of the Transfer Agent.

**"U.K. Company"** has the meaning specified in section 2.2(a)(I).

**"U.K. Pension Scheme"** means an Eligible Policyholder who is a trustee or trustees of a Pension Policy that is a company pension scheme insured by the Company's United Kingdom business.

**"U.K. 2C Scheme"** has the meaning specified in section 2.2(a)(I).

**"Underwriters"** means the investment dealers or investment banks who enter into the Underwriting Agreements in respect of the Initial Public Offering.

**"Underwriting Agreements"** means one or more underwriting agreements to be entered into between Sun Life of Canada, Financial Services and the Underwriters in respect of the Initial Public Offering, as amended from time to time.

**"U.S. Tax Code"** means the *United States Internal Revenue Code of 1986*, as amended.

**"U.S. Tax Limit"** means the maximum number of Resale Shares and Mandatory Sale Shares that the Financial Services Board, in its sole discretion, on advice from Financial Services' United States tax counsel, considers may be sold in the Initial Public Offering by Eligible Policyholders without resulting in adverse tax consequences under the U.S. Tax Code to Eligible Policyholders who retain Financial Services Shares and who are U.S. residents.

**"Value of Policy Credits"** has the meaning specified in section 4.6(d).

## 1.2 Headings and Table of Contents

The inclusion of headings and a table of contents in this Conversion Plan is for convenience of reference only and shall not affect the construction or interpretation hereof.

## 1.3 Gender and Number

In this Conversion Plan, unless the context otherwise requires, words importing the singular include the plural and vice versa and words importing gender include all genders.

## 1.4 Currency

Except where otherwise expressly provided, all amounts in this Conversion Plan are stated in Canadian currency. References to "Can. $" are references to Canadian dollars. All amounts payable to an Eligible Policyholder in consideration of the proceeds of sale of Resale Shares, Buy-back Shares or Mandatory Sale Shares or as direct cash pursuant to section 4.7 shall be distributed to the policyholder in the currency determined as follows:

| Country of Residence on the Benefits Date | Country of Currency |
|---|---|
| Canada | Canada |
| United States | United States |
| United Kingdom | United Kingdom |
| Philippines | Philippines |
| Hong Kong | Hong Kong |
| Bermuda | United States |
| Republic of Ireland | Republic of Ireland |
| Malta | Malta |
| Channel Islands | United Kingdom |
| Isle of Man | United Kingdom |
| Other | Country from which Sun Life of Canada administers the Eligible Policy |

An Eligible Policyholder in Malta or in a country in the "Other" category may request at any time on or prior to the Benefits Date that the currency determined above be changed to any one of the currency of Canada, the United States, the United Kingdom, the Philippines or Hong Kong.

The amounts to be distributed to Eligible Policyholders in each of these currencies will be calculated (i) in the case of amounts calculated on the basis of the Initial Share Price and payable in a currency in which the Initial Share Price is expressed, based on the Initial Share Price expressed in such currency; and (ii) in the case of amounts calculated on the basis of the Initial Share Price and payable in any other currency, by applying the applicable Exchange Rate to the Initial Share Price expressed in Canadian currency. For this purpose, "Exchange Rate" means, in respect of any currency, the rate of exchange paid by Financial Services to its bankers to obtain the currency.

All amounts credited to Eligible Policyholders as Policy Credits will be credited in the currency in which their Policy is denominated.

## ARTICLE 2.

## THE CONVERSION

### 2.1 Effective Date

The effective date of this Conversion Plan (the "Effective Date") shall be the effective date stated in the Letters Patent of Conversion, which date shall be on or after the date upon which all of the conditions set forth in Article 7 have been satisfied. This Conversion Plan shall be deemed to have become effective at 12:01 a.m. (Toronto time) on the Effective Date (the "Effective Time").

### 2.2 Conversion and Consequences of Conversion

(a) At the Effective Time, the Conversion shall occur in the following order:

(i) the business of Sun Life of Canada conducted through the Company's United Kingdom branch shall be transferred pursuant to section 49 of and Part I of Schedule 2C to the *Insurance Companies Act 1982* (as amended) (the "U.K. 2C Scheme") to Sun Life Assurance Company of Canada (U.K.) Limited (the "U.K. Company"), a wholly-owned Subsidiary of the Company;

(ii) all policyholders' rights with respect to, or any interest in, Sun Life of Canada as a Mutual Company, including Ownership Rights, shall cease;

(iii) the amended and restated by-laws of Sun Life of Canada, as set forth in Exhibit A, shall come into force;

(iv) Sun Life of Canada shall issue to Financial Services a number of common shares not greater than the number of Financial Services Shares allocated to Eligible Policyholders pursuant to section 4.1;

(v) Financial Services shall issue Financial Services Shares to Eligible Policyholders entitled to shares in accordance with Article 4 and the other Eligible Policyholders will become entitled to receive Policy Credits or cash in accordance with Article 4;

(vi) Sun Life of Canada shall surrender to Financial Services, and Financial Services shall purchase for cancellation, all of the outstanding Financial Services Shares and preferred shares of Financial Services held by Sun Life of Canada, for consideration equal to the initial issue price of the shares plus any accrued dividends;

(vii) amounts shall be transferred from the accounts specified in section 456 of the ICA, and the accounts shall be restructured, in accordance with Article 5;

(viii) the policyholder dividend policy specified in section 5.12 shall take effect; and

(ix) the designation of policyholders' directors and shareholders' directors specified in section 2.3 shall take effect.

(b) As a result of the Conversion:

(i) Sun Life of Canada shall cease to be a Life Company that is a Mutual Company and become a Life Company with common shares by operation of section 237.1 of the ICA; Sun Life of Canada's corporate existence as a Life Company with common shares shall be a continuation of its existence as a Life Company that is a Mutual Company; and

(ii) this Conversion Plan will be legally binding on Financial Services, Sun Life of Canada and its policyholders.

(c) Subject to sections 2.2(a)(i) and 6.3, all Policies in force on the Effective Date shall continue to remain in force under the terms of the policies.

(d) All holders of Participating Policies in force on the Effective Date shall continue to have the right to receive dividends in accordance with the dividend policy applicable to their Participating Policies as contemplated by this Conversion Plan, if any.

### 2.3 Designation of Policyholders' Directors and Shareholders' Directors

(a) Upon the Effective Date, the Post-Conversion Company will have both a common shareholder (being Financial Services) and policyholders who are entitled to vote at meetings of shareholders and policyholders, including annual meetings. In accordance with section 173(5) of the ICA and the by-laws of the Post-Conversion Company:

(i) each of the following members of the Board is designated as a policyholders' director for the remaining term of his or her office:

| | |
|---|---|
| Dian N. Cohen | Sir Bob Reid |
| Bertin F. Nadeau | William W. Stinson |
| Ronald W. Osborne | W. Vickery Stoughton |

(ii) each of the following members of the Board is designated as a shareholders' director for the remaining term of his or her office:

| | |
|---|---|
| Prof. M. Colyer Crum | John D. McNeil |
| Stanley H. Hartt | Alfred Powis |
| The Hon. Donald S. Macdonald | Donald A. Stewart |
| John M. MacLeod | David G. Vice |
| Angus A. MacNaughton | Jeannine Guillevin Wood |

(b) If one of the members of the Board specified in section 2.3(a) ceases to be a director (in this section, a "retiring director") before the end of the remaining term of his or her office, any director elected or appointed to replace the retiring director shall be designated as the same category of director as the retiring director was designated.

