IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1726 T

(Judge Francis M. Allegra)

EUGENE A. FISHER, Trustee,
SEYMOUR P. NAGAN IRREVOCABLE TRUST,
for itself and as Representative of
all similarly situated taxpayers,

Plaintiffs

v.

UNITED STATES,

Defendant

STIPULATIONS OF FACT

The parties herewith stipulate and agree that the following facts are true for purposes of this case only, subject to the right of each party to introduce additional evidence not inconsistent with the stipulated facts and to introduce other evidence to clarify the meaning of those facts.

1. The parties stipulate to the authenticity of the documents identified as Joint Exhibits 1-5 on the exhibit list attached hereto and agree that those Joint Exhibits may be introduced into evidence without objection.

2. The annual premium of the policy issued by Sun Life to the Seymour P. Nagan Irrevocable Trust (hereinafter, "Trust") was $19,763.76. That premium remained the same after

the demutualization of Sun Life in 2000 and would remain the same throughout the life of the policy.

3. The cash surrender value of the Trust's policy on March 22, 200 was $185,172.79. Total policy premiums paid through March 22, 2000 were $194,343.64.

4. On August 20, 1998, prior to the demutualization, Sun Life provided the Trust with an illustration of the anticipated growth in dividends, cash value, paid-up additions and death benefit of the policy from 1998 through 2018. The annual dividend for year nine of the policy, 1998, was expected to be $5,266.00. That dividend was expected to increase each year so that in 2018 the annual policy dividend would be $16,065.00. The annual dividend for year twelve was expected to be 7,087.00.

5. On February 5, 2002, after the demutualization, Sun Life provided the Trust with another illustration of the anticipated growth in dividends, cash value, paid-up additions and death benefit of the policy from 2002 through 2022. The annual dividend for year twelve of the policy, 2002, was expected to be $7,087.00, the same amount set forth in the pre-demutualization illustration. The annual dividends projected for policy years 13-28 in the post demutualization illustration are identical to the annual dividends projected for those years in the pre-deumtualization illustration.

6. *Almost all eligible policyholders had Financial Services shares issued to them as their demutualization benefits. Eligible policyholders had the option to elect to sell the Financial Services shares issued to them by making the Cash Election.* Residents of Canada who made the cash election had their shares purchased by Financial Services prior to the initial public offering. Residents of the United States, including the Trust, had their shares offered for sale as part of the

initial public offering. If eligible policyholders, including the Trust, had wished to sell more Financial Services shares in this manner than could be sold in the initial public offering, some of those Financial Services shares might not have been sold. *In the event, the policyholder could sell the Financial Services shares after demutualization.* The Trust elected the Cash Election and received net proceeds of $31,759.00 from the sale of its Financial Services shares as part of the initial public offering.

7. The Trust timely reported the $31,759.00 proceeds from the sale of its Financial Services stock as capital gain on its 2000 income tax return. The Trust paid $5,725.00 in income tax related to the capital gain on the sale of the Financial Services stock in 2000.

8. The Trust timely filed a claim for refund for 2000 seeking a refund of $5,725.00, contending that it did not incur any capital gain as a result of the sale of its Financial Services stock in that year.

9. The IRS issued a private letter ruling to Sun Life, PLR 200020048, regarding the demutualization in 2000.

10. The parties stipulate that the fair market value of the Financial Services stock plaintiff received on March 22, 2000, was the amount realized as a result of the March 22, 2000

sale of that stock as part of Financial Services' initial public offering.

Respectfully submitted,

s/Burgess J.W. Raby

BURGESS J.W. RABY
Raby Law Office
2164 E. Broadway, Suite 280
Tempe, Arizona 85282
(480) 967-1501

Counsel for Plaintiffs

s/Benjamin C. King, Jr.

BENJAMIN C. KING, JR.
Attorney of Record
Justice Department (Tax)
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM

s/Steven I. Frahm

Of Counsel

Counsel for Defendant