## ARTICLE 3.

## ELIGIBILITY

### 3.1 General

Demutualization Benefits will be provided only to Eligible Policyholders and Demutualization Benefits will be provided only in respect of Policies which entitle their owners to vote at meetings of the Company. All of the Demutualization Benefits to be provided pursuant to this Conversion Plan will be provided to holders of Participating Policies. Only Eligible Policyholders will be entitled to vote at the Special Meeting. The following rules in this Article 3 shall be applied for the purposes of determining which Policies are Eligible Policies and which Persons are Eligible Policyholders.

### 3.2 Policies

(a) The following contracts and policies are Policies for the purposes of this Conversion Plan:

(i) each life insurance policy (including, without limitation, a pure endowment contract), annuity contract, accident and health insurance policy, disability income policy or retirement and pension contract that has been issued by the Company, transferred to the Company pursuant to a scheme of transfer in the United Kingdom or assumed by the Company pursuant to a transfer or assumption reinsurance agreement; and

(ii) each certificate issued to an insured or annuitant pursuant to a Group Insurance Policy or Pension Policy issued by, transferred to or assumed by the Company that expressly states that it is a separate contract between the Company and the holder of the certificate.

(b) The following contracts and policies are not Policies for the purposes of this Conversion Plan:

(i) any certificate issued to an insured or annuitant pursuant to a Group Insurance Policy or Pension Policy, with the exception of a certificate specified in section 3.2(a)(ii);

(ii) insurance policies or annuity contracts issued by other insurers which are reinsured by the Company on an indemnity reinsurance basis;

(iii) survivor income benefits payable under a Group Insurance Policy or a Pension Policy;

(iv) insurance policies or annuity contracts issued by a Subsidiary of the Company or transferred to or assumed by a Subsidiary of the Company, otherwise than pursuant to the U.K. 2C Scheme or the corporate reorganization contemplated by section 6.3; and

(v) insurance policies or annuity contracts transferred to another insurer by way of assumption reinsurance (including a scheme of transfer in the United Kingdom) prior to the Eligibility Day.

**3.3 In Force**

(a) A Policy is In Force as of any date if, as shown on the Records of the Company, unless otherwise stated in this section 3.3, (i) it has been issued; and (ii) it has not lapsed, matured by death or otherwise or been surrendered or otherwise terminated on or before that date. A Policy matures by death on the date of the death of the life insured and not on the date that notice of the death is received by the Company. A Policy which is not a Group Insurance Policy or a Pension Policy shall be deemed to be In Force on the day that it lapses or matures by death or otherwise. A Group Insurance Policy and a Pension Policy shall be deemed to be In Force for so long as insurance is provided under it.

(b) A Policy shall be deemed to be In Force during the grace period for non-payment of premiums provided for in the Policy.

(c) A Policy that has been reinstated after not being In Force shall be deemed to be In Force commencing on the date of reinstatement, as shown on the Records of the Company, without regard to any prior period during which the Policy was not In Force.

(d) A Policy is not In Force solely because, prior to the date on which the Policy was issued, insurance coverage may have been provided by a conditional receipt.

(e) A Policy shall be deemed not to be In Force as of any date if the Policy is returned to the Company and all premiums are refunded before the Effective Date.

**3.4 Eligible Policies**

A Participating Policy that is In Force in the following circumstances is an Eligible Policy:

(a) a Participating Policy that was In Force on the Eligibility Day;

(b) a Participating Policy that was applied for on or before the Eligibility Day and was issued to the applicant after that date, if:

(i) the signed application was dated on or before the Eligibility Day; and

(ii) the application was received in an office of the Company by January 27, 1998, in the case of an application made by an agent or employee of Sun Life of Canada or a member of his or her immediate family, and, in all other cases, by the applicable date set out below:

(A) January 30, 1998, in Canada, the United States, the United Kingdom, the Philippines and Bermuda; or

(B) February 4, 1998, in Hong Kong; or

(c) a Participating Policy that lapsed before the Eligibility Day but was reinstated during the period beginning on the Eligibility Day and ending 90 days before the day on which the Special Meeting is held, by the Person who was the Owner at the time the Policy became lapsed.

**3.5 Eligible Policyholders**

An Eligible Policyholder is the Owner of one or more Eligible Policies. For the purposes of this Conversion Plan, the Owner of an Eligible Policy shall be determined on the basis of the Records of the Company as of any date, unless otherwise provided for in this section 3.5, in accordance with the following provisions.

(a) Where a Person or a specific group of Persons owns more than one Eligible Policy in the same legal capacity, the Person or group of Persons will be treated as a single Owner.

(b) There may not be more than one Owner of an Eligible Policy, although more than one Person may collectively constitute a single Owner.

(c) Where an Eligible Policy is held by a trust or trustee, the trustee will be treated as the Owner of the Policy.

(d) Where a Person or a specific group of Persons owns Eligible Policies in more than one legal capacity, the Person or group of Persons will be treated as a separate Owner of an Eligible Policy in each capacity. If a Person or a specific group of Persons owns multiple Eligible Policies as a trustee for different beneficiaries or specific groups of beneficiaries, the Person or group of Persons will be treated as a separate Owner in respect of each Eligible Policy held for a different beneficiary or specific group of beneficiaries.

(e) In dealing with a Person who owns an Eligible Policy as a fiduciary, Sun Life of Canada is not bound to inquire into the existence, extent or correct description of the fiduciary relationship and Sun Life of Canada may assume without inquiry that the fiduciary shown on the Records of Sun Life of Canada continues to be the fiduciary until Sun Life of Canada receives written notice that the fiduciary is no longer acting as such in respect of the Policy or the Demutualization Benefits that may be distributed in respect of the Policy.

(f) Where a single Person owns an Eligible Policy and the Person dies on or after the Eligibility Day, the estate of the deceased will become the Owner of the Policy. Where a single Person (who was not the life insured under the Policy) was the Owner of an Eligible Policy, and that Person died before the Eligibility Day, the contingent Owner (if any) who is the Owner of the Policy on the Eligibility Day will be the Owner of the Policy.

(g) Where, either before, on or after the Eligibility Day, a Person assigned or pledged an Eligible Policy to secure a debt or other obligation, the Person will be treated as the Owner of the Policy. The determination of whether an Eligible Policy has been assigned or pledged to secure a debt or other obligation will be based on the Records of the Company. If there is any uncertainty regarding the determination in a particular case, Sun Life of Canada shall make a determination, in good faith and acting reasonably, regarding the nature of the assignment and any determination by Sun Life of Canada shall be binding on all Persons for the purposes of this Conversion Plan.

(h) Where a Person irrevocably assigns all of his or her rights and interests in an Eligible Policy (not by way of security only) on or before the Eligibility Day in accordance with the provisions of the Policy and the Company's procedures in respect of assignments in effect at the time of the assignment, the assignee will be treated as the Owner of the Policy. Where a Person irrevocably assigns all of his or her rights and interests in the Policy (not by way of security only) after the Eligibility Day, the Person will be treated as the Owner of the Policy.

(i) Subject to sections 3.5(j) and 4.10, the Owner of an Eligible Policy that is a Group Insurance Policy or a Pension Policy shall be the Person specified in the master Policy or contract as the Policy or contract holder. If no Policy or contract holder is specified, the Owner shall be the Person or Persons to whom or in whose name the master Policy or contract has been issued. Individual insureds or annuitants who are participants under a Group Insurance Policy or a Pension Policy, including holders of certificates (except as specified in section 3.5(j)) or individual insureds under the Policy, will not be treated as Owners of the Policy.

(j) Where a certificate issued to an insured or annuitant under a Group Insurance Policy or a Pension Policy is a separate contract or Policy between the insured or annuitant and the Company, the

insured or annuitant will be treated as the Owner of the separate contract or Policy and, for greater certainty, the Person specified in the master Policy or contract as the Policy or contract holder will not be treated as the Owner of the separate contract or Policy.

(k) The Owner of an Eligible Policy specified in section 3.4(b) shall be the Person or Persons to whom or in whose name the Policy has been issued.

(l) Except as otherwise provided in this Article 3, the identity of the Owner of an Eligible Policy shall be determined without giving effect to any interest of any other Person in the Policy.

(m) In any situation not expressly covered in this section 3.5, the owner of an Eligible Policy, as reflected in the Records of the Company or as determined in good faith by Sun Life of Canada, shall conclusively be presumed to be the Owner of the Policy, and Sun Life of Canada shall not be required to examine or consider any other facts or circumstances which bear on a Person's entitlement to receive all or any portion of the Demutualization Benefits payable in respect of the Policy. Any determination under this section 3.5(m) shall be binding on all Persons.

In the event that more than one Person constitutes a single Owner of an Eligible Policy, Demutualization Benefits allocated pursuant to Article 4 shall be distributed jointly to such Persons.

### 3.6 Renunciation of Demutualization Benefits

An Eligible Policyholder may elect in writing, in a form satisfactory to Sun Life of Canada, to renounce any and all of the policyholder's right to receive Demutualization Benefits. A renunciation of the right may be made by mailing or delivering the written renunciation to the head office of Sun Life of Canada in Toronto for receipt on or prior to the Benefits Date. The renunciation will be irrevocable after the Benefits Date.

## ARTICLE 4.

## ALLOCATION AND DISTRIBUTION OF DEMUTUALIZATION BENEFITS

### 4.1 Method of Allocation of Demutualization Benefits

Eligible Policyholders shall be entitled to receive Demutualization Benefits on the basis provided for in this Article 4. Each Eligible Policyholder shall be allocated for the purposes of determination of the amount of Demutualization Benefits to which the policyholder is entitled and, except where otherwise provided in this Conversion Plan, shall be entitled to the issuance of:

(a) a fixed allocation equal to 75 Financial Services Shares; and

(b) a variable allocation of Financial Services Shares determined pursuant to section 4.2.

### 4.2 Allocation of Variable Component

The number of Financial Services Shares to be allocated pursuant to section 4.1(b) to each Eligible Policyholder in respect of the interest in the Company represented by each Eligible Policy of which the policyholder is the Owner shall be calculated in the manner provided for below. All such calculations shall be based on the information contained in the Records of the Company in respect of the Eligible Policy on the Eligibility Day (or, in the case of an Eligible Policy which is a Policy contemplated by section 3.4(b) or which is a Policy which lapsed before the Eligibility Day and has been reinstated as contemplated by section 3.4(c), on the basis of the information that would have been contained in the Records of the Company if the Policy had been In Force on the Eligibility Day) and, as applicable, by reference to the rates of exchange set out in section 1 of Exhibit B. The allocation shall be calculated for the interest in the Company represented by each Eligible Policy other than a Group Insurance Policy as the sum of:

(a) 1.32 Financial Services Shares for each Can.$1,000 of Time-Weighted Cash Value; and

(b) 64 Financial Services Shares for each Can.$1,000 of Annual Premium Measure,

rounded up to the next whole Financial Services Share, and, for each Eligible Policy which is a Group Insurance Policy, as 4.7 Financial Services Shares for each Can.$1,000 of Time-Weighted Annual Premium Measure, rounded up to the next whole Financial Services Share.

"Time-Weighted Cash Value" means the product obtained when the Cash Value of an Eligible Policy is multiplied by the Duration of the Policy. "Time-Weighted Annual Premium Measure" means the product obtained when the Annual Premium Measure of an Eligible Policy is multiplied by the Duration of the Policy. The terms "Cash Value", "Duration" and "Annual Premium Measure" have the respective meanings specified in section 4.3.

4.3 **Calculation of Certain Amounts**

(a) "Cash Value" means:

(i) in respect of an Eligible Policy which contains a provision permitting the payment of a cash surrender value, the amount, if any, that the policyholder would have been entitled to receive under the terms of the Policy as cash surrender value if the policyholder had voluntarily terminated the Policy on the Eligibility Day, calculated in a manner consistent with administrative practice, without reduction for any outstanding Policy Loans and accrued interest or any outstanding premiums, and including:

(A) amounts calculated in respect of Policy riders and options of the type specified in section 3 of Exhibit B; and

(B) amounts calculated in respect of paid-up additions and any dividends left on deposit;

but excluding,

(C) any amounts in respect of premiums paid in advance;

(D) except as provided in section 4.3(a)(i)(A), amounts calculated in respect of Policy riders and options;

(E) any amounts in respect of special maturity dividends, including terminal bonuses or terminal dividends;

(F) except as provided in section 4.3(a)(i)(A), any amounts in respect of term insurance purchased by the policyholder with dividends paid on the Policy; and

(G) any accretion resulting from the review of the Policy in an individual claim-review process established under a Market Conduct Settlement,

subject to adjustment in accordance with section 2 of Exhibit B; and

(ii) in respect of an Eligible Policy which does not contain a provision permitting the payment of a cash surrender value, a nil amount, except as otherwise provided in section 4 of Exhibit B or as the Appointed Actuary may otherwise determine in accordance with section 4.3(d).

(b) "Duration" means, in respect of an Eligible Policy, other than a Group Insurance Policy, the number of whole years and any fraction of a year that the Policy has been In Force up to and including the Eligibility Day, where a year means any period of twelve consecutive months and a fraction of a year shall be measured by the quotient obtained when the numbers of days elapsed in the year is divided by 365; provided, however, that:

(i) where an Eligible Policy lapsed and was subsequently reinstated at any time before the Eligibility Day or was reinstated at any other time as contemplated by section 3.4(c), the Policy shall be deemed to have been In Force from the issue date shown on the Records of the Company for the purposes of this Article 4, notwithstanding that the Policy may have been issued at an earlier date and any lapse period following the issue date of the Policy shown on the Records of the Company shall be included in the calculation of the period that the Policy has been In Force;

(ii) in the case of an Eligible Policy originally issued by another insurance company and either transferred to the Company pursuant to a scheme of transfer in the United Kingdom on or before the Eligibility Day or assumed by the Company on or before the Eligibility Day pursuant to a transfer or assumption reinsurance agreement, the first date on which the Policy

shall be deemed to be In Force for the purposes of this Article 4 shall be, as applicable, the effective date of the scheme of transfer or the effective date of the transfer or assumption reinsurance agreement;

(iii) in the case of an Eligible Policy that is a Settlement Option, the date upon which the Policy shall be deemed to be first In Force for the purposes of this Article 4 shall be the effective date of implementation of the Settlement Option;

(iv) in the case of an Eligible Policy that is a Policy of the type specified in section 4(d) of Exhibit B, the date upon which the Policy shall be deemed to be first In Force for the purposes of this Article 4 shall be the date of death of the original insured in respect of the Policy; and

(v) in the case of an Eligible Policy which is a Pension Policy under which retirement benefits may be provided to more than one individual (other than an individual money purchase policy issued by the Company in the United Kingdom) and in respect of which the Owner is a body corporate, the number of years calculated in accordance with the foregoing shall be subject to a maximum of fifteen;

and, in respect of an Eligible Policy which is a Group Insurance Policy, means the number of whole years (measured as aforesaid) and any fraction of a year (so measured) from the earliest date of issue shown on the Records of the Company in respect of all such Eligible Policies owned by the holder of the Eligible Policy, or a group of Persons including such policyholder, up to and including January 27, 1998; provided, however, that:

(vi) if the Eligible Policy is a Policy originally issued by another insurance company and either transferred to the Company pursuant to a scheme of transfer in the United Kingdom on or before the Eligibility Day or assumed by the Company on or before the Eligibility Day pursuant to a transfer or assumption reinsurance agreement, the date of issue of such Policy for the purposes of this Article 4 shall be deemed to be, as applicable, the effective date of the scheme of transfer or the effective date of the transfer or assumption reinsurance agreement;

(vii) if, on the date of issue of a Policy shown on the Records of the Company, the Policy was not a Participating Policy, the date of issue of the Policy, for the purposes of this section 4.3(b), shall be deemed to be the first date on which the Policy was amended with the effect that the Policy became a Participating Policy;

(viii) if all or part of the insurance under a Policy had been transferred to the Policy, without interruption, from one or more Group Insurance Policies or their predecessor Policies owned or formerly owned by the holder of the Policy, or a group of Persons including such policyholder, where one or more of such Group Insurance Policies would have been an Eligible Policy at the time of transfer of insurance if it had been In Force on January 27, 1998, the date of issue of the Policy shall be deemed to be the date of issue of the Group Insurance Policy that would have so been an Eligible Policy determined in accordance with this Article 4 under which coverage under the Policy was first previously in force (or, where there is more than one such predecessor to such Policy with different dates of issue, the earliest of such dates); and

(ix) the number of years calculated in accordance with the foregoing shall be then increased by five, and that sum shall be subject to a maximum of 20.

(c) "Annual Premium Measure" means, in respect of any Eligible Policy:

(i) other than a Group Insurance Policy, the annual premium stipulated as of the Eligibility Day on the Records of the Company to be payable to Sun Life of Canada under the terms of the Policy, regardless of the frequency, or actual amount, of premium payments in any year, or any option elected by the policyholder to satisfy premium payments through the application of

policy dividends, and includes amounts in respect of any Policy riders or options specified in section 3 of Exhibit B as well as Extra Premiums paid in respect of the Policy and the Policy riders or options specified in section 3 of Exhibit B; provided, however, that:

(A) the amount of any annual premium in respect of any single premium Policy, single premium rider, single premium payment, dividend from another Policy that is applied as a premium under a "Sun Fund" Policy or dividend applied to purchase paid-up additions, shall be deemed to be nil;

(B) where no premiums are payable in respect of an Eligible Policy as a result of a waiver of premiums or as a result of a disability claim in the course of payment, the annual premium will be determined by the premiums stipulated in the Eligible Policy as if such waiver or claim were not in effect;

(C) the amount of the annual premium shall be deemed to be nil where the Eligible Policy was paid-up on the Eligibility Day;

(D) in respect of an Eligible Policy which is a universal life Policy issued through the Company's United States branch or a deposit administration Policy issued through the Company's United Kingdom branch, the amount of annual premium shall be calculated as the aggregate amount of premium paid in the policy year that includes the Eligibility Day; and

(E) in respect of an Eligible Policy which did not, as of the Eligibility Day, provide for the payment of an annual premium (or which, if it is a Policy specified in section 3.4(b) or in section 3.4(c), would not, if it had been In Force on the Eligibility Day, have provided for the payment of any annual premium), the amount shall be nil, except as the Appointed Actuary may otherwise determine in accordance with section 4.3(d);

(ii) in respect of any insurance coverage under a Group Insurance Policy that was In Force prior to January 1, 1997 and which coverage was not shown as paid-up coverage or terminated coverage on the Records of the Company on the Eligibility Day, an amount equal to the sum of Permitted Group Premiums paid or payable in 1997;

(iii) in respect of any insurance coverage under a Group Insurance Policy that became In Force on or after January 1, 1997 and on or before December 31, 1997 and which coverage was not shown as paid-up coverage or terminated coverage on the Records of the Company on the Eligibility Day, an amount equal to the product which results when the sum of all Permitted Group Premiums paid or payable during the period from January 1, 1997 to December 31, 1997 is multiplied by the quotient which results when 12 is divided by the number of months of insurance coverage in 1997 that was provided by those premiums;

(iv) in respect of any insurance coverage under a Group Insurance Policy that became In Force on or after January 1, 1998 and which coverage was not shown as paid-up coverage or terminated coverage on the Records of the Company on the Eligibility Day, an amount equal to the product which results when the portion of the Permitted Group Premiums relating to the first month's coverage under the Policy is multiplied by 12; and

(v) in respect of any coverage under a Group Insurance Policy that is shown as paid-up coverage on the Records of the Company on the Eligibility Day:

(A) in respect of paid-up life insurance coverage and disabled life insurance coverage, the amount obtained when the amount of insurance at December 31, 1997 is multiplied by the premium rate for the appropriate age and sex shown in section 5 of Exhibit B; and

(B) in respect of survivor income benefits or life insurance benefits being paid in instalments as a result of a disability, means the annual payment to the beneficiaries as at December 31, 1997.

(d) In any circumstance in which the the Appointed Actuary is of the view that the amount of the Cash Value, Duration or Annual Premium Measure cannot be fairly and equitably determined in the case of any Eligible Policy in accordance with the provisions of this section 4.3, the Appointed

Actuary will determine such amount on a basis which the Appointed Actuary believes to be consistent with the methodology used for the purposes in this section 4.3 for other Eligible Policies and to be fair and equitable in all circumstances.

**4.4 Rationale for Allocation of Benefits**

The method contained in this Conversion Plan of determining and allocating Demutualization Benefits:

(i) is fair and equitable, having regard to the different classes of Eligible Policies;

(ii) as far as is practical and consistent with other principles of allocation, is the same in all countries for all types of eligible policies;

(iii) recognizes the Company's history and philosophies of doing business; and

(iv) is simple, practical and intended to be understandable by Eligible Policyholders.

The fixed allocation specified in section 4.1(a) recognizes the loss of voting control of the Company by Eligible Policyholders at the Effective Time, and the variable allocation specified in section 4.1(b) recognizes the loss of the other Ownership Rights of Eligible Policyholders and reflects the varying financial interests of Eligible Policies, including their size, length of time In Force with the Company, contribution to the value of the Company, and their differing rights to receive surplus.

**4.5 Distribution of Financial Services Shares as Demutualization Benefits**

(a) Except for Eligible Policies for which Policy Credits will be credited under section 4.6 or cash will be paid under section 4.7, at the Effective Time, Financial Services shall issue to each Eligible Policyholder the number of Financial Services Shares allocated to the policyholder pursuant to sections 4.1 and 4.2.

(b) The manner in which Financial Services Shares will be issued to an Eligible Policyholder pursuant to section 4.5(a) and initially registered on the share register of Financial Services will depend on the jurisdiction of Residence of the policyholder on the Benefits Date. The Financial Services Shares will be issued and registered: (i) in the name of a nominee who will hold the shares on behalf of the policyholder (a "Shareholding Nominee"); (ii) in the policyholder's name; or (iii) at the option of Financial Services, in some other manner. Eligible Policyholders in some jurisdictions shall have the right to elect the manner in which they will hold their shares.

(c) The Shareholding Nominee for Eligible Policyholders in Canada will be the Transfer Agent and the Shareholding Nominee for Eligible Policyholders in the other relevant jurisdictions will be the Transfer Agent or the Co-Transfer Agent, or one of the Co-Transfer Agent's affiliates, in the jurisdiction. Each Eligible Policyholder holding Financial Services Shares through a Shareholding Nominee will have the right at any time after the Effective Date to request that his or her shares be removed from the Shareholding Nominee and registered in the policyholder's name or in the name of a broker or other nominee.

(d) The Shareholding Nominee arrangements in any jurisdiction may only be terminated upon 90 days written notice to all persons holding Financial Services Shares through the Shareholding Nominee in that jurisdiction. If the Shareholding Nominee arrangements are terminated, Financial Services will either cause the shares held by the Shareholding Nominees to be registered in the shareholders' names or give each shareholder holding shares through a Shareholding Nominee the option to have his or her shares registered in the shareholder's name or held through a broker or other nominee.

(e) Prior to or as soon as reasonably practicable after the Effective Date, Financial Services will send, or cause to be sent, confirmations of ownership to Eligible Policyholders who hold their shares through a Shareholding Nominee and share certificates to Eligible Policyholders who hold their shares as a registered holder.

## 4.6 Distribution of Policy Credits as Demutualization Benefits

(a) An Eligible Policyholder shall not be issued Financial Services Shares, and shall instead be credited with Policy Credits as of the Effective Date in accordance with section 4.6(d), in the following circumstances.

(i) Subject to section 4.6(b), Policy Credits shall be credited to the Eligible Policyholder in respect of an Eligible Policy if the Policy is an individual retirement annuity contract within the meaning of section 408(b) of the U.S. Tax Code or tax sheltered annuity contract within the meaning of section 403(b) of the U.S. Tax Code, including, for this purpose, custodial accounts under section 403(b)(7) of the U.S. Tax Code and retirement income accounts under section 403(b)(9) of the U.S. Tax Code.

(ii) Policy Credits shall be credited to each Eligible Policy in respect of which the Board has determined that the payment to the Eligible Policyholder of Demutualization Benefits in the form of Financial Services Shares or cash in respect of the Policy would be disadvantageous to the policyholder in respect of applicable income or other taxation, provided that Sun Life of Canada has sent notice of the determination to the policyholder.

(b) Financial Services Shares will be issued in accordance with section 4.5(a) instead of the crediting of Policy Credits pursuant to section 4.6(a)(i) in respect of:

(i) a supplementary contract or a settlement option issued pursuant to an Eligible Policy by the Company on or before the Effective Date to effect the annuitization of an individual deferred annuity, an immediate annuity contract or a deferred annuity contract in the period following deferment of annuity payments, if the Company determines that such share issuance will not be subject to excise tax and will not constitute a prohibited transaction under the U.S. Tax Code or cause a disqualification of the Eligible Policy, or a related plan, in respect of which the shares are issued; and

(ii) an Eligible Policy which is not In Force on the Effective Date.

(c) If a supplemental contract or settlement option specified in section 4.6(b)(i) is issued after the last date on which the Choices Circular is mailed to Eligible Policyholders or if the Eligible Policy specified in section 4.6(b)(ii) is still In Force on that date, as applicable, the holder of the Policy shall not be entitled to make the Cash Election.

(d) If Demutualization Benefits are to be credited in Policy Credits in respect of Eligible Policies pursuant to section 4.6(a), the value of these Demutualization Benefits shall be equal to the number of Financial Services Shares allocated to the policyholder pursuant to this Article 4 in respect of the Policies, multiplied by the Initial Share Price (the "Value of Policy Credits"). Policy Credits shall be credited, net of any applicable withholding tax, by the Post-Conversion Company as soon as reasonably practicable after the Effective Date. The Value of Policy Credits for each of the four types of credits specified in the four subsections of the definition of Policy Credit shall be applied as follows:

(i) in the case of subsection (a) of the definition, the Value of Policy Credits will be applied to increase the dividend accumulation value or increase the paid-up addition cash value, as the case may be, by that amount;

(ii) in the case of subsection (b) of the definition, the sum of the Value of Policy Credits and the cash value of the remaining term insurance, based on the insured's age at the Effective Date, will be applied to determine the extended period of the coverage;

(iii) in the case of subsection (c) of the definition, the sum of the Value of Policy Credits and the cash value of the existing future annuity payments as of the Effective Date, based on the annuitant's age at the Effective Date, will be applied to determine the increased deferred annuity payments; and

(iv) in the case of subsection (d) of the definition, the Value of Policy Credits will be applied to increase the account value by that amount.

(e) If an Eligible Policyholder holds one or more Eligible Policies in respect of which Policy Credits will be credited under section 4.6(a) and one or more other Eligible Policies, the policyholder shall be entitled to the fixed allocation made pursuant to section 4.1(a) in respect of the other Policy or Policies.

**4.7 Distribution of Cash as Demutualization Benefits**

(a) Financial Services shall not issue to a Designated Canadian Policyholder the Financial Services Shares in respect of which a Cash Election has been made under section 4.12(a). The policyholder will be paid his or her Demutualization Benefits in respect of these shares in the form of a direct cash payment from Sun Life of Canada. The amount of the cash payment shall be equal to the number of Financial Services Shares in respect of which the Cash Election was made, multiplied by the Initial Share Price. Payments of cash to an Eligible Policyholder under this section 4.7(a) shall be made by cheque as soon as reasonably practicable after the Effective Date.

(b) Subject to section 4.8(b), Financial Services shall not issue Financial Services Shares allocated pursuant to this Article 4 to an Eligible Policyholder whose Residence is in a Secondary Jurisdiction or an Other Jurisdiction or who is a Minor in respect of an Eligible Policy which is a Title Restricted Policy. Subject to section 4.8(b), the policyholder will be paid his or her Demutualization Benefits in the form of a direct cash payment from Sun Life of Canada. The amount of the cash payment shall be equal to the number of Financial Services Shares allocated but not issued to the policyholder pursuant to this Article 4, multiplied by the Initial Share Price. Payments of cash to an Eligible Policyholder under this section 4.7(b) shall be made by cheque, net of any applicable withholding tax, as soon as reasonably practicable after the Title Restriction has been removed or the question of entitlement has been resolved in accordance with section 4.8(a).

**4.8 Restrictions on Distribution of Benefits – Title Restricted Policies**

Notwithstanding anything in Article 3 or this Article 4, and with the exception of Eligible Policies specified in section 4.6(a), if an Eligible Policy is a Title Restricted Policy, the following additional provisions shall govern the manner of the form and distribution of Demutualization Benefits in respect of the Policy.

(a) Demutualization Benefits relating to a Title Restricted Policy (as well as dividends paid on any Financial Services Shares forming part of the benefits) will be retained by Sun Life of Canada (or its designee) until the Eligible Policyholder or another Person confirms with Sun Life of Canada, in a manner satisfactory to Sun Life of Canada, that the Title Restriction has been removed or the question of entitlement to receive the Demutualization Benefits has been resolved in a manner that is satisfactory to Sun Life of Canada.

(b) Where an Eligible Policyholder owns more than one Eligible Policy, some but not all of which are Title Restricted Policies:

(i) the Financial Services Shares allocated pursuant to section 4.2 relating to the Title Restricted Policies that are issued or the cash in respect of the shares, as applicable, will be retained by Sun Life of Canada in accordance with section 4.8(a); and

(ii) the Financial Services Shares allocated pursuant to section 4.1(a) and the Financial Services Shares allocated pursuant to section 4.2 relating to the policies which are not Title Restricted Policies will be issued, or the cash in respect of the shares, as applicable, will be provided, to the policyholder according to the other provisions of this Article 4.

(c) If an Eligible Policyholder, in respect of a Title Restricted Policy:

(i) was otherwise entitled to make the Cash Election or the Share Election;

(ii) has made the election; and

(iii) the Title Restriction in respect of the Policy has not been removed in a manner satisfactory to the Company on or prior to the Benefits Date,

then the election in respect of the Policy shall not be valid.

(d) Where Sun Life of Canada or its designee retains Demutualization Benefits in respect of a Title Restricted Policy in the form of Financial Services Shares, the shares shall be held by a Shareholding Nominee on behalf of the Eligible Policyholder to whom the shares were issued. The Shareholding Nominee will maintain records for those shares separate from the records for other Financial Services Shares held by the Shareholding Nominee and will not issue a confirmation of

ownership to the Eligible Policyholder or allow the shares to be transferred until the Title Restriction has been removed, or the question of entitlement to receive the Demutualization Benefits has been resolved, in accordance with section 4.8.

(e) The determination of whether an Eligible Policy is a Title Restricted Policy or whether a Title Restriction has been removed will be based on the Records of the Company. The determination of whether the question of entitlement to receive Demutualization Benefits has been satisfactorily resolved in any particular case shall be made by Sun Life of Canada. If there is any uncertainty regarding these determinations in a particular case, Sun Life of Canada shall make a determination, in good faith and acting reasonably, taking into account the nature of the Title Restriction, and the determination shall be binding on all Persons for the purposes of this Conversion Plan.

**4.9 Restrictions on Distribution of Benefits – Lost Policyholders**

(a) Eligible Policyholders who are Lost Policyholders shall be noted as such on the Records of the Company. Except as otherwise provided in this section, the Demutualization Benefits payable to a Lost Policyholder shall be held until the policyholder ceases to be a Lost Policyholder in accordance with section 4.9(j). When a policyholder so ceases to be a Lost Policyholder (the "Lost Policyholder Claim Date"), the policyholder will be entitled, to the extent permitted by applicable law and provided for in this section 4.9, to claim his or her Demutualization Benefits, including any dividends or other amounts payable pursuant to this section, as soon as reasonably practicable after the Lost Policyholder Claim Date. Payments under this section 4.9 shall be net of any applicable withholding tax.

(b) Subject to section 4.7(b), Financial Services Shares issuable to Lost Policyholders shall be issued pursuant to Section 4.5(a). Lost Policyholders whose Residence is in a Principal Jurisdiction on the Benefits Date (other than Minors and U.K. Pension Schemes) or who do not have an address in the Records of the Company on the Benefits Date ("Principal Jurisdiction Lost Policyholders") will have the Financial Services Shares issued to them registered in their names on the share register of Financial Services, but will not be issued a share certificate while they are a Lost Policyholder. Lost Policyholders whose Residence is in a Secondary Jurisdiction on the Benefits Date or who are U.K. Pension Schemes shall have the Financial Services Shares issued to them sold to the Underwriters pursuant to section 4.13(c). Lost Policyholders whose Residence is in an Other Jurisdiction on the Benefits Date or who are Minors shall have the Financial Services Shares issued to them sold pursuant to section 4.11(a). The proceeds of such sales shall be held in accordance with section 4.9(a).

(c) If the Residence of a Principal Jurisdiction Lost Policyholder is in an Other Jurisdiction at the time the policyholder ceases to be a Lost Policyholder, Financial Services may require the policyholder to sell his or her Financial Services Shares, in a manner to be determined by Financial Services.

(d) If a Lost Policyholder does not take one or more of the steps specified in section 4.9(j) prior to 11:59 p.m. (Toronto time) on the 35th month anniversary of the Effective Date (the "Cancellation Date"), any Financial Services Shares issued to the policyholder will be automatically cancelled and any cash payable to the policyholder, including proceeds from the sale of shares, shall revert to Financial Services. Upon a cancellation of Financial Services Shares pursuant to this section 4.9(d), no amount will be deducted from the stated capital account maintained by Financial Services in respect of the Financial Services Shares. Subject to sections 4.9(f) and (g), if Financial Services Shares are cancelled pursuant to this section, the dividends declared on the shares shall revert to Financial Services.

(e) An Eligible Policyholder who ceases to be a Principal Jurisdiction Lost Policyholder on or prior to the Cancellation Date shall be paid any dividends declared on the Financial Services Shares issued to the policyholder.

(f) Notwithstanding section 4.9(d) but subject to section 4.9(g), if after the Cancellation Date any Principal Jurisdiction Lost Policyholder (other than a policyholder specified in section 4.9(i)) shall cease to be a Lost Policyholder, Financial Services shall issue to the policyholder the number of Financial Services Shares the policyholder would have held if the policyholder's Financial Services Shares had not been cancelled and pay to the policyholder an amount equal to the sum of the

dividends that were declared in respect of the shares prior to cancellation of the shares and that would have been declared in respect of the shares if the shares had not been cancelled. Upon an issuance of Financial Services Shares pursuant to this section 4.9(f), no amount will be added to the stated capital account maintained by Financial Services in respect of the Financial Services Shares.

(g) In the event that any Financial Services Shares or cash to which a Lost Policyholder is entitled were delivered or transferred to a government or governmental agency, authority or official pursuant to escheat or abandoned or unclaimed property legislation, Financial Services shall not be obligated to issue shares or make a payment of cash under section 4.9(a) or section 4.9(f) to the policyholder. However, Financial Services shall transfer or pay, or cause to be transferred or paid, to the policyholder such Financial Services Shares or cash as Financial Services may recover, at the request of the Lost Policyholder and using commercially reasonable efforts, from the government or governmental agency, authority or official, including proceeds from the sale of Financial Services Shares and dividends.

(h) The number of Financial Services Shares issued to a Principal Jurisdiction Lost Policyholder pursuant to section 4.9(f) shall be adjusted to reflect any subdivision, consolidation, reclassification or other similar change to the Financial Services Shares which occurs prior to the Lost Policyholder Claim Date. If, prior to the Lost Policyholder Claim Date, any reorganization, amalgamation, arrangement, merger, statutory right to acquire or similar transaction has occurred involving Financial Services or to which Financial Services is a party and which results in the holders of Financial Services Shares receiving securities, cash or other property in exchange for, in conversion of, or in respect of their Financial Services Shares, then, upon an Eligible Policyholder ceasing to be a Principal Jurisdiction Lost Policyholder, he or she shall be issued the securities, property or cash substituted for the Financial Services Shares he or she was entitled to, or, in the discretion of Financial Services (or any successor company), the monetary equivalent thereof as at the day preceding the Lost Policyholder Claim Date.

(i) Policy Credits to be credited to a Lost Policyholder pursuant to Article 4 shall be credited as of the Effective Date in accordance with section 4.6(d).

(j) In order for an Eligible Policyholder who is a Lost Policyholder to cease to be a Lost Policyholder, the policyholder must take one or more of the following steps to confirm the current address at which he or she may be reached by mail:

(i) respond to a letter from Sun Life of Canada or Financial Services requesting confirmation of the current address;

(ii) contact Sun Life of Canada or Financial Services and confirm the current address;

(iii) inform Sun Life of Canada or Financial Services of a change of address; or

(iv) otherwise confirm the current address with Sun Life of Canada or Financial Services in a manner satisfactory to Sun Life of Canada or Financial Services, as applicable.

**4.10 Disputes and Additional Restrictions on Distribution of Benefits**

(a) Any dispute as to the identity of the Owner of an Eligible Policy or status of a Person as an Eligible Policyholder or the right to receive Demutualization Benefits or to vote at the Special Meeting shall be resolved in accordance with section 3.5 and such other reasonable procedures or criteria as may be established in good faith by Sun Life of Canada.

(b) Sun Life of Canada may, in its sole discretion, acting reasonably, withhold payment of Demutualization Benefits to any Eligible Policyholder if Sun Life of Canada becomes aware of or has knowledge of the fact that:

(i) another Person may have an interest in or rights to the benefits or claims the benefits, in addition to or in lieu of the policyholder;

(ii) an Eligible Policyholder may be subject to trust, fiduciary or other similar duties or obligations or is a nominee with respect to such benefits; or

(iii) a regulatory authority may impose terms and conditions on the distribution of the benefits and Sun Life of Canada has reasonable grounds to believe that the policyholder will not, may not, or does not intend to, comply with such duties, obligations, terms or conditions.

The benefits shall be paid to the policyholder or other Person or Persons entitled to the benefits when the question of entitlement to receive benefits has been resolved in a manner satisfactory to Sun Life of Canada, acting reasonably, or when the policyholder confirms with Sun Life of Canada in a manner that is satisfactory to Sun Life of Canada, acting reasonably, that the policyholder will comply with such duties, obligations, terms or conditions, as the case may be.

(c) Eligible Policyholders whose Residence on the Benefits Date is in a Secondary Jurisdiction (other than Minors and policyholders who make the Share Election in respect of all or part of the Financial Services Shares allocated to the policyholder) or in an Other Jurisdiction, must confirm their current address to Sun Life of Canada or inform Sun Life of Canada of a change of address, in a manner satisfactory to Sun Life of Canada, before receiving their Demutualization Benefits. Any such Eligible Policyholder who does not make such confirmation or inform Sun Life of Canada of the change prior to the Benefits Date will be deemed to be a Lost Policyholder.

**4.11 Mandatory Sale for Policyholders in Other Jurisdictions and Minors**

(a) Subject to section 4.7(b), Eligible Policyholders whose Residence is in an Other Jurisdiction on the Benefits Date or on the IPO Residency Date or who are Minors will be required to sell (the "Mandatory Sale") the Financial Services Shares issued to them ("Mandatory Sale Shares") in accordance with section 4.14.

(b) Notwithstanding section 4.11(a),

(i) if an Eligible Policyholder whose Financial Services Shares would be subject to the Mandatory Sale changes to a Residence in one of the Principal Jurisdictions or Secondary Jurisdictions or is not a Minor, as applicable, and notifies the Company, in a manner satisfactory to the Company on or prior to the Benefits Date, of the change of Residence or that the policyholder is not a Minor and that he or she wishes to keep his or her Financial Services Shares, the shares shall not be subject to the Mandatory Sale; and

(ii) subject to section 4.11(b)(i), if the Residence of any Eligible Policyholder whose Financial Services Shares are subject to the Mandatory Sale is in Canada on the IPO Residency Date, the shares will not be sold in the Initial Public Offering but will be purchased by Financial Services at the same time and on the same basis as the Buy-back Shares as provided for in section 4.14 (except that, in respect of section 4.14(e), they will be treated as Mandatory Sale Shares).

**4.12 Cash Election for Policyholders in Principal Jurisdictions**

(a) Subject to sections 4.6(c), 4.8(c), 4.12(b) and 4.14, each Eligible Policyholder whose Residence is in a Principal Jurisdiction on the Benefits Date, other than U.K. Pension Schemes and Minors, may elect (the "Cash Election"):

(i) in the case of Eligible Policyholders other than Designated Canadian Policyholders, to sell pursuant to section 4.14 the Financial Services Shares issuable to the policyholder; or

(ii) in the case of Designated Canadian Policyholders, to receive Demutualization Benefits in the form of a cash payment pursuant to Section 4.7(a).

(b) Such an Eligible Policyholder who was allocated fewer than 1,000 such Financial Services Shares may only make the Cash Election in respect of all of the shares. An Eligible Policyholder who was allocated 1,000 or more such Financial Services Shares may make the Cash Election in respect of all or part of the shares. An election pursuant to this section 4.12 shall be made by the Eligible Policyholder completing the relevant portions of the Choices Form, signing the form and returning the form as provided for in the Choices Circular. An election made by an Eligible Policyholder pursuant to this section shall be revocable at any time on or prior to the Benefits Date

by the policyholder mailing a new Choices Form to the same address to which the previous Choices Form was sent, for receipt by that date, or in any other manner that is satisfactory to the Company.

**4.13 Share Election for Policyholders in Secondary Jurisdictions and U.K. Pension Schemes**

(a) Each Eligible Policyholder whose Residence is in a Secondary Jurisdiction on the Benefits Date (other than Minors) or who is a U.K. Pension Scheme may elect (the "Share Election") to keep the Financial Services Shares allocated to the policyholder as provided for in section 4.13(b).

(b) Such an Eligible Policyholder who was allocated fewer than 1,000 Financial Services Shares may only elect to keep all of the shares. An Eligible Policyholder who was allocated 1,000 or more Financial Services Shares may elect to keep all or part of the shares. An election to keep Financial Services Shares pursuant to this section 4.13 shall be made by the Eligible Policyholder completing the relevant portions of the Choices Form, signing the form and returning the form as provided for in the Choices Circular. An election made by an Eligible Policyholder pursuant to this section shall be revocable at any time on or prior to the Benefits Date by the policyholder mailing a new Choices Form to the same address to which the previous Choices Form was sent, for receipt by that date, or in any other manner that is satisfactory to the Company.

(c) Subject to sections 4.7(b) and 4.14, if an Eligible Policyholder entitled to make the Share Election does not make the election in respect of some or all of the Financial Services Shares allocated to the policyholder, these shares will be deemed to be Electing Shares and will be sold to the Underwriters under the Underwriting Agreements.

**4.14 Initial Public Offering and Purchase of Buy-back Shares**

(a) Financial Services shall use its reasonable commercial efforts to complete the closing of the Initial Public Offering on the basis, and within the period, provided for in the Underwriting Agreements. Notwithstanding the foregoing and any other provision of this Conversion Plan, Financial Services shall have no obligation to complete the closing of the Initial Public Offering in the event that the Underwriting Agreements are terminated before the closing of the Initial Public Offering. The Initial Share Price shall be determined by Financial Services, Sun Life of Canada and the Underwriters according to their assessment of the market price for the Financial Services Shares. Financial Services may proceed with the Initial Public Offering whether or not the Initial Share Price is within the range of market values specified in the valuation report referred to in section 4.17.

(b) Subject to section 4.12(a)(ii), each Eligible Policyholder whose Residence on the IPO Residency Date is in Canada and (i) who makes the Cash Election in respect of Financial Services Shares or (ii) is a Minor shall sell the shares to Financial Services ("Buy-back Shares") at the price per share equal to the Initial Share Price. Subject to section 4.14(e), Buy-back Shares shall be purchased for cancellation by Financial Services after the Underwriters have waived any right to terminate the Underwriting Agreements and prior to the issue or sale of the IPO Shares. Notwithstanding any other provision of this Conversion Plan, Financial Services shall have no obligation to purchase the Buy-back Shares in the event that the Underwriting Agreements are terminated before the closing of the Initial Public Offering.

(c) Subject to section 4.14(e), following the purchase and cancellation of the Buy-back Shares, Financial Services shall issue and sell in the Initial Public Offering Financial Services Shares equal in number to the aggregate number of:

(i) the Buy-back Shares;

(ii) the Financial Services Shares allocated to Eligible Policyholders in respect of Eligible Policies to which Policy Credits will be credited pursuant to section 4.6; and

(iii) the Financial Services Shares allocated to Eligible Policyholders in respect of Eligible Policies for which payments of cash will be made under section 4.7

(collectively, "Primary Shares").

(d) Subject to sections 4.14(a) and 4.14(e), following the purchase and cancellation of the Buy-back Shares, the Electing Shares which are issued to Eligible Policyholders (other than Buy-back Shares) ("Resale Shares"), Primary Shares, Mandatory Sale Shares (other than Buy-back Shares) and any Additional Primary Shares shall be purchased by the Underwriters, conditional upon the closing of the Initial Public Offering, in the Initial Public Offering, at the Initial Share Price. Financial Services shall have the discretion to vary the manner in which the Resale Shares and Mandatory Sale Shares will be sold, provided that Financial Services determines that, in its reasonable judgment, the manner of sale is in the best interests of the affected Eligible Policyholders. The Buy-back Shares, the Resale Shares and the Mandatory Sale Shares shall be held by the Transfer Agent as nominee for the selling Eligible Policyholders from the Effective Date to the purchase of the shares by Financial Services or the sale of the shares in the Initial Public Offering, as the case may be. An Eligible Policyholder selling Resale Shares or Mandatory Sale Shares to the Underwriters shall be deemed:

(i) to appoint Financial Services as the policyholder's agent to effect the sale to the Underwriters on behalf of the policyholder in accordance with the Underwriting Agreements and to sign any documents and take any steps as are appropriate to transfer the shares to the Underwriters;

(ii) to agree that the shares will be sold at the Initial Share Price;

(iii) to represent and warrant to Financial Services, Sun Life of Canada and the Underwriters that the policyholder owns the shares and is able to sell them free of any Title Restriction; and

(iv) to represent and warrant to Financial Services, Sun Life of Canada and the Underwriters that the policyholder has full power, capacity and authority to sell the shares,

assuming, in the case of sections 4.14(d) (iii) and (iv), that the shares have been validly issued to the policyholder.

An Eligible Policyholder selling Buy-back Shares to Financial Services shall be deemed:

(v) to appoint Financial Services as the policyholder's agent to effect the sale to Financial Services on behalf of the policyholder and to sign any documents and take any steps as are appropriate to transfer the shares to Financial Services;

(vi) to agree that the shares will be sold at the Initial Share Price;

(vii) to represent and warrant to Financial Services that the policyholder owns the shares and is able to sell them free of any Title Restriction; and

(viii) to represent and warrant to Financial Services that the policyholder has full power, capacity and authorization to sell the shares,

assuming, in the case of sections 4.14(d) (vii) and (viii), that the shares have been validly issued to the policyholder.

(e) The number of IPO Shares shall be determined by negotiation between Financial Services and the Underwriters. Among other things, Financial Services will consider the U.S. Tax Limit, whether it wishes to issue and sell Additional Primary Shares in the Initial Public Offering and whether it wishes to grant the Underwriters an over-allotment option.

(i) In the event that the number of IPO Shares exceeds the aggregate number of Resale Shares, Primary Shares and Mandatory Sale Shares (other than Buy-back Shares), Financial Services will also issue and sell to the Underwriters in the Initial Public Offering Additional Primary Shares in the amount of the excess.

(ii) In the event that the Financial Services Board determines that the aggregate number of Resale Shares and Mandatory Sale Shares (other than Buy-back Shares) exceeds the U.S. Tax Limit or in the event that the aggregate number of Resale Shares, Primary Shares, Mandatory Sale Shares (other than Buy-back Shares) and any Additional Primary Shares which Financial Services wishes to issue and sell exceeds the number of IPO Shares, the Financial Services Shares to be sold in the Initial Public Offering shall be determined on the following basis:

(A) all of the Mandatory Sale Shares shall be sold;

(B) Financial Services may, at its option, if the Financial Services Board determines that to do so would be in the best interests of Financial Services, require that all Primary Shares relating to Financial Services Shares allocated to Eligible Policyholders in respect of Eligible Policies to which Policy Credits will be credited pursuant to section 4.6 and in respect of Eligible Policies for which a cash payment will be made pursuant to section 4.7(b), shall be sold;

(C) Financial Services may, at its option, if the Financial Services Board determines that to do so would be in the best interests of Financial Services, require that any Additional Primary Shares and any shares issuable pursuant to the exercise of an over-allotment option granted to the Underwriters in the Underwriting Agreements shall be sold;

(D) in the event that the aggregate number of Resale Shares and Mandatory Sale Shares (other than Buy-back Shares) exceeds the U.S. Tax Limit, the number of Resale Shares to be sold shall be reduced by requiring certain Eligible Policyholders to retain Resale Shares until the aggregate number of Resale Shares and Mandatory Sale Shares (other than Buy-back Shares) is reduced to the U.S. Tax Limit, with the Resale Shares to be retained based on the descending order of the size of allocation of Financial Services Shares, commencing with the largest allocation of Financial Services Shares;

(E) in the event that, notwithstanding any reduction pursuant to section 4.14(e)(ii)(D) of Resale Shares to be sold in the Initial Public Offering, the aggregate number of Resale Shares, Primary Shares, Mandatory Sale Shares (other than Buy-back Shares) and any Additional Primary Shares which Financial Services wishes to issue and sell still exceeds the number of IPO Shares, the remaining number of Resale Shares and Primary Shares to be sold shall be reduced by requiring certain Eligible Policyholders to retain Electing Shares until the aggregate number of Resale Shares, Primary Shares, Mandatory Sale Shares (other than Buy-back Shares) and any Additional Primary Shares which Financial Services wishes to issue and sell is reduced to the number of IPO Shares, with the Electing Shares to be retained based on the descending order of the size of the allocation of Financial Services Shares, commencing with the largest allocation of Financial Services Shares; and

(F) if there is more than one Eligible Policyholder with the smallest size of allocation to be retained pursuant to section 4.14(e)(ii)(D) or (E) and not all of the allocations of that size must be retained, the allocations to be retained will be chosen by lot.

Any Primary Shares in respect of which Financial Services did not exercise its option under section 4.14(e)(ii)(B) shall not be issued. Any Resale Shares not sold in the Initial Public Offering, and any Buy-back Shares the related Primary Shares of which were not sold in the Initial Public Offering, shall be retained by the relevant Eligible Policyholders and not sold pursuant to this section 4.14. Any Financial Services Shares allocated to Designated Canadian Policyholders, the related Primary Shares of which were not sold in the Initial Public Offering, shall be issued to the relevant Eligible Policyholder and no cash payment shall be made under section 4.7(a) in respect of the shares.

(f) Financial Services and Sun Life of Canada shall jointly and severally indemnify, defend and hold harmless each Eligible Policyholder who sells Resale Shares or Mandatory Sale Shares in the Initial Public Offering from and against any liability, cost or expense, whether under any applicable securities legislation or at common law, arising out of any Misrepresentation or alleged Misrepresentation or similar concept of misstatement, omission or alleged omission under applicable laws made in connection with the Initial Public Offering, provided that:

(i) if a claim is made against an Eligible Policyholder, the policyholder must provide reasonably prompt written notice of the claim to Financial Services and Sun Life of Canada;

(ii) Financial Services and Sun Life of Canada shall be entitled to assume control of the investigation, negotiation, settlement and defence of any claim for which the policyholder seeks indemnification; and