# *Sun Life of Canada's Plan to Demutualize*

Notice of Special Meeting of Eligible Policyholders

and

Policyholder Information Circular

October 20, 1999

**Sun Life Assurance Company of Canada**

EXPANDING OUR HORIZONS

DEFENDANT'S EXHIBIT 1

SL-0143

SUN LIFE ASSURANCE COMPANY OF CANADA

# NOTICE OF A PUBLIC HEARING TO ELIGIBLE POLICYHOLDERS RESIDENT IN THE UNITED STATES OR WHOSE POLICY IS ADMINISTERED BY SUN LIFE OF CANADA IN THE UNITED STATES ON THE PLAN TO CONVERT FROM A MUTUAL COMPANY TO A COMPANY WITH COMMON SHARES

The Commissioner of Insurance of the State of Michigan (the "Michigan Insurance Commissioner") has scheduled a public hearing pursuant to section 212(3) of the Michigan Insurance Code and Administrative Rule 500.2139. The purpose of the hearing is to consider the plan by Sun Life Assurance Company of Canada ("Sun Life of Canada") to convert from a mutual company to a company with common shares (the "Conversion Plan") adopted by the Board of Directors of Sun Life of Canada on September 28, 1999. Eligible policyholders and other interested persons will be given the opportunity at the hearing to present data, views, comments and arguments with respect to the Conversion Plan.

THE PUBLIC HEARING WILL BE HELD AT THE LAW AUDITORIUM, G. MENNEN WILLIAMS BUILDING, 525 WEST OTTAWA STREET, LANSING, MICHIGAN ON NOVEMBER 22, 1999 BEGINNING AT 10:00 A.M. (EASTERN STANDARD TIME).

The Conversion Plan is described in Part 1 of the Policyholder Information Circular, which includes as Schedule A a copy of the Conversion Plan and the exhibits to the Conversion Plan. Until the Conversion Plan is approved or disapproved by the Minister of Finance of Canada, a copy of the Policyholder Information Circular, including the Conversion Plan, may be examined by any eligible policyholder between the hours of 9:00 a.m. and 5:00 p.m. (Eastern Standard Time) at the principal offices of Sun Life of Canada, Secretary's Department, 150 King Street West, Toronto, Canada, in the United States offices of Sun Life of Canada, One Sun Life Executive Park, Wellesley Hills, Massachusetts or at the offices of Dykema Gossett PLLC, 800 Michigan National Tower, Lansing, Michigan, except on days on which those offices are closed for business.

Before it can become effective, the Conversion Plan must be approved by (i) the Michigan Insurance Commissioner pursuant to section 5915 of the Michigan Insurance Code, (ii) not less than two-thirds of the votes cast by Sun Life of Canada's voting eligible policyholders, (iii) other applicable regulatory authorities and (iv) the Minister of Finance of Canada pursuant to section 237(1) of the *Insurance Companies Act* (Canada). The Minister of Finance of Canada must also approve the issuance of Letters Patent of Conversion to effect the Conversion Plan.

The Notice of Hearing is addressed to each policyholder resident in the United States or whose policy is administered by Sun Life of Canada in the United States who is believed by Sun Life of Canada to be eligible to vote on the Conversion Plan and who is shown in the records of Sun Life of Canada to be resident in the United States or having a policy that is administered by Sun Life of Canada in the United States. Any eligible policyholder wishing to submit a written statement concerning the Conversion Plan for consideration by the Michigan Insurance Commissioner may do so by mailing or delivering a copy of that statement to the attention of The Honorable Frank M. Fitzgerald, Michigan Insurance Commissioner, Michigan Insurance Bureau, Department of Commerce, 611 West Ottawa, 2nd Floor, Lansing, Michigan 48933-7720, so that it is received no later than November 22, 1999. Any eligible policyholder wishing to make an oral statement at the hearing should mail or deliver a written notice of his or her intent to make an oral statement to the attention of The Honorable Frank M. Fitzgerald, Michigan Insurance Commissioner, at the same address, so that it is received no later than November 15, 1999. The Michigan Insurance Commissioner has reserved the right to restrict the length of any oral statement.

POLICYHOLDERS DO NOT NEED TO APPEAR AT THE HEARING OR SUBMIT ANY STATEMENTS TO THE PRESIDING OFFICER IN ORDER TO CONTINUE THEIR POLICIES OR TO PROTECT THEIR RIGHT TO RECEIVE ANY PAYMENT OR OTHER CONSIDERATION TO WHICH THEY MAY BE ENTITLED UNDER THE CONVERSION PLAN.

October 20, 1999

This Policyholder Information Circular contains information about Sun Life of Canada's plan to demutualize. You should read it carefully before you vote on the Demutualization Resolution.

Part 1 of this Policyholder Information Circular describes Sun Life of Canada's Conversion Plan and explains why the Sun Life of Canada Board unanimously recommends that you vote in favour of it.

Part 2 of this Policyholder Information Circular provides you with all material information about Sun Life of Canada and the common shares of the company that will become Sun Life of Canada's new holding company through the demutualization. Almost all eligible policyholders will have common shares of the holding company issued to them as their demutualization benefits.

The information in this Policyholder Information Circular is current as of September 28, 1999, unless otherwise indicated.

---

**Exchange Rates**

All references to Can.$ and dollars are to Canadian dollars, unless otherwise indicated. The following chart should help you to convert Canadian dollars to United States dollars, United Kingdom pounds, Philippine pesos and Hong Kong dollars by showing exchange rates for those currencies.

| | September 17, 1999 | December 31, 1998 |
|---|---|---|
| United States dollar | 0.680 | 0.645 |
| United Kingdom pound | 0.419 | 0.389 |
| Philippine peso | 27.248 | 25.000 |
| Hong Kong dollar | 5.280 | 5.000 |

For example, at September 17, 1999, Can.$100 expressed in U.S. dollars would be equal to U.S.$68.00 (Can.$100 x 0.680). Similarly, Can.$100 expressed in U.K. pounds would be equal to £41.90 (Can.$100 x 0.419), Can.$100 expressed in Philippine pesos would be equal to 2,724.80 Philippine pesos (Can.$100 x 27.248) and Can.$100 expressed in Hong Kong dollars would be equal to H.K.$528.00 (Can.$100 x 5.280).

For more information on exchange rates, see Part 2 of this Policyholder Information Circular under "Exchange Rate Information".

---

The Office of the Superintendent of Financial Institutions of Canada has reviewed Sun Life of Canada's plan to convert from a mutual life insurance company to a company with common shares but does not make any recommendation to eligible policyholders as to how to vote on the plan.

A copy of this Policyholder Information Circular has been registered with the Registrar of Companies as required by section 342C(2)(a) of the Companies Ordinance of Hong Kong. Neither the Securities & Futures Commission of Hong Kong nor the Registrar of Companies in Hong Kong takes any responsibility as to the contents of this Policyholder Information Circular. If you are in any doubt about this Policyholder Information Circular, you should consult your stockbroker, bank manager, solicitor, professional accountant or other professional advisor.

SUN LIFE ASSURANCE COMPANY OF CANADA

## NOTICE OF SPECIAL MEETING OF ELIGIBLE POLICYHOLDERS

**NOTICE IS HEREBY GIVEN** that a Special Meeting of eligible policyholders of Sun Life Assurance Company of Canada ("Sun Life of Canada") will be held at Roy Thomson Hall, 60 Simcoe Street, Toronto, Ontario, Canada, on Wednesday, December 15, 1999 at 10:00 a.m. (Toronto time), for the following purposes:

1. to consider and, if thought fit, to pass, with or without variation, a special resolution (the "Demutualization Resolution"):

   (a) approving the plan (the "Conversion Plan") to convert Sun Life of Canada from a mutual company to a company with common shares, substantially on the terms of the Conversion Plan attached as Schedule A to Part 1 of the Policyholder Information Circular;

   (b) confirming amendments to the by-laws of Sun Life of Canada necessary to implement the Conversion Plan and the restatement of those by-laws; and

   (c) authorizing the application by Sun Life of Canada's Board of Directors to the Minister of Finance of Canada for approval of the Conversion Plan and the issuance of Letters Patent of Conversion under the *Insurance Companies Act* (Canada) to effect the Conversion Plan; and

2. to transact any other business that may properly come before the Special Meeting or any continuation of the Special Meeting after an adjournment.

The text of the Demutualization Resolution is attached as Schedule B to Part 1 of the Policyholder Information Circular. The Policyholder Information Circular and A Guide to Sun Life of Canada's Plan to Demutualize for eligible policyholders that accompany this notice provide additional information relating to the Conversion Plan and are incorporated in and form part of this notice.

**DATED** at Toronto, Ontario, Canada this 20th day of October, 1999.

BY ORDER OF THE BOARD OF DIRECTORS

James E. Henkel
Vice President and Corporate Secretary

**It is expected that most eligible policyholders will vote by proxy through the mail and not in person at the Special Meeting. To vote by proxy through the mail, eligible policyholders should complete, sign, date and return the accompanying Voting Form. The form will be used at the Special Meeting or any continuation of the Special Meeting after an adjournment. To be valid, the Voting Form must be mailed to the address shown on the reverse of the Voting Form and received at that address by Monday, December 13, 1999. For your convenience, a reply envelope is enclosed for you to return the Voting Form.**

**You can also deliver the Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999.**

**Voting Forms returned by fax will not be accepted.**

*If you have questions about the proposed demutualization, please call Sun Life of Canada at one of the following numbers:*

| | *If calling within the country* | *If calling from outside the country* |
|---|---|---|
| *Canada* | *1 800 786-5433* | *1 506 862-2197* |
| *United States* | *1 888 891-8145* | *1 617 483-4207* |
| *United Kingdom* | *0845 606 6622* | *44 117 980 7258* |
| *Philippines* | *878-9800 (Metro Manila)*<br>*1-800-1-888-8786 (Provinces)* | *632 878-9800* |
| *Hong Kong* | *2103-8988* | *852 2103-8188* |

*Alternatively, you can visit Sun Life of Canada's Web site at www.sunlife.com or e-mail Sun Life of Canada through the Web site.*

# Policyholder Information Circular

## PART 1 & PART 2

**Part 1**

Table of Contents - Part 1 .......... (i)
Schedules .......... 91

**Part 2**

Table of Contents - Part 2

**Documents enclosed with the Policyholder Information Circular**

A Guide to Sun Life of Canada's Plan to Demutualize
Your Share Allocation Statement
Your Voting Form

Sun Life Assurance Company of Canada

EXPANDING OUR HORIZONS

## TABLE OF CONTENTS – PART 1

# POLICYHOLDER INFORMATION CIRCULAR – PART 1


1. OVERVIEW OF DEMUTUALIZATION . . . . . 1
   - 1.1 What is a Demutualization? . . . . . 1
   - 1.2 Sun Life of Canada's Conversion Plan . . . . . 1
   - 1.3 Demutualization Benefits . . . . . 2
     - Initial Public Offering . . . . . 2
     - Form of Demutualization Benefits . . . . . 2
     - Eligible Policyholders in Canada, United States, United Kingdom, Philippines and Bermuda – Principal Jurisdictions . . . . . 2
     - Eligible Policyholders in Hong Kong, Republic of Ireland, Channel Islands and Isle of Man – Secondary Jurisdictions . . . . . 3
     - Eligible Policyholders in All Other Countries – Other Jurisdictions . 3
     - Special Rules . . . . . 3
   - 1.4 Protecting Policyholders' Interests . . . . . 4
   - 1.5 Reorganization . . . . . 4
   - 1.6 Regulatory Approvals . . . . . 4
   - 1.7 Experts' Opinions . . . . . 4
   - 1.8 Special Meeting . . . . . 5
   - 1.9 Voting . . . . . 6
     - How to Return Your Voting Form . . . . . 6
     - How to Vote in Person . . . . . 6
     - Number of Votes . . . . . 6
   - 1.10 Timetable . . . . . 7
2. RECOMMENDATION OF SUN LIFE OF CANADA BOARD . . . . . 8
3. WHY SUN LIFE OF CANADA IS DEMUTUALIZING . . . . . 8
   - 3.1 Background . . . . . 8
   - 3.2 Board Review . . . . . 9
   - 3.3 Advantages of Demutualization . . . . . 9
     - Benefits of Share Ownership . . . . . 9
     - Aligning Interests . . . . . 10
     - Entire Value for Eligible Policyholders . . . . . 10
     - Access to Capital . . . . . 11
     - Flexibility to Develop and Grow . . . . . 11
     - Competing Effectively . . . . . 11
     - Greater Management Accountability . . . . . 11
   - 3.4 Disadvantages of Demutualization and Responses of Sun Life of Canada Board . . . . . 12
     - Loss of Mutual Structure . . . . . 12
     - Loss of Voting Control . . . . . 12
     - Shareholders' Separate Interests . . . . . 13
     - Increased Exposure to Take-Over . . . . . 13
     - Additional Costs to be Incurred . . . . . 14
     - Potential Tax and Social Benefits Consequences . . . . . 14
   - 3.5 Alternatives Considered . . . . . 15
     - Retaining the Mutual Structure as It Is . . . . . 15
     - Retaining the Mutual Structure and Increasing Policy Dividends . . 15
     - Selling Sun Life of Canada . . . . . 16
     - Selling Subsidiaries . . . . . 16
     - Closing to New Business . . . . . 16
     - Creating a Mutual Holding Company . . . . . 17
   - 3.6 What Happens if the Conversion Plan is Not Approved? . . . . . 17
4. YOUR DEMUTUALIZATION BENEFITS . . . . . 18
   - 4.1 Conversion Plan . . . . . 18

4.2 Eligible Policyholders . . . . . . . . 18
Who is the Owner of an Eligible Policy? . . . . . . . . 18
What is an In Force Policy? . . . . . . . . 19
4.3 Exchange of Ownership Rights . . . . . . . . 19
4.4 Allocation of Financial Services Shares . . . . . . . . 20
Two Components . . . . . . . . 20
Individual Life Insurance Policies . . . . . . . . 21
Group Insurance Policies . . . . . . . . 22
4.5 Number of Financial Services Shares Allocated . . . . . . . . 25
4.6 Share Allocation Statement . . . . . . . . 25
4.7 Form of Demutualization Benefits . . . . . . . . 26
4.8 Financial Services Shares . . . . . . . . 27
Principal and Secondary Jurisdictions . . . . . . . . 27
Other Jurisdictions and Minors - Mandatory Sale . . . . . . . . 28
4.9 Cash from Sun Life of Canada . . . . . . . . 29
Summary of Opinion as to Cash in Lieu of Financial Services Shares . . . . . . . . 29
4.10 Policy Credits . . . . . . . . 30
Form of Policy Credits . . . . . . . . 30
Value of Policy Credits . . . . . . . . 31
Summary of Opinion on Policy Credits . . . . . . . . 31
4.11 Cash and Share Elections . . . . . . . . 31
Principal Jurisdictions - Cash Election . . . . . . . . 31
Secondary Jurisdictions - Share Election . . . . . . . . 31
Information about Elections . . . . . . . . 31
Benefits and Risks of Keeping and Selling Financial Services Shares . . . . . . . . 32
How Shares Will be Sold . . . . . . . . 33
Receiving Cash Proceeds . . . . . . . . 33
4.12 Representations of Eligible Policyholders Who Sell Shares in Connection with the Initial Public Offering . . . . . . . . 34
Non-Canadian Policyholders . . . . . . . . 34
Canadian Policyholders . . . . . . . . 34
4.13 Initial Public Offering . . . . . . . . 34
Plan for Initial Public Offering . . . . . . . . 34
Role of the Underwriters . . . . . . . . 35
Size and Price of Initial Public Offering . . . . . . . . 35
Prospectus . . . . . . . . 36
Completion of Initial Public Offering . . . . . . . . 37
Summary of Opinion on Access to Public Markets . . . . . . . . 37
4.14 Listing on the Stock Exchanges . . . . . . . . 37
4.15 Estimated Value of Benefits . . . . . . . . 38
Summary of Valuation Report and Valuation Opinion . . . . . . . . 38
Initial Share Price and Market Trading Price . . . . . . . . 38
4.16 Holding Your Financial Services Shares . . . . . . . . 39
4.17 Share Selling Service . . . . . . . . 39
4.18 Right to Receive Demutualization Benefits . . . . . . . . 39

5. DISTRIBUTION RULES . . . . . . . . 40
5.1 Title Restrictions . . . . . . . . 40
Assignments as Security and Liens or Other Security Interests . . . 40
Tax Liens and Garnishments . . . . . . . . 40
Bankruptcy . . . . . . . . 40
Other Title Restrictions . . . . . . . . 40
5.2 Effect of Title Restrictions on Distribution of Demutualization Benefits . . . . . . . . 41

Principal Jurisdictions . . . . . 41
Secondary Jurisdictions and Other Jurisdictions . . . . . 41
Policy Credits . . . . . 41
Interest . . . . . 41
5.3 Special Ownership Considerations . . . . . 41
Principal Jurisdictions and Secondary Jurisdictions . . . . . 41
Other Jurisdictions . . . . . 43
Other Special Ownership Considerations . . . . . 43
Governments and Government Agencies . . . . . 43
5.4 Conflicting Rights or Fiduciary Duties . . . . . 44
5.5 Policyholders Who Cannot Be Located . . . . . 44
Entitlement to Demutualization Benefits . . . . . 44
Principal Jurisdictions . . . . . 44
Secondary Jurisdictions . . . . . 45
Other Jurisdictions and Minors . . . . . 45
Policy Credits . . . . . 45
Claiming Demutualization Benefits . . . . . 45
Interest . . . . . 45

6. HOW TO VOTE . . . . . 46
6.1 Only Eligible Policyholders are Entitled to Vote . . . . . 46
6.2 There are Two Ways to Vote . . . . . 46
Vote by Proxy through the Mail . . . . . 46
Attend the Special Meeting . . . . . 47
6.3 Discretionary Authority . . . . . 47
6.4 Returning the Voting Form . . . . . 47
6.5 Revocation of Voting Forms . . . . . 47
6.6 Results of Vote . . . . . 48
6.7 Solicitation of Votes . . . . . 48

7. POLICYHOLDER COMMUNICATIONS . . . . . 49
7.1 News Releases . . . . . 49
7.2 Annual Report to Policyholders . . . . . 49
7.3 Information Brochures . . . . . 49
7.4 Information Mailing to Policyholders . . . . . 49
7.5 Market Research Study . . . . . 49
7.6 Notice to Policyholders with Lapsed Policies . . . . . 49
7.7 Policyholder Information Sessions . . . . . 50
7.8 Call Centres . . . . . 50
7.9 Web Site . . . . . 50
7.10 United Kingdom and Related Transfers . . . . . 50
7.11 Hong Kong Transfer . . . . . 51
7.12 Philippines Transfer . . . . . 51
7.13 Further Information . . . . . 51

8. FINANCIAL SERVICES AND CORPORATE REORGANIZATION . . . . . 52
8.1 Financial Services . . . . . 52
8.2 Corporate Reorganization . . . . . 52
United Kingdom and Related Insurance Business . . . . . 52
Philippines . . . . . 53
Hong Kong . . . . . 53
Other Jurisdictions . . . . . 54
Alternative Arrangements . . . . . 54

9. ONGOING RIGHTS OF PARTICIPATING POLICYHOLDERS . . . . . 55
9.1 Protection of Policyholders' Interests . . . . . 55
9.2 Restructuring of Participating and Other Accounts . . . . . 55

Participating Policies of Sun Life of Canada (Canada, United States and Philippines) . . . 55
Transferred Participating Policies (United Kingdom and Hong Kong) . . . 56
Account Arrangements Generally . . . 57
9.3 Dividend Policy For Participating Policies . . . 57
Participating Policies of Sun Life of Canada (Canada, United States and Philippines) . . . 57
Transferred Participating Policies (United Kingdom and Hong Kong) . . . 57
9.4 Voting Rights . . . 58
Participating Policyholders . . . 58
Participating Policyholders Voting in Sun Life of Canada . . . 58
Shareholders of Financial Services . . . 59

10. SUMMARIES OF ACTUARIAL OPINIONS . . . 60
10.1 Actuarial Opinions . . . 60
10.2 Appointed Actuary . . . 60
Summary of Opinion of Appointed Actuary . . . 60
10.3 Independent Actuary . . . 60
Summary of Opinion of Independent Actuary . . . 61

11. TAX CONSEQUENCES FOR POLICYHOLDERS . . . 62
11.1 Canada . . . 62
11.1.1 Residents of Canada . . . 62
11.1.2 Non-Residents of Canada . . . 64
11.2 United States . . . 66
Residents of the United States . . . 66
11.3 United Kingdom . . . 70
Residents of the United Kingdom . . . 71
11.4 Philippines . . . 72
Individual Residents and Non-Resident Citizens or Aliens of the Philippines . . . 72
11.5 Hong Kong . . . 74
Residents of Hong Kong . . . 75
11.6 Bermuda . . . 75
Residents of Bermuda . . . 75
11.7 Ireland . . . 76
Residents of Ireland . . . 76
11.8 Other Countries . . . 76

12. SOCIAL BENEFITS CONSEQUENCES FOR POLICYHOLDERS . . . 77
12.1 Canada . . . 77
12.2 United States . . . 77
12.3 United Kingdom . . . 78
12.4 Philippines . . . 78
12.5 Hong Kong . . . 78
12.6 Bermuda . . . 78
12.7 Ireland . . . 79
12.8 Right to Renounce Demutualization Benefits . . . 79

13. CONDITIONS TO DEMUTUALIZATION . . . 80
13.1 Approval of Eligible Policyholders . . . 80
13.2 Regulatory Approvals . . . 80
Minister of Finance of Canada . . . 80
Michigan Insurance Commissioner . . . 80
United Kingdom Reorganization . . . 81
13.3 Underwriting Agreements . . . 81




SL-0151

14. ALTERNATIVE ARRANGEMENTS TO INITIAL PUBLIC OFFERING . . . . . . . 82
14.1 Right Not to Proceed with Initial Public Offering . . . . . . . . . . . . . 82
14.2 Alternative Arrangements . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

15. GENERAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
15.1 Amendments to and Withdrawal of the Conversion Plan . . . . . . . . 83
15.2 Amendment to Sun Life of Canada's By-Laws . . . . . . . . . . . . . . . . 83
15.3 Stock Option and Employee Share Purchase Plans . . . . . . . . . . . . . 83
15.4 Payment of Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
15.5 Experts' Consents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

16. PART 1 GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

ADVISORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

TRANSFER AGENTS AND REGISTRARS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89

SCHEDULES
A - Conversion Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
B - Demutualization Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . 153
C - Opinion of Sun Life of Canada's Appointed Actuary . . . . . . . . . . . . . 154
D - Opinion of Independent Actuary . . . . . . . . . . . . . . . . . . . . . . . . . 167
E - Valuation Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 181
F - Opinion of Financial Advisors on Valuation Report . . . . . . . . . . . . . . 187
G - Opinion of Financial Advisors as to Cash in Lieu of Common Shares . . 190
H - Opinion of Financial Advisors on Access to Financial Markets . . . . . . . 194

PART 2 OF THE POLICYHOLDER INFORMATION CIRCULAR
The table of contents can be found at the beginning of Part 2 of this Policyholder Information Circular




SL-0152

# POLICYHOLDER INFORMATION CIRCULAR – PART 1

*Many words or expressions that are used frequently in Part 1 of this Policyholder Information Circular, including capitalized ones, are defined in the Part 1 Glossary. See section 16.*

## 1. OVERVIEW OF DEMUTUALIZATION

The Sun Life of Canada Board unanimously recommends that eligible policyholders vote in favour of demutualization. Part 1 of this Policyholder Information Circular explains Sun Life of Canada's plan to demutualize.

*The Sun Life of Canada Board unanimously recommends demutualization*

### 1.1 What is a Demutualization?

Demutualization is the process by which a mutual company is converted into a company with common shares.

In a mutual life insurance company, such as Sun Life of Canada, participating policyholders have both ownership rights in the company as a mutual company and contractual rights under their policies. In a demutualization, eligible policyholders receive common shares or other benefits in exchange for their ownership rights in the mutual company but they also retain their policies. Demutualization thus separates policyholders' ownership rights from their interests under their policies.

*Eligible policyholders receive benefits in exchange for their ownership rights*

After demutualization, common shareholders own the insurance company. Common shares represent their ownership interests. Common shareholders are entitled, among other things, to vote at meetings of shareholders and to receive dividends declared on their shares.

Typically, the shares issued to eligible policyholders in a demutualization are listed on a stock exchange. The listing may also be part of an offering of shares to investors. This is called an initial public offering. A listing provides eligible policyholders who receive shares with a public market through which they may sell their shares.

In connection with the demutualization process, insurance companies often reorganize their corporate structures. This usually involves the creation of a holding company, which will own the insurance company, and may also include the restructuring of the operating businesses of the insurance company. When a holding company is created, it is the holding company and not the insurance company that issues common shares to eligible policyholders. Those policyholders, along with investors who buy shares in the initial public offering, will own the holding company.

*Demutualizations often include a corporate reorganization*

In order to demutualize, insurance companies must comply with regulatory regimes in countries in which they operate. These regulatory regimes are designed to protect policyholders and to ensure they receive fair and equitable treatment.

*Demutualizations are regulated to protect policyholders*

### 1.2 Sun Life of Canada's Conversion Plan

The Conversion Plan is the legal document containing the plan for the demutualization of Sun Life of Canada. The Conversion Plan is attached as Schedule A to Part 1 of this Policyholder Information Circular.



SL-0153

## 1.3 Demutualization Benefits

*Eligible policyholders will receive demutualization benefits if Sun Life of Canada demutualizes*

As part of the Conversion Plan, and on completion of the demutualization, your ownership rights as a participating policyholder in Sun Life of Canada as a mutual company will cease. In exchange, you will be issued shares, receive cash or have policy credits applied to your policy as your demutualization benefits. Almost all eligible policyholders will have common shares of Sun Life of Canada's new holding company issued to them as their demutualization benefits. The holding company expects to change its name to Sun Life Financial Services of Canada Inc. before the Special Meeting. In Part 1 of this Policyholder Information Circular, the new holding company is referred to as Financial Services and the common shares are referred to as Financial Services Shares.

Eligible policyholders will not have to pay any money for their demutualization benefits. Your Share Allocation Statement included with this Policyholder Information Circular tells you the amount and form of demutualization benefits you will receive.

### *Initial Public Offering*

Financial Services plans to proceed with an initial public offering of Financial Services Shares shortly after demutualization. As part of the initial public offering, Financial Services intends to apply to list the Financial Services Shares on stock exchanges in Canada (Toronto), the United States (New York), the United Kingdom (London) and the Philippines (Manila), the four countries in which the largest number of eligible policyholders reside. Financial Services may also apply to list the Financial Services Shares on the Montreal Exchange depending on the outcome of a proposal to reorganize that exchange. In Part 1 of this Policyholder Information Circular, those exchanges are referred to as the Stock Exchanges.

### *Form of Demutualization Benefits*

The form of demutualization benefits you receive depends primarily on the jurisdiction in which you are resident, as well as the type of policy you hold. See the section below that includes your country of residence. There are special rules for some policyholders. For the principal categories of policyholders affected, see the section below called "Special Rules".

### *Eligible Policyholders in Canada, United States, United Kingdom, Philippines and Bermuda – Principal Jurisdictions*

*Canada, United States United Kingdom Philippines, Bermuda*

These countries are referred to in Part 1 of this Policyholder Information Circular as the Principal Jurisdictions. Generally, eligible policyholders resident in the Principal Jurisdictions will be issued demutualization benefits in the form of Financial Services Shares.

*Most eligible policyholders will have a choice to keep their Financial Services Shares or sell them for cash*

If you are one of these policyholders, you may elect to keep your Financial Services Shares or sell them for cash in connection with the initial public offering. You cannot make this election now. If demutualization is approved at the Special Meeting, Sun Life of Canada will send you detailed information - called the Choices Circular - and a form - called the Choices Form - which will allow you to make the election. Sun Life of Canada expects to mail the Choices Circular to you in late January or early February 2000. Unless you make the cash election, you will keep the Financial Services Shares issued to you.

If you are a Designated Canadian Policyholder, a different procedure applies if you want to receive cash instead of shares. See the section below called "Designated Canadian Policyholders".

### *Eligible Policyholders in Hong Kong, Republic of Ireland, Channel Islands and Isle of Man – Secondary Jurisdictions*

These jurisdictions are referred to in Part 1 of this Policyholder Information Circular as the Secondary Jurisdictions. Eligible policyholders resident in the Secondary Jurisdictions will be issued Financial Services Shares in the same manner as eligible policyholders in the Principal Jurisdictions. However, eligible policyholders in the Secondary Jurisdictions will keep their shares only if they make the share election by completing the Choices Form, which is expected to be mailed to them in late January or early February 2000. If you are resident in a Secondary Jurisdiction and do not make the share election, your shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale.

***Hong Kong***
***Republic of Ireland***
***Channel Islands***
***Isle of Man***

### *Eligible Policyholders in All Other Countries – Other Jurisdictions*

All other countries are referred to in Part 1 of this Policyholder Information Circular as the Other Jurisdictions. Generally, eligible policyholders resident in the Other Jurisdictions will also have Financial Services Shares issued to them. However, if you are resident in an Other Jurisdiction, you will not be entitled to keep your shares. Instead, your shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale. In Part 1 of this Policyholder Information Circular, shares issued to policyholders in the Other Jurisdictions are called Mandatory Sale Shares and the cash proceeds from the sale of those shares are called Mandatory Sale Proceeds.

***All other countries – Eligible policyholders will be required to sell their shares***

### *Special Rules*

These are the special rules that apply to the following categories of eligible policyholders. The "Special Information" section of your Share Allocation Statement indicates whether you are in one of these categories.

***Special rules apply to some policyholders***

#### *Designated Canadian Policyholders*

If you are a Designated Canadian Policyholder, you will also be entitled to elect shares or cash. However, if you elect cash, Financial Services Shares will not be issued to you and you will receive the cash directly from Sun Life of Canada.

#### *Policyholders Who Hold United States Tax-Qualified Retirement Contracts*

If you hold a specific type of United States tax-qualified retirement contract, you will not have Financial Services Shares issued to you as your demutualization benefits. Instead, credits will be applied to your policy. In Part 1 of this Policyholder Information Circular, those credits are referred to as Policy Credits.

#### *United Kingdom Group Pension Schemes*

If you are a trustee of a United Kingdom group pension scheme, the shares issued to you will be sold for you in the initial public offering and you will receive the cash proceeds from this sale unless you elect to keep your shares.

#### *Minors*

If you are a minor, and you do not have a legally appointed guardian, your shares will be sold for you in connection with the initial public offering and you will receive the cash proceeds from this sale. This will apply to all minors, regardless of the jurisdiction in which they are resident.

## 1.4 Protecting Policyholders' Interests

*Your interests under your policy will continue to be protected*

After demutualization, you will continue to own your policy. In addition, policyholders' interests under their policies will continue to be protected.

Your policy benefits will not be reduced and your policy premiums will not be affected by the demutualization.

For participating policyholders, your policy dividends - which in some jurisdictions, including the United Kingdom, are known as bonuses - will continue to be declared from time to time at the discretion of the Sun Life of Canada Board or the directors of a Sun Life of Canada subsidiary. As has always been the case, however, policy dividends are not guaranteed.

As an additional protection, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization.

## 1.5 Reorganization

*Sun Life of Canada will reorganize its corporate structure*

In connection with the demutualization, Sun Life of Canada is reorganizing its corporate structure by creating Financial Services, which will become the holding company of Sun Life of Canada. In addition, Sun Life of Canada will transfer its United Kingdom and related life insurance business and its life insurance businesses in the Philippines and Hong Kong to subsidiaries of Sun Life of Canada.

## 1.6 Regulatory Approvals

*The demutualization will comply with Canadian and other regulatory regimes*

Sun Life of Canada's demutualization and corporate reorganization are being implemented in accordance with the Canadian Insurance Act and the Canadian Demutualization Regulations made under that Act.

The demutualization and parts of the corporate reorganization require the approval of the Minister of Finance of Canada. In addition, the Michigan Insurance Commissioner in the United States and insurance regulators in the United Kingdom, the Philippines and Hong Kong must review and approve those aspects of the demutualization and corporate restructuring of Sun Life of Canada affecting policyholders in their jurisdictions.

*OSFI has reviewed the Conversion Plan and the related documents*

The Office of the Superintendent of Financial Institutions, the principal insurance regulator in Canada - in Part 1 of this Policyholder Information Circular, called OSFI - has reviewed the Conversion Plan, as well as this Policyholder Information Circular and the other material being sent with it to eligible policyholders. The Superintendent will recommend to the Minister of Finance of Canada whether or not to approve the Conversion Plan.

## 1.7 Experts' Opinions

Among other protections, the Canadian Demutualization Regulations require that experts review and provide opinions about significant components of the Conversion Plan. These include a review by the Independent Actuary and the Appointed Actuary of the actuarial arrangements made under the Conversion Plan and a report by financial advisors as to the value of Sun Life of Canada.

*Independent Actuary*

The Independent Actuary is Nicholas Bauer of Eckler Partners Ltd.

*Opinion of Independent Actuary*

The Independent Actuary has provided an opinion on:

- the fair and equitable nature of the apportionment of the value of Sun Life of Canada among eligible policyholders,
- the protection of reasonable expectations of future policy dividends and other non-guaranteed benefits under participating policies of Sun Life of Canada issued before demutualization, and
- the impact of the demutualization on the future financial strength and vitality of Sun Life of Canada and the security of its policyholders.

*Financial Advisors*

Sun Life of Canada's financial advisors are Morgan Stanley & Co. Incorporated and RBC Dominion Securities Inc. The financial advisors have been retained to provide the Valuation Report and an opinion on the Valuation Report, on whether cash is an appropriate substitute for the Financial Services Shares and on access to financial markets by eligible policyholders who keep their shares to the Sun Life of Canada Board and the Financial Services Board. They will receive a fee for these services. The financial advisors also expect to act as lead Underwriters for Financial Services in the initial public offering and to earn a fee for acting as Underwriters.

*Valuation of financial advisors*

The Valuation Report contains a range of estimated public equity market values for Financial Services (on the basis that this range is the same as that for Sun Life of Canada) based solely on estimated prices at which the Financial Services Shares could have been expected to be offered as of September 24, 1999 (the date of the valuation) in an initial public offering of Financial Services Shares conducted in a manner consistent with the Conversion Plan, as if the date of demutualization were September 24, 1999. This range was estimated at September 24, 1999 to have been between approximately Can.$5.6 billion and Can.$8.4 billion.

In the Valuation Report, the financial advisors also estimated that the Initial Share Price for the Financial Services Shares would have been between approximately Can.$14 and Can.$21 on the date of the valuation, based on Sun Life of Canada's advice that approximately 400 million Financial Services Shares would have been outstanding on that date.

These are summaries only, and eligible policyholders should read the complete Valuation Report and the related opinion in order to understand their terms. A copy of the Valuation Report is attached as Schedule E to Part 1 of this Policyholder Information Circular and a copy of the related opinion is attached as Schedule F to Part 1 of this Policyholder Information Circular. Each describes the information relied on and sets out the applicable assumptions, limitations and qualifications.

## 1.8 Special Meeting

*All eligible policyholders are entitled to vote on the Conversion Plan*

The Special Meeting has been called to allow you to vote on the Conversion Plan. All eligible policyholders are entitled to vote at the Special Meeting.

The Special Meeting will be held in Toronto, Canada at:

- 10:00 a.m. (Toronto time) on Wednesday, December 15, 1999,
- Roy Thomson Hall, 60 Simcoe Street, Toronto, Canada.



SL-0157

Before Sun Life of Canada can demutualize, the Demutualization Resolution must be approved by at least two-thirds of the votes cast by eligible policyholders at the Special Meeting. The Demutualization Resolution approves the Conversion Plan and related aspects of the demutualization.

## 1.9 Voting

*You can appoint someone to vote on your behalf or you can vote in person*

You can vote in one of two ways:

- by completing, signing, dating and returning by mail, or delivering, the Voting Form included with this Policyholder Information Circular, or
- by attending the Special Meeting in person.

By using the Voting Form, you will be appointing another person to vote on your behalf at the Special Meeting in accordance with your instructions. This process is known as appointing a proxyholder. It is expected that most eligible policyholders will vote in this manner.

### *How to Return Your Voting Form*

*Your Voting Form must be received by Monday, December 13, 1999*

To be valid, the completed, signed and dated Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. For your convenience, a reply envelope is enclosed for you to return the Voting Form.

You can also deliver the Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999. Alternatively, if you have chosen someone other than the Chairman to vote on your behalf, and you have not mailed in your Voting Form, that person should bring the completed Voting Form to the Special Meeting.

Voting Forms returned by fax will not be accepted.

### *How to Vote in Person*

You can vote in person by attending the Special Meeting. In order to do so, you should bring your Share Allocation Statement as identification to register to vote at the Special Meeting.

### *Number of Votes*

A total of 1,058,243 eligible policyholders are entitled to vote. Each eligible policyholder is entitled to one vote, regardless of the number or size of eligible policies owned.

## 1.10 Timetable

Although Sun Life of Canada cannot predict the precise timing of demutualization and the initial public offering of shares, it expects to complete the process in the first half of 2000. This is the proposed timetable, but it is not certain. With the exception of the dates for receipt of the Voting Forms and for the Special Meeting, the timing may change.

*Key dates to remember*

| 1999 | |
|---|---|
| **December 13** | Deadline for receipt of completed Voting Forms |
| **December 15** | Special Meeting to vote on demutualization |

| 2000 | |
|---|---|
| **Late January/ early February** | Choices Circular including Choices Form mailed |
| **Early March** | Deadline for receipt of completed Choices Forms; marketing of initial public offering begins |
| **Early April** | Marketing of initial public offering ends and Initial Share Price determined; approval of the Minister of Finance of Canada obtained; and demutualization occurs |
| **Next business day after demutualization** | Listing of Financial Services Shares on the Stock Exchanges; trading of shares begins |
| **Five business days after demutualization** | Completion of initial public offering |

Within two weeks of the initial public offering, Financial Services will mail to eligible policyholders confirmations of ownership of Financial Services Shares, cheques and confirmations of Policy Credits.

2

3

*The Sun Life of Canada Board believes demutualization is in the best interests of Sun Life of Canada and its policyholders as a whole*

## 2. RECOMMENDATION OF SUN LIFE OF CANADA BOARD

The Sun Life of Canada Board unanimously recommends that you vote in favour of the Conversion Plan.

After evaluating the relevant information, including the Actuarial Opinions and other expert opinions, the Sun Life of Canada Board has concluded that the Conversion Plan is in the best interests of Sun Life of Canada and its policyholders as a whole because:

- the entire value of Sun Life of Canada is being provided to eligible policyholders,
- it continues to protect the interests of policyholders,
- it has advantages that significantly outweigh any disadvantages, and
- it is superior to the other strategic alternatives for the future of Sun Life of Canada.

## 3. WHY SUN LIFE OF CANADA IS DEMUTUALIZING

### 3.1 Background

Under its current mutual structure, Sun Life of Canada has grown from a life insurance company into a leading international financial services provider. While it has been very successful under this structure, Sun Life of Canada believes it must continually explore options to build on that success and to create future opportunities for its customers and itself.

*The financial services industry is changing rapidly*

The financial services industry in which Sun Life of Canada operates is changing rapidly. These changes include:

- globalization of the financial services industry,
- increased competition from other participants in the financial services industry, such as banks, trust companies, mutual funds and money managers,
- changes in demographic trends, including aging populations and increased life expectancy,
- significant growth in wealth management products, including emphasis on retirement planning and savings, and away from traditional participating life insurance products,
- changes in distribution channels, including the use of independent third party brokers and financial planners to sell products and services, and
- advances in technology, which affect the delivery of products and services to customers.

*In order to build on its success, Sun Life of Canada requires improved access to capital*

These changes are causing a consolidation within the financial services industry. Smaller participants not able to meet the challenges are being acquired by larger ones that are seeking to expand their customer bases so they can compete more effectively. There are opportunities for insurance companies, such as Sun Life of Canada, to expand through strategic acquisitions and alliances that can enhance performance and deliver an attractive return on invested capital. But in order to do so, insurance companies must be able to respond quickly through improved access to capital and the flexibility to pay for acquisitions with common shares. This is not possible for a mutual company.

*Demutualizations are occurring in many countries*

In recent years, many mutual life insurance companies in the United States, the United Kingdom, Australia and elsewhere have responded to this changing industry environment by demutualizing. In June 1996, the Government of Canada announced that it intended to complete the development of the regulatory regime permitting large Canadian mutual life insurance companies to demutualize. The Canadian Demutualization Regulations came into force in March 1999.



SL-0160

## 3.2 Board Review

In anticipation of these regulatory changes in Canada, the Sun Life of Canada Board instructed management to consider demutualization and other structural alternatives available to Sun Life of Canada. As part of its review, management reported to the Sun Life of Canada Board several times in 1997. On January 27, 1998, the Sun Life of Canada Board instructed management to prepare a plan for demutualization.

In proceeding with the development of this plan, the Sun Life of Canada Board determined that the objectives of demutualization would be:

*The Sun Life of Canada Board identified objectives for demutualization and considered advantages, disadvantages and alternatives*

- to provide Sun Life of Canada and its worldwide businesses with increased flexibility to develop and grow and to compete more effectively in the financial services industry through improved access to capital, and
- to ensure that eligible policyholders receive the entire value of Sun Life of Canada.

On August 4, 1999, the Sun Life of Canada Board approved demutualization in principle, and on September 28, 1999, it adopted the Conversion Plan. In doing so, the Sun Life of Canada Board considered the advantages and disadvantages of demutualization for Sun Life of Canada and its policyholders and compared demutualization with remaining as a mutual company and other alternatives.

## 3.3 Advantages of Demutualization

The Sun Life of Canada Board concluded that demutualization has the following advantages.

### *Benefits of Share Ownership*

Demutualization will provide eligible policyholders who receive Financial Services Shares with a form of ownership of Financial Services that has several advantages over their current form of ownership of Sun Life of Canada.

*Ownership of Financial Services Shares has several advantages over your ownership rights as an eligible policyholder*

As a participating policyholder, you currently have ownership rights in Sun Life of Canada. The most important of these are the rights:

- to vote on matters submitted to participating policyholders, such as to elect the Sun Life of Canada Board,
- to participate in the distribution of profits of Sun Life of Canada from all its businesses,
- to participate in any distribution of demutualization benefits, and
- in the unlikely event of a liquidation if Sun Life of Canada were ever to become insolvent, to participate in the distribution of any remaining surplus after satisfaction of all obligations.

However, your current ownership rights are subject to three important limitations under Sun Life of Canada's existing structure:

- you cannot sell your ownership rights,
- in the absence of demutualization, there is no value to your ownership rights separate from your policy, and
- you lose your ownership rights when your policy ends - for example, when the insured dies or the policy matures.

3

Owning Financial Services Shares has many advantages. For example, eligible policyholders who keep their Financial Services Shares will have the right to receive shareholder dividends on Financial Services Shares declared from time to time at the discretion of the Financial Services Board and the right to vote on matters submitted to shareholders, such as electing the Financial Services Board. In addition, share ownership has three important advantages over your current ownership rights as a participating policyholder:

- you will be able to sell your Financial Services Shares,
- the market price of the Financial Services Shares on the Stock Exchanges will establish a clear value for the shares, which you can realize for cash when you sell them, and
- your rights as a shareholder continue as long as you hold Financial Services Shares, regardless of whether your policy ends.

Moreover, even though participating policyholders exchange their ownership rights on demutualization, they retain their policies and their interests under their policies will continue to be protected. Demutualization thus separates policyholders' ownership rights from their interests under their policies. See section 9, "Ongoing Rights of Participating Policyholders".

### *Aligning Interests*

***Demutualization recognizes the separate interests of Sun Life of Canada's owners and its customers***

After demutualization, ownership rights will be separate from policy rights. This will help Sun Life of Canada better align the interests of its owners with the worldwide business to be conducted by Financial Services.

Where most of a mutual insurance company's business relates to participating policies, there is a common interest between the company's owners, who benefit from the profits made on participating policy business, and the company's interest in writing participating policies. However, the nature of Sun Life of Canada's business is changing. Sun Life of Canada has experienced considerable growth in its non-participating protection business and its wealth management business, but participating policyholders are not benefiting from those businesses. Many of those businesses require the reinvestment of earnings to provide capital for future growth. Those earnings are not then available for participating policyholders even though they bear a significant amount of the business risk. Accordingly, the respective interests of Sun Life of Canada and its owners are diverging.

In the demutualization, eligible policyholders and investors who purchase Financial Services Shares will be the owners of Financial Services. The value of their shares will reflect the value of Financial Services and its worldwide businesses, including Sun Life of Canada, and future prospects. As a result, the interests of the shareholders, as owners, will be aligned with the interests of Financial Services.

### *Entire Value for Eligible Policyholders*

***Demutualization will provide the entire value of Sun Life of Canada to eligible policyholders while preserving capital***

Demutualization will enable the entire value of Sun Life of Canada to be provided to eligible policyholders rather than just a portion of it. At the same time, demutualization will preserve Sun Life of Canada's capital because Financial Services will issue shares to almost all eligible policyholders as their demutualization benefits. Although shares provide value to eligible policyholders, issuing them does not involve a distribution of Financial Services' assets. If instead, for example, Sun Life of Canada were to make a cash distribution to all eligible policyholders under its current structure, Sun Life of Canada's capital strength would be reduced by the amount of the distribution.

### *Access to Capital*

As a company with common shares, Sun Life of Canada will have improved access to capital through Financial Services.

*Demutualization will enable Sun Life of Canada to raise capital more effectively...*

As a mutual company, Sun Life of Canada's ability to raise capital is limited. Although Sun Life of Canada can raise capital by issuing various types of securities, such as debt securities, preferred shares and participating shares, it is not permitted to issue common shares. This prevents Sun Life of Canada from creating a capital structure based on an optimal combination of common shares and other securities. Sun Life of Canada's capital raising ability is also constrained because it cannot easily control the timing of increases in capital and so it cannot easily raise capital at the time it is most needed.

*...and to fund acquisitions*

To enhance value, the Sun Life of Canada Board believes that Financial Services should be able to grow, including through acquisitions in the financial services industry. Although Sun Life of Canada has considerable financial strength, it could require significant extra capital to finance this growth. It is highly desirable to have the flexibility to offer common shares rather than cash as payment in merger or acquisition transactions, which are often structured on this basis. The use of shares for acquisitions or to fund other business growth in areas such as product development, technology, distribution and marketing will also allow Financial Services to preserve cash for its operating businesses.

### *Flexibility to Develop and Grow*

*Financial Services and Sun Life of Canada will have greater flexibility to develop and grow*

The creation of Financial Services will afford increased flexibility to develop and grow, especially outside the protection business.

After demutualization, Financial Services and Sun Life of Canada will each be able to raise capital on a basis that is appropriate to it. This will allow management to make the best use of the capital structures of the two companies in the development of the wealth management and protection businesses.

The creation of Financial Services should also facilitate the possible future development of business through subsidiaries of Financial Services, rather than through Sun Life of Canada or its subsidiaries. This flexibility is likely to be of greatest utility in relation to the wealth management business.

### *Competing Effectively*

Demutualization will also allow Sun Life of Canada and Financial Services to continue to compete effectively in the changing competitive environment.

*Many of Sun Life of Canada's competitors are demutualizing*

Other large Canadian mutual life insurance companies have demutualized or are in the process of demutualizing. If and when those demutualizations are completed, none of the leading Canadian-based insurance company competitors of Sun Life of Canada will be mutual companies. In addition, a substantial number of Sun Life of Canada's insurance company competitors based in the United States, the United Kingdom and elsewhere are demutualizing or are already companies with common shares. Because these companies enjoy the advantages of common share capital, Sun Life of Canada will be at a competitive disadvantage if it remains a mutual company.

### *Greater Management Accountability*

*Management accountability should increase*

After demutualization, Financial Services will be required to make regular, comprehensive public disclosure of its operations and financial results, which will be scrutinized by shareholders, the media and financial analysts. Shareholders will have a direct financial interest in Financial Services' performance, dividend payments and share price. This increased level of scrutiny and interest from new stakeholders should increase management accountability for financial performance.

3

The Financial Services Board intends to adopt a stock option plan for key officers and employees of Financial Services and its subsidiaries. The option plan will be designed to align the interests of shareholders and plan participants, and will reward participants for creating shareholder value. This is an important consideration for investors, and will facilitate Financial Services' ability to recruit and retain senior management.

Under the Canadian Demutualization Regulations, Financial Services may not issue stock options or Financial Services Shares to any of its directors, officers or employees until one year after the Financial Services Shares are listed on a Canadian stock exchange. For more information about the proposed stock option plan, see section 15.3, "Stock Option and Employee Share Purchase Plans", and Part 2 of this Policyholder Information Circular under "Stock Option and Employee Share Purchase Plans".

## 3.4 Disadvantages of Demutualization and Responses of Sun Life of Canada Board

***The Sun Life of Canada Board considered possible disadvantages of demutualization***

You may wonder about the possible disadvantages of demutualization to Sun Life of Canada and its policyholders. The Sun Life of Canada Board considered the following possible disadvantages before it decided to proceed with the Conversion Plan and has the following responses to them.

### *Loss of Mutual Structure*

Why is the Sun Life of Canada Board recommending a change to the mutual company structure under which Sun Life of Canada has been successful for many years and which is financially strong?

### *Response*

***The current mutual structure is no longer the most appropriate structure for Sun Life of Canada***

Sun Life of Canada's mutual structure has provided a solid foundation on which Sun Life of Canada has grown into a leading financial services company. However, the financial services industry is changing rapidly and Sun Life of Canada's business is changing along with it. Consistent with changing customer preferences, Sun Life of Canada is increasingly growing outside its traditional protection business in general and the participating policy business in particular.

In considering the implications of these changes, the Sun Life of Canada Board has concluded that the current structure is no longer the most appropriate one to enable Sun Life of Canada to continue to build on its strengths and grow in the future. Moreover, if eligible policyholders approve demutualization, the Sun Life of Canada Board will remain committed to the principles on which Sun Life of Canada has grown since it began business in 1871.

### *Loss of Voting Control*

How are the voting rights of participating policyholders affected by demutualization?

### *Response*

Currently, participating policyholders have the exclusive right to elect the Sun Life of Canada Board and to vote on other matters submitted to them at policyholder meetings. As a result of demutualization, participating policyholders will lose their voting control.

Participating policyholders for whom Sun Life of Canada continues to be the insurer will have voting rights, but on most matters Financial Services, the sole shareholder of Sun Life of Canada, will control any vote. This is because participating policyholders of Sun Life of Canada will vote together as a group with Financial Services except to elect the Sun Life of Canada Board and on certain fundamental

matters, and after demutualization, Financial Services will have approximately 400 million votes (on a one vote per share basis) while participating policyholders of Sun Life of Canada will together have only approximately 750,000 votes (on a one vote per policyholder basis). Participating policyholders of Sun Life of Canada will be entitled to elect at least one-third of the Sun Life of Canada Board while Financial Services will be entitled to elect up to two-thirds. Participating policyholders of Sun Life of Canada will vote separately from Financial Services on fundamental matters such as an amalgamation with another company or the sale of all or substantially all of Sun Life of Canada's business.

Participating policyholders for whom a subsidiary of Sun Life of Canada becomes the insurer will no longer have the right to vote, including on any matters involving Sun Life of Canada.

*Eligible policyholders will be allocated Financial Services Shares in recognition of their loss of voting control*

In recognition of this loss of voting control, eligible policyholders will be allocated approximately 20% of the total number of Financial Services Shares to be allocated in the demutualization. In addition, eligible policyholders who keep the shares issued to them will have voting rights as shareholders of Financial Services.

For more information, see section 9.4, "Voting Rights".

### *Shareholders' Separate Interests*

After demutualization, will your interests as a participating policyholder be protected against the interests of shareholders of Financial Services, particularly with respect to the distribution of income?

*Response*

*Policyholders' interests will continue to be protected after the demutualization... ...under special arrangements established under the Conversion Plan...*

Sun Life of Canada and the regulators of Sun Life of Canada's business have taken care to ensure that policyholders' interests under their policies will continue to be protected after the demutualization.

As part of the Conversion Plan, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization. For a description of these arrangements, see section 9, "Ongoing Rights of Participating Policyholders", and Part 2 of this Policyholder Information Circular under "Restructuring of Participating and Other Accounts on Demutualization". These arrangements have been reviewed by the Appointed Actuary and the Independent Actuary. See section 10, "Summaries of Actuarial Opinions".

*...and under applicable legislation*

In addition, the Conversion Plan, the Canadian Insurance Act and other regulatory requirements applicable to Sun Life of Canada and its subsidiaries limit payments to or for the benefit of shareholders. The Canadian Insurance Act would also prohibit Financial Services or Sun Life of Canada from paying a dividend if it would result in either of them breaching the minimum capital surplus requirements it is required to maintain under the Canadian Insurance Act.

### *Increased Exposure to Take-Over*

At present, it would be very difficult, although perhaps not impossible, for another company to acquire control of a mutual life insurance company like Sun Life of Canada. After demutualization, however, will Financial Services be vulnerable to a take-over?

*Response*

The Canadian Insurance Act currently contains two limitations on the acquisition of control of a life insurance company like Sun Life of Canada after demutualization.

*No shareholder group may currently own more than 10% of Financial Services*

First, the Canadian Insurance Act requires demutualized insurance companies to be widely held. This means that no person may own, directly or indirectly, more than 10% of the Financial Services Shares. The reason for this limitation is to provide time for a demutualized insurance company to make the transition from a mutual company to a public company with common shares before being approached by possible acquirors.

3

*The Minister of Finance of Canada must approve ownership of more than 10% of Financial Services*

Second, the Canadian Insurance Act also requires the approval of the Minister of Finance of Canada for the acquisition, directly or indirectly, by any person of more than 10% of the Financial Services Shares.

In June 1999, the Canadian government announced its intention to change the ownership regime applicable to insurance companies like Financial Services. The proposal would allow an investor to hold up to 20% of any class of voting shares and up to 30% of any class of non-voting shares of an insurance company with shareholders' equity above Can.$5 billion, subject to a "fit and proper" test. The fit and proper test would include an examination of the proposed investor's past business record, the soundness of its business plan and the business reasons for the investment. This test would be designed to help ensure that key shareholders are not a source of weakness to regulated financial institutions.

The Canadian government also announced that, during a two-year transitional period after demutualization, demutualized insurance companies must remain widely held and mergers with or an acquisition of another demutualized insurance company would not be permitted. After this two-year transition period, Financial Services may be permitted, subject to regulatory approval, to merge with another demutualized insurance company and, in certain circumstances, to acquire a demutualized insurance company with less than Can.$5 billion in shareholders' equity, subject to a requirement that 35% of the acquired company's voting shares be held by the public. However, Financial Services, and any other demutualized insurance company with more than Can.$5 billion in shareholders' equity, must remain widely held.

### *Additional Costs to be Incurred*

What significant additional costs will there be as a result of demutualization and are they justified?

### *Response*

*The additional costs are not material in relation to the benefits of demutualization*

The costs of demutualization and the initial public offering are estimated to be a total of approximately Can.$133 million after tax, which represents about 2% of the surplus of Sun Life of Canada. For more information about the assumptions on which this estimate is based, see Part 2 of this Policyholder Information Circular under "Notes to the Pro Forma Condensed Consolidated Financial Statements". The principal costs are professional advisors' fees for preparing the Conversion Plan and the prospectus for the initial public offering and commissions to be paid to the Underwriters for conducting the initial public offering. Other than the commissions, most of these costs have already been incurred.

In addition, there will be ongoing costs associated with maintaining shareholder services, maintaining listings on the Stock Exchanges, complying with more onerous public company disclosure requirements and additional corporate taxes resulting from the demutualization and corporate reorganization. The Sun Life of Canada Board believes that these additional ongoing costs are not significant in comparison to the advantages of demutualization to you and Sun Life of Canada. In addition, there are clear benefits:

- listing the Financial Services Shares on the Stock Exchanges will allow shareholders to sell their shares in a public market, and
- policyholders will benefit from public disclosure of information in deciding whether to hold or sell Financial Services Shares.

### *Potential Tax and Social Benefits Consequences*

Will the increase in your income as a result of receiving demutualization benefits or dividends on Financial Services Shares result in an increase in the taxes you have to pay or a reduction in your social benefits?

*Response*

Sun Life of Canada believes that, in almost every case, the amount of your demutualization benefits will be greater than the amount of any tax you may be required to pay resulting from any increase in your income.

*Demutualization benefits should be greater than any tax you may have to pay*

Some eligible policyholders who receive social benefits may be affected by the receipt of demutualization benefits. Social benefits include those provided under income assistance, medical and welfare programs. Sun Life of Canada recommends that those policyholders carefully consider the potential effect of their demutualization benefits on these programs and compare this with the value of the benefits they can expect from demutualization, in each case taking into account all tax consequences. In the exceptional case where receiving demutualization benefits is ultimately disadvantageous, an eligible policyholder may elect in writing before the date to be set out on the Choices Form to renounce the demutualization benefits. But before you do, you should check to make sure the renunciation will be effective for tax purposes. For a more detailed description, see section 12, "Social Benefits Consequences for Policyholders".

## 3.5 Alternatives Considered

The Sun Life of Canada Board recognized that, in the current financial services environment, the principal option for structural change is demutualization. Accordingly, the review by management of structural options and the consideration of them by the Sun Life of Canada Board focused primarily on demutualization as an alternative to remaining a mutual company, with or without changes under the mutual structure. However, the review included other structural alternatives, which the Sun Life of Canada Board also looked at before concluding it should recommend demutualization.

*The Sun Life of Canada Board considered various alternatives to demutualization*

### *Retaining the Mutual Structure as It Is*

Sun Life of Canada could retain its mutual structure, without significant change.

*The advantages of demutualization to Sun Life of Canada and its policyholders as a whole outweigh any advantages of continuing as a mutual company*

Sun Life of Canada is financially strong and could continue to operate successfully as a mutual company. However, the Sun Life of Canada Board believes that continuing as a mutual company would not serve the best interests of Sun Life of Canada and its policyholders as a whole in the long term.

The Sun Life of Canada Board has concluded that the advantages of demutualization significantly outweigh any disadvantages. As described under section 3.3, "Advantages of Demutualization", the advantages include:

- providing eligible policyholders who receive Financial Services Shares with a form of ownership interest that has several advantages over their current form of ownership of Sun Life of Canada, and
- providing Sun Life of Canada with improved access to capital and more flexibility to grow and develop.

As a mutual company, Sun Life of Canada could raise capital by issuing debt securities, preferred shares or participating shares. Sun Life of Canada does not, however, consider participating shares to be a satisfactory alternative to common shares because they are unusual equity interests, lack full voting rights and would be issued by a mutual company controlled by participating policyholders, making them less attractive to equity investors than common shares.

### *Retaining the Mutual Structure and Increasing Policy Dividends*

Sun Life of Canada could retain its mutual structure and increase ordinary policy dividends or pay extraordinary policy dividends to its participating policyholders in order to distribute to them a portion of its current surplus.



SL-0167

*Retaining the mutual structure and increasing policy dividends would reduce assets available to protect policyholders*

3

The Sun Life of Canada Board believes that this would be an inferior alternative because:

- it would reduce the assets available to protect the security of policyholders' benefits,
- only a limited portion of Sun Life of Canada's surplus could be distributed – in the demutualization, the entire value of Sun Life of Canada is being provided to eligible policyholders, and
- it would reduce Sun Life of Canada's capital, which would not be easy to replenish, leaving Sun Life of Canada's ability to pursue its business strategies significantly more limited than it was before the distribution.

### *Selling Sun Life of Canada*

Sun Life of Canada could be sold as a whole.

*Sale of Sun Life of Canada is not a practical alternative*

At present, it would be very difficult, although perhaps not impossible, to sell Sun Life of Canada while it remains a mutual company. A sale would have to occur through assumption reinsurance of all Sun Life of Canada's policies and the sale of the shares of its subsidiaries. In order to distribute value from the sale to participating policyholders, an extraordinary dividend would have to be declared. This process would be very complicated and lengthy.

Moreover, the Canadian Insurance Act prohibits the voluntary liquidation and dissolution of a solvent mutual life insurance company. OSFI has indicated to Sun Life of Canada that this prohibition would apply to a sale structured on that basis.

A "sponsored" demutualization – that is, a sale to a third party of all the shares of an insurance company at the time of its demutualization – is not permitted under the Canadian Insurance Act. Nor is the take-over of a demutualized insurance company. In a recent policy paper, the Canadian government indicated that, during a two-year transitional period after demutualization, it would not approve the merger of two large demutualized insurance companies, including Sun Life of Canada.

### *Selling Subsidiaries*

Sun Life of Canada could either sell all its interest or a minority interest in one or more of its subsidiaries.

*Sale of a subsidiary is not consistent with Sun Life of Canada's goals*

The sale of Sun Life of Canada's entire interest in a subsidiary engaged in the wealth management business or protection business would not be consistent with Sun Life of Canada's goal, which is to be a provider of a broad range of wealth management and protection products.

Although the sale of a minority interest in a subsidiary would allow Sun Life of Canada to maintain control of the subsidiary, it is a less attractive financial alternative since a minority interest would attract a lower purchase price. While this type of sale would raise some capital, access to capital would be significantly more limited than that available through demutualization. In addition, this type of a sale would not achieve the other advantages of demutualization, such as providing the entire value of Sun Life of Canada and the benefits of share ownership to eligible policyholders.

As well, demutualization will not prevent the later sale of one or more subsidiaries if doing so is consistent with Sun Life of Canada's future goals.

### *Closing to New Business*

Sun Life of Canada could stop selling new insurance, gradually "run off" its businesses in an orderly fashion as policies terminate by maturity, death or otherwise or by selling businesses, and eventually cease operations. The cash generated would be distributed to participating policyholders over time as enhanced policy dividends.

The Sun Life of Canada Board concluded that closing to new business would not be in the best interests of Sun Life of Canada and its policyholders as a whole for the following reasons:

*The "run off" of Sun Life of Canada would not be in the best interests of Sun Life of Canada and its policyholders as a whole*

- the value of Sun Life of Canada's existing businesses and its goodwill would probably decline, which would decrease its realizable value,
- it would eliminate the potential for profitable growth of Sun Life of Canada through expansion into or acquisition of new wealth management and protection businesses,
- implementation of the run-off would be an unusual transaction, subject to significant costs, risks and uncertainties,
- Sun Life of Canada would need to retain capital for some time to support the run-off and unforeseen future contingencies and as a result full distribution of the existing surplus would be deferred,
- eligible policyholders' rights to policy dividends would terminate with their policies, and they may not be able to receive the same share of value as they would on demutualization, and
- key management and employees would likely leave Sun Life of Canada.

The run-off of a significant life insurance company would also not be in the best interests of a strong competitive marketplace, employees or the communities in which Sun Life of Canada is a major employer.

Moreover, the Canadian Insurance Act prohibits the voluntary liquidation and dissolution of a solvent mutual life insurance company. OSFI has indicated to Sun Life of Canada that this prohibition would apply to such a run-off of its business.

### *Creating a Mutual Holding Company*

Under United States law, a mutual insurance company may demutualize by creating a mutual holding company. Under that structure, a mutual holding company would be formed, and participating policyholders would own the holding company in the same capacity as they currently own Sun Life of Canada. Sun Life of Canada would become a company with common shares. A majority of those shares would be owned by the mutual holding company and a minority of the shares of Sun Life of Canada could be sold to investors.

The Canadian Demutualization Regulations do not allow a mutual holding company structure.

*The Canadian Demutualization Regulations do not allow a mutual holding company structure*

However, even if this structure were allowed, it would not be preferable to demutualization because it would not provide the entire value of the company to eligible policyholders. The mutual holding company would continue to control Sun Life of Canada, and therefore only part of the value of Sun Life of Canada would be available to policyholders.

## 3.6 What Happens if the Conversion Plan is Not Approved?

If eligible policyholders do not approve the Conversion Plan:

*If demutualization is not approved, Sun Life of Canada would remain a mutual company*

- Sun Life of Canada would remain a mutual insurance company,
- you would retain your ownership rights in Sun Life of Canada, and
- you would not receive demutualization benefits under the Conversion Plan.

In that case, the Sun Life of Canada Board would continue to consider proposals to address changes in the financial services industry and increased competition. Those proposals could include another demutualization proposal or strategic alternative. Because your ownership rights terminate with your policy, you may not be eligible to participate in any later proposal adopted by the Sun Life of Canada Board and approved by policyholders.

4

# 4. YOUR DEMUTUALIZATION BENEFITS

## 4.1 Conversion Plan

The Conversion Plan is the legal document containing the plan for the demutualization of Sun Life of Canada. The Conversion Plan is attached as Schedule A to Part 1 of this Policyholder Information Circular. Among other things, the Conversion Plan describes in detail the eligibility rules for receiving demutualization benefits and the types of demutualization benefits.

Eligible policyholders will not have to pay any money for their demutualization benefits.

## 4.2 Eligible Policyholders

Eligible policyholders have the right to receive demutualization benefits and to vote at the Special Meeting.

*Who is an eligible policyholder and what is an eligible policy?*

An eligible policyholder is the owner of an eligible policy. In general, eligible policies are participating policies of Sun Life of Canada that were in force on January 27, 1998. That was the day the Sun Life of Canada Board made a public announcement that it had instructed management of Sun Life of Canada to prepare a plan for demutualization.

In addition, eligible policies include:

- participating policies that were applied for on or before January 27, 1998 and issued after that date, if the signed application, dated on or before January 27, 1998, was received at an office of Sun Life of Canada within three business days after January 27, 1998, and
- participating policies that were lapsed on January 27, 1998 but were reinstated 90 days before the Special Meeting (that is, reinstated by September 16, 1999) by the person who was the policyholder at the time the policy lapsed.

### *Who is the Owner of an Eligible Policy?*

*Are you the owner of an eligible policy?*

Sun Life of Canada determines ownership based on its records. In general, you are the owner of an eligible policy if the policy was issued to you.

There are detailed rules to determine the owners of eligible policies in particular cases. If you are unsure about your own particular circumstances, you should review section 3.5, "Eligible Policyholders", of the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular. If you are still unsure, then call one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular. Some of these rules are summarized in the remainder of this section.

### *Special Circumstances*

*What if the owner has died?*

If a person was the owner of an eligible policy and died on or after January 27, 1998, the person's estate will be entitled to receive demutualization benefits.

*What if there is more than one person that owns a policy?*

If more than one person owns an eligible policy, then together they are considered to be a single owner. In that case, the owners are entitled to receive jointly the demutualization benefits distributed in relation to that policy.

*What if a person owns more than one eligible policy?*

If a person or a group of persons owns more than one eligible policy in the same capacity, that person or group will be treated as a single owner of all those policies. There is an exception to this rule in the case of a person who owns policies on behalf of other persons, such as a trustee who owns more than one eligible policy for different beneficiaries. That person will be treated as a separate owner for each eligible policy held for a different beneficiary.



SL-0170

*What if a policy has been irrevocably assigned?*

If a policyholder has irrevocably assigned, except for purposes of giving security, an eligible policy on or before January 27, 1998 in accordance with the terms of the eligible policy and Sun Life of Canada's procedures with respect to assignments, the person to whom the eligible policy has been assigned will be treated as the owner of the eligible policy. Sales and gifts are examples of this type of assignment. If this type of assignment was made after January 27, 1998, the policyholder who assigned the eligible policy will be treated as the owner.

*What if a policy has been assigned as security for a loan?*

If a policyholder has assigned an eligible policy to secure a loan or other obligation of the policyholder, the policyholder will be treated as the owner of the eligible policy.

For more information on how assignments affect rights in the demutualization, see section 5, "Distribution Rules".

*Who owns a group policy or a pension policy which provides benefits to a group of people?*

The owner of a group insurance policy or a pension policy is generally the person named in the master policy or contract as the policy or contract holder. In general, individual insureds or annuitants who are participants in a group insurance policy or a pension policy (which provides benefits to a group but not an individual), including holders of certificates, will not be treated as owners of a policy. However, if a certificate issued to an insured or annuitant under a group insurance policy or a pension policy is a separate contract, that insured or annuitant is the owner of that separate contract.

### *What is an In Force Policy?*

*Is your policy in force?*

Sun Life of Canada determines whether an eligible policy is in force based on its records. In general, a policy is in force if it has been issued and has not:

- lapsed because premiums were not paid,
- matured because of death or for any other reason, or
- been surrendered or otherwise terminated.

If premium payments are overdue, a policy remains in force until the end of any grace period provided for in the policy.

There are detailed rules to determine whether a policy is in force. If you are unsure about whether your policy is in force, you should review section 3.3, "In Force", of the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular. If you are still unsure, then call one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular for help.

## 4.3 Exchange of Ownership Rights

As a participating policyholder, you currently have ownership rights in Sun Life of Canada. The most important of these are the rights:

- to vote on matters submitted to participating policyholders, such as electing the Sun Life of Canada Board,
- to participate in the distribution of profits of Sun Life of Canada from all its businesses,
- to participate in any distribution of demutualization benefits, and
- in the unlikely event of a liquidation if Sun Life of Canada were ever to become insolvent, to participate in the distribution of any remaining surplus after satisfaction of all obligations.

*Demutualization involves an exchange of ownership rights for benefits*

When Sun Life of Canada demutualizes, eligible policyholders will receive demutualization benefits in exchange for their ownership rights.

On demutualization, all policyholders' rights or interest in Sun Life of Canada as a mutual company, including the ownership rights of eligible policyholders, will cease and be cancelled. The demutualization benefits thus compensate eligible policyholders for the loss of their ownership rights.

*The amount of your demutualization benefits is based on the number of Financial Services Shares allocated to you*

## 4.4 Allocation of Financial Services Shares

The value of Sun Life of Canada will be apportioned among eligible policyholders on the basis of the method described below. The method involves the allocation of Financial Services Shares to all eligible policyholders for the purposes of determining the amount of demutualization benefits each policyholder will receive. Demutualization benefits will be distributed in the form of Financial Services Shares, cash or Policy Credits. See section 4.7, "Form of Demutualization Benefits".

The method was developed following extensive actuarial analysis and has been subjected to thorough testing. The actuarial analysis and the development and testing of the method was done by Sun Life of Canada's actuaries under the supervision of the Appointed Actuary, in consultation with Tillinghast-Towers Perrin, the consulting actuaries.

The method of allocation of Financial Services Shares among eligible policyholders is the same regardless of the jurisdiction in which they are resident.

The Appointed Actuary and the Independent Actuary have each concluded that the benefits and the method to apportion the value of Sun Life of Canada among eligible policyholders are fair and equitable to those policyholders. See section 10, "Summaries of Actuarial Opinions". The Sun Life of Canada Board also believes that the method for determining and allocating demutualization benefits among eligible policyholders is fair and equitable.

### *Two Components*

Your allocation of Financial Services Shares is made up of two components - fixed and variable.

*On demutualization, you will be allocated a minimum of 75 Financial Services Shares*

#### *Fixed*

The fixed component consists of a fixed number of 75 Financial Services Shares. It is intended to recognize the loss of voting control in Sun Life of Canada by eligible policyholders on demutualization. Each eligible policyholder has only one vote at policyholders' meetings, regardless of the number or size of eligible policies owned. For this reason, all eligible policyholders will receive the same fixed allocation of shares.

Approximately 20% of the total number of Financial Services Shares to be allocated to all eligible policyholders will be allocated under the fixed allocation.

*You may receive additional Financial Services Shares for each eligible policy that you own*

#### *Variable*

The variable component consists of a variable allocation of Financial Services Shares, in respect of the other ownership rights of eligible policyholders, based on a formula applied to each eligible policy. One formula applies to eligible individual life insurance policies, individual health policies, individual annuities, and to pension policies. Another formula applies to eligible group insurance policies. The variable allocations determined for eligible policies reflect the varying financial interests of eligible policies, including their size, length of time in force with Sun Life of Canada, contribution to the value of Sun Life of Canada and their differing rights to receive surplus. In the case of eligible policies originally issued by companies other than Sun Life of Canada, namely Confederation Life Insurance Company, The Prudential Group Assurance Company of England (Canada) and Teachers Insurance and Annuity Association of America, length of time in force is measured from the effective date Sun Life of Canada acquired those policies - December 31, 1994 for Confederation Life, January 1, 1995 for Prudential Group Assurance and January 1, 1996 for Teachers Insurance and Annuity Association of America.

Approximately 80% of the total number of Financial Services Shares to be allocated to all eligible policyholders will be allocated under the variable allocations.

Most eligible policyholders own individual life insurance or group insurance policies. The formulas for calculating the amount of variable allocations with respect to these policies are described in general terms below. Approximately 89% of the total number of Financial Services Shares allocated under the variable allocations will be allocated in respect of individual life insurance policies, approximately 8% will be allocated in respect of group insurance policies and the remaining approximately 3% will be allocated in respect of individual annuity, group pension and other policies. In determining the variable allocation for eligible policies purchased in a currency other than Canadian dollars, Sun Life of Canada used currency exchange rates on January 27, 1998. The exchange rates used are listed in Exhibit B to the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular. For the full text of the formulas and rules that apply to all types of eligible policies, see Article 4, "Allocation and Distribution of Demutualization Benefits", of the Conversion Plan.

*There are detailed formulas to calculate the variable allocation amounts*

4

### *Individual Life Insurance Policies*

If you own an eligible individual life insurance policy, your variable allocation in respect of that policy will be equal to:

*If you own an individual life insurance policy...*

1.32 Financial Services Shares for each Can.$1,000 of Time-Weighted Cash Value

plus

64 Financial Services Shares for each Can.$1,000 of Annual Premium Measure,

rounded up to the next whole Financial Services Share.

#### *Time-Weighted Cash Value*

The Time-Weighted Cash Value of a policy will generally be determined by multiplying the cash value of the policy on January 27, 1998 by the number of years (plus any fraction of a whole year) that the policy was then in force with Sun Life of Canada. In general, Sun Life of Canada will calculate the cash value as the amount that you would have received if you had voluntarily terminated your policy on January 27, 1998. The cash value, however, will not include any amount for special maturity dividends or terminal bonuses or premiums that you may have paid in advance and it will not be reduced by any policy loan, together with accrued interest, that you may have or premiums that you owe. If your policy has not yet built up any cash value, you will not receive any Financial Services Shares based on Time-Weighted Cash Value.

#### *Annual Premium Measure*

The Annual Premium Measure of a policy will generally be the amount of annual premium payable under the policy on January 27, 1998. It will not generally include, however, any premium that you pay for additional benefits that you have purchased with your policy, such as term insurance. In addition, it will not include single premiums on the policy or any policy rider. If you pay your premiums other than annually, Sun Life of Canada will determine the amount that you would have paid if premiums were paid annually. If your policy was paid up or beyond the premium paying period on January 27, 1998, you will not receive any Financial Services Shares based on the Annual Premium Measure. In that case, premiums that you paid under your policy will already have been taken into account in calculating the Time-Weighted Cash Value of your policy.

*Example of an Allocation of Financial Services Shares*

***Example for an individual life insurance policy***

As an example, assume that, on January 27, 1998, Mr. Jones:

- has owned an insurance policy on his life for 12 years,
- was paying an annual premium of Can.$900 on the policy, and
- would have been entitled, under the terms of his policy, to a cash amount of Can.$8,500 if he had terminated his policy (excluding any amount for special maturity dividends, terminal bonuses or premiums paid in advance).

Mr. Jones will be entitled to receive the following number of Financial Services Shares:

| | | |
|---|---|---|
| **Fixed Allocation** | | 75 Financial Services Shares |
| **Variable Allocation** | | |
| Years in force: | 12 years | |
| Cash Value: | Can.$8,500 | |
| Time-Weighted Cash Value: | [12 × Can.$8,500 = Can.$102,000] | |
| Number of Financial Services Shares for the Time-Weighted Cash Value | = [1.32 × Can.$102,000 / Can.$1,000] = | 134.64 Financial Services Shares |
| Annual Premium Measure: | Can.$900 | |
| Number of Financial Services Shares for Annual Premium Measure | = [64 × Can.$900 / Can.$1,000] = | 57.60 Financial Services Shares |
| Total (rounded up) | | 268 Financial Services Shares |

If you would like more information about your allocation, please call one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular.

## *Group Insurance Policies*

***If you own a group insurance policy...***

If you own an eligible group insurance policy, your variable allocation in respect of that policy will be 4.7 Financial Services Shares for each Can.$1,000 of Time-Weighted Annual Premium Measure, rounded up to the next whole Financial Services Share. The Time-Weighted Annual Premium Measure will be determined by multiplying the Duration of the eligible policy by the Group Annual Premium Measure, each calculated in the manner described below.

### *Duration*

Most group policies of Sun Life of Canada are subject to periodic negotiation of and amendment to the terms of insurance coverage, with the result that a policy must be periodically re-written on a mutually agreed basis. As a result, Sun Life of Canada will measure the Duration of any eligible group insurance policy by reference to the policyholder, and not the policy itself. More specifically, Sun Life of Canada will calculate the Duration with regard to the length of time that the policyholder has continuously held participating group insurance coverage with Sun Life of Canada. To determine the Duration of each eligible policy held by the policyholder, Sun Life of Canada will calculate, as of January 27, 1998, the number of years plus any fraction of a year during which a policyholder continuously held participating group insurance coverage, up to a maximum of 15 years, and will then add five years, with the result that the maximum Duration of any eligible group insurance policy will be 20 years. Each eligible group insurance policy held by the policyholder will have the same duration. If your policy was acquired by Sun Life of Canada from another insurer, Sun Life of Canada will measure the length of time that you continuously had eligible group insurance coverage with Sun Life of Canada from the date of acquisition of the policy and not from its initial issue date, since that is the date the policy first became a policy of Sun Life of Canada. For example, Sun Life of Canada will measure that length of time for policies acquired from Prudential Group Assurance from January 1, 1995.

*Group Annual Premium Measure*

Except in the case of coverage that was shown as paid-up coverage or terminated coverage in Sun Life of Canada's records on January 27, 1998, the Group Annual Premium Measure will generally be the annual premium paid or payable by you to Sun Life of Canada in 1997 in respect of regular group life, survivor income benefit and creditor life coverage under your policy (but excluding premium paid for accidental death and dismemberment and, for policies in all countries except the United Kingdom, premium paid for health insurance). Special rules will apply if you acquired your policy in 1997 or 1998 or for certain reinsured coverage under your policy.

If your eligible policy had paid-up coverage as of January 27, 1998, Sun Life of Canada will calculate a deemed annual premium with respect to paid-up life insurance coverage and disabled life insurance coverage which is approximately the same as the amount of premium that would be payable if the coverage were being paid for with annual premiums. In respect of survivor income benefits or life insurance benefits being paid in installments, as a result of disability, Sun Life of Canada will deem the premium to be the sum of the annual payments to the beneficiaries as at December 31, 1997.

If your eligible policy had both premium-paying and paid-up coverage on January 27, 1998, the Group Annual Premium Measure will be determined by the appropriate combination of the above methods.

*Examples of Allocations of Financial Services Shares*

***Examples for group insurance policies***

As a first example, assume that:

- ABC Company has owned a participating group insurance policy for 10 years on January 27, 1998,
- ABC Company paid a premium of Can.$100,000 in 1997 for regular group life coverage and continued to pay premiums as of January 27, 1998, and
- ABC Company's eligible policy does not have any paid-up coverage or other coverage (such as long-term disability).

ABC Company will be entitled to receive the following number of Financial Services Shares:

| | | |
|---|---|---|
| **Fixed Allocation** | | 75 Financial Services Shares |
| **Variable Allocation** | | |
| Years in force: | 10 years | |
| Duration: | [15 years (10 years in force plus 5 years)] | |
| Group Annual Premium Measure: | Can.$100,000 | |
| Time-Weighted Annual Premium Measure: | [15 × Can.$100,000 = Can.$1,500,000] | |
| Number of Financial Services Shares for the Time-Weighted Annual Premium Measure | = [4.7 × Can.$1,500,000 / Can.$1,000] = | 7,050 Financial Services Shares |
| **Total** | | 7,125 Financial Services Shares |



SL-0175

4

As a second example, assume that:

- XYZ Company owned two participating group insurance policies on January 27, 1998: Policy 1 has been owned for 17 years and Policy 2 has been owned for 10 years,
- Policy 1 and Policy 2 both provide regular group life, accidental death and dismemberment (AD&D) and long-term disability (LTD) coverage,
- In 1997, XYZ Company paid the following premiums:

| | Policy 1 | Policy 2 |
|---|---|---|
| Regular group life | Can.$100,000 | Can.$50,000 |
| AD&D | Can.$ 5,000 | Can.$ 3,000 |
| LTD | Can.$ 80,000 | Can.$40,000 |

and XYZ Company continued to pay premiums as of January 27, 1998, and

- Policy 1 has paid-up coverage for which a deemed annual premium of Can.$5,000 has been determined and Policy 2 has no paid-up coverage.

XYZ Company will be entitled to receive the following number of Financial Services Shares:

| | | |
|---|---|---|
| **Fixed Allocation** | | 75 Financial Services Shares |
| **Variable Allocation** | | |
| Years in force: | [17 years (longer of the two policies)] | |
| Duration: | [20 years (years in force plus 5 years, maximum 20 years)] | |
| Group Annual Premium Measure (Policy 1 plus Policy 2): | | |
| Regular group life | Can.$150,000 | |
| Paid-up coverage | Can.$ 5,000 | |
| Total | Can.$155,000 | |
| (premiums for AD&D and LTD are excluded) | | |
| Time-Weighted Annual Premium Measure: | [20 × Can.$155,000 = Can.$3,100,000] | |
| Number of Financial Services Shares for the Time-Weighted Annual Premium Measure = | [4.7 × Can.$3,100,000 / Can.$1,000] = | 14,570 Financial Services Shares |
| **Total** | | 14,645 Financial Services Shares |

### *Other Allocation Methods*

In testing the fairness and equity of the allocation method, the Appointed Actuary reviewed the "contribution to surplus" method, which has been used in most demutualizations in the United States, and other approaches, which have been used in demutualizations in Canada, the United Kingdom, Australia and South Africa. The Appointed Actuary determined that the contribution to surplus method was not appropriate for Sun Life of Canada because:

- Sun Life of Canada has participating business in a number of international jurisdictions where there are significant differences in the types of products written in each jurisdiction,

- eligible policyholders have contributed only a small proportion of the present value of Sun Life of Canada, and in particular about one-third of eligible policyholders would have received nothing for their variable component allocation under this method, and
- this method is extremely complicated and would not be simple or easily understandable for policyholders.

The Sun Life of Canada Board accepted the Appointed Actuary's recommendation that the contribution to surplus method would not be appropriate for Sun Life of Canada. Instead, the method Sun Life of Canada is using is similar to that used in Canadian and international demutualizations because it satisfies the key allocation principles and the reasonableness testing described in the opinion of the Appointed Actuary. See "Opinion of Sun Life of Canada's Appointed Actuary" attached as Schedule C to Part 1 of this Policyholder Information Circular.

## 4.5 Number of Financial Services Shares Allocated

The total number of Financial Services Shares to be allocated to all eligible policyholders will be approximately 400 million.

## 4.6 Share Allocation Statement

*Please review your Share Allocation Statement*

Accompanying this Policyholder Information Circular is your Share Allocation Statement. Each eligible policyholder will receive one. This statement shows, as of demutualization:

- the number of Financial Services Shares that have been allocated to you based on the allocation method,
- the list of your eligible policies,
- whether Sun Life of Canada requires specific information from you such as a confirmation of your address or a United States Tax Identification Number, and
- any special information that applies to you, including whether there are any title restrictions affecting your eligible policies.

For an explanation of title restrictions that may affect your policy or result in a delay in the receipt of demutualization benefits, see section 5.1, "Title Restrictions".

4

## 4.7 Form of Demutualization Benefits

*How is the form of demutualization benefits determined?*

The form of demutualization benefits you will receive depends primarily on the jurisdiction in which you are resident, as well as the type of policy you hold. The chart below summarizes the form of demutualization benefits for all eligible policyholders. Further explanation of the details in this chart can be found in the remainder of section 4 and in section 5.

| Country of Residence | Type of Eligible Policyholder[1] | Form of Demutualization Benefits |
|---|---|---|
| **Canada, United States, United Kingdom, Philippines and Bermuda – *Principal Jurisdictions*[2]** | All eligible policyholders, except those noted below | Financial Services Shares or cash proceeds |
| | Designated Canadian Policyholders[3] | Financial Services Shares or cash directly from Sun Life of Canada |
| | Title restricted policyholders[3] | Financial Services Shares |
| | United States tax-qualified retirement contracts[3] | Policy Credits |
| | United Kingdom group pension schemes[3] | Financial Services Shares or cash proceeds |
| | Lost policyholders at time of demutualization[3] | Financial Services Shares |
| | Minors[3, 4] | Cash proceeds from mandatory sale of Financial Services Shares |
| **Hong Kong, Republic of Ireland, Channel Islands and Isle of Man – *Secondary Jurisdictions*[2]** | All eligible policyholders, except those noted below | Financial Services Shares or cash proceeds |
| | Title restricted policyholders[3] | Cash directly from Sun Life of Canada |
| | Lost policyholders and policyholders who have not confirmed their address at time of demutualization[3] | Cash proceeds from mandatory sale of Financial Services Shares |
| | Minors[3, 4] | Cash proceeds from mandatory sale of Financial Services Shares |
| **All other countries – *Other Jurisdictions*** | All eligible policyholders, except those noted below | Cash proceeds from mandatory sale of Financial Services Shares |
| | Title restricted policyholders[3] | Cash directly from Sun Life of Canada |
| | Lost policyholders and policyholders who have not confirmed their address at time of demutualization[3] | Cash proceeds from mandatory sale of Financial Services Shares |

1. If you fall within more than one type, you should review the Conversion Plan or call one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular to determine the form of demutualization benefits to which you are entitled.
2. If demutualization is approved at the Special Meeting, policyholders in these jurisdictions will receive a Choices Circular and Choices Form which will describe in more detail the choices available to them.
3. If you are in one of these categories, it is indicated in the "Special Information" section of your Share Allocation Statement.
4. In the case of minors in the Principal Jurisdictions and Secondary Jurisdictions only, a legally appointed guardian may choose cash proceeds by making the Cash Election or Financial Services Shares by making the Share Election.

## 4.8 Financial Services Shares

Almost all eligible policyholders will have Financial Services Shares issued to them as their demutualization benefits. For detailed information about Financial Services and the Financial Services Shares, see Part 2 of this Policyholder Information Circular.

Financial Services Shares will be sold in connection with the initial public offering. Although the initial public offering is expected to take place shortly after demutualization, the Sun Life of Canada Board will determine the exact timing of the initial public offering. See section 4.13, "Initial Public Offering".

### *Principal and Secondary Jurisdictions*

*If you are resident in a Principal Jurisdiction...*

If you are resident in a Principal Jurisdiction (and you are not a trustee of a United Kingdom group pension scheme, a minor or a Designated Canadian Policyholder and you will not be receiving Policy Credits), you may elect to sell the Financial Services Shares issued to you in connection with the initial public offering. This election is referred to as the Cash Election. If you do not make the Cash Election, you will continue to own the Financial Services Shares issued to you. For more details on the Cash Election, see section 4.11, "Cash and Share Elections". If you are a minor, see below under "Other Jurisdictions and Minors – Mandatory Sale", or a Designated Canadian Policyholder, see section 4.9, "Cash from Sun Life of Canada", and if you will be receiving Policy Credits, see section 4.10, "Policy Credits".

*If you are resident in a Secondary Jurisdiction...*

If you are resident in a Secondary Jurisdiction (and you are not a minor) and you want to keep the Financial Services Shares issued to you, you must make an election to do so. This election is referred to as the Share Election. If you do not make the Share Election, your shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale. In that case, you will be deemed to have elected to sell your shares and that is referred to as the Default Cash Election. For more details on the Share Election, see section 4.11, "Cash and Share Elections".

*If you are a trustee of a United Kingdom group pension scheme...*

If you are a trustee of a United Kingdom group pension scheme, you will have Financial Services Shares issued to you as your demutualization benefits. However, unless you elect to keep the shares by making the Share Election, the shares will be sold for you in the initial public offering and you will receive the cash proceeds from this sale.

Financial Services may vary the manner in which eligible policyholders sell their Financial Services Shares if it would be to the advantage of those policyholders to do so. In that case, those eligible policyholders will be responsible for any additional fees or costs incurred.

### *Secondary Jurisdictions – Receiving Shares or Cash*

*You must confirm your address to get demutualization benefits*

If you are resident in a Secondary Jurisdiction, in order to receive Financial Services Shares or cash proceeds, you must have confirmed your address with Sun Life of Canada. If you did not do this by returning the form sent to you by Sun Life of Canada earlier this year, you can do so by signing and returning the Voting Form. The "Special Information" section of your Share Allocation Statement indicates whether Sun Life of Canada requires you to confirm your address. If you do not confirm your address, you and your demutualization benefits will be treated in the same manner as the demutualization benefits of a policyholder who cannot be located. See section 5.5, "Policyholders Who Cannot Be Located – Secondary Jurisdictions".

### *Special Cases*

If you are a government or government agency, special considerations apply. If your policy is subject to a title restriction, such as a lien, special rules apply. For example, if you are resident in a Secondary Jurisdiction but your policy is subject to a title restriction, you may still make the Share Election. However, in order for that election to be effective, you must have removed the title restriction or settled the entitlement to the receipt of benefits before the deadline for receipt of the Choices Form. If you do not, your Share Election will not be effective, Financial Services Shares will not be issued to you and you will receive cash directly from Sun Life of Canada less applicable withholding taxes. See section 5, "Distribution Rules", and section 11.1.2, "Non-Residents of Canada".

### *Other Jurisdictions and Minors – Mandatory Sale*

***If you are resident in an Other Jurisdiction or you are a minor...***

If you are resident in an Other Jurisdiction, all the Financial Services Shares issued to you will be sold for you in the initial public offering and you will receive the Mandatory Sale Proceeds from this sale.

If you are a minor, all the Financial Services Shares issued to you will also be sold for you in connection with the initial public offering and you will receive the Mandatory Sale Proceeds from this sale. This will apply to all minors, regardless of the jurisdiction in which they reside, unless a legally appointed guardian has made the Cash Election or Share Election on their behalf. A minor is an individual who has not reached the age of majority in the relevant jurisdiction by the deadline for receipt of the Choices Form and for whom Sun Life of Canada does not have notice of the appointment of a guardian.

4

***Why some eligible policyholders are required to sell***

In deciding whether eligible policyholders in any particular jurisdiction would be required to sell the shares issued to them on demutualization, Sun Life of Canada took into account the following factors:

- the costs of compliance with applicable securities laws in the jurisdiction compared with the number of eligible policyholders resident there,
- the ability of eligible policyholders in the jurisdiction to trade the shares easily after demutualization,
- whether Sun Life of Canada is still carrying on an active protection business in the jurisdiction, and
- in the case of minors, the legal difficulty in transferring their shares.

### *Amount of Mandatory Sale Proceeds*

The amount of Mandatory Sale Proceeds you receive will be equal to the number of Mandatory Sale Shares issued to you and sold on your behalf in connection with the initial public offering multiplied by the Initial Share Price. You will not have to take any additional steps to arrange for the sale of your shares – they will be sold on your behalf. Financial Services will deduct any applicable withholding taxes from your Mandatory Sale Proceeds. See section 11, "Tax Consequences for Policyholders".

### *Receiving Mandatory Sale Proceeds*

In order to receive Mandatory Sale Proceeds, you must have confirmed your address with Sun Life of Canada. If you did not do this by returning the form sent to you by Sun Life of Canada earlier this year, you can do so by signing and returning the Voting Form. Your Share Allocation Statement will indicate in the section entitled "Special Information" whether Sun Life of Canada requires you to confirm your address. If you do not confirm your address, you and your demutualization benefits will be treated in the same manner as the demutualization benefits of a policyholder who cannot be located. See section 5.5, "Policyholders Who Cannot Be Located – Other Jurisdictions and Minors". This requirement does not apply to minors in a Principal Jurisdiction.

Cheques will be mailed to policyholders shortly after completion of the initial public offering.

## 4.9 Cash from Sun Life of Canada

*If you are a Designated Canadian Policyholder and you elect to receive cash...*

If you are a Designated Canadian Policyholder, you will have Financial Services Shares issued to you as your demutualization benefits unless you elect to have your demutualization benefits in the form of cash by making the Cash Election. A Designated Canadian Policyholder is a holder of a Canadian group insurance policy or group pension policy or a holder of any other eligible policy who is not shown on Sun Life of Canada's records as an individual. If you make the Cash Election, Financial Services Shares will not be issued to you, but Sun Life of Canada will pay the cash directly to you in an amount equal to the number of Financial Services Shares allocated to you multiplied by the Initial Share Price.

In either case, you should consider your tax position carefully before electing to receive Financial Services Shares or cash from Sun Life of Canada. If you receive cash by making the Cash Election or receive Financial Services Shares which you sell in the public market after demutualization, the tax consequences to you, which relate primarily to receiving dividend income or realizing income or capital gains, may be very different. You may want to consult a tax advisor in order to consider fully these tax consequences. See section 11.1, "Tax Consequences for Policyholders – Canada".

If demutualization is approved, Sun Life of Canada will send the Choices Circular to you with detailed information about how to make the election, as well as the Choices Form on which you can make the election. The Choices Circular is expected to be mailed to you in late January or early February 2000.

In other limited circumstances, eligible policyholders will also receive demutualization benefits in the form of cash directly from Sun Life of Canada. See section 5.2, "Effect of Title Restrictions on Distribution of Demutualization Benefits – Secondary Jurisdictions and Other Jurisdictions".

Cash payments are expected to be funded indirectly through the issuance by Financial Services of Financial Services Shares in the initial public offering. Proceeds from the sale of those shares will be invested by Financial Services in Sun Life of Canada to enable Sun Life of Canada to make the cash payments.

### *Summary of Opinion as to Cash in Lieu of Financial Services Shares*

Morgan Stanley and RBC Dominion Securities have given an opinion as of September 24, 1999 to the Sun Life of Canada Board and to the Financial Services Board that the cash paid to eligible policyholders in lieu of Financial Services Shares in an amount equal to the Initial Share Price multiplied by the number of Financial Services Shares allocated to eligible policyholders will be, at the time of determination of the Initial Share Price, an appropriate substitute (as defined in the opinion) for those Financial Services Shares. A copy of this opinion, which describes the information relied on and sets out the applicable assumptions, limitations and qualifications, is attached as Schedule G to Part 1 of this Policyholder Information Circular. This opinion does not constitute a recommendation as to how any eligible policyholder should vote on the Demutualization Resolution or as to whether or not that policyholder should elect to receive cash in lieu of some or all of the Financial Services Shares allocated to that policyholder or to buy or sell Financial Services Shares. This is a summary only, and eligible policyholders should read the complete opinion in order to understand its terms.

## 4.10 Policy Credits

4

*You will receive Policy Credits if...*

You will receive Policy Credits instead of Financial Services Shares or cash if you are the holder of an eligible policy that is in force at the time of demutualization and that is one of the following types of tax-qualified retirement policies issued in the United States:

- an individual retirement annuity contract within the meaning of section 408(b) of the United States Tax Code, and
- a tax sheltered annuity contract within the meaning of section 403(b) of the United States Tax Code.

These contracts include custodial accounts under section 403(b)(7) and retirement income accounts under section 403(b)(9) of the United States Tax Code.

The status of these policies under the United States Tax Code could be jeopardized if the holder were to receive any form of demutualization benefits other than Policy Credits.

In the case of tax-qualified retirement policies that are no longer in force at the time of demutualization and in the case of some tax-qualified retirement contracts that are currently in "payout" status, Financial Services Shares will be issued to holders of those policies instead of applying Policy Credits to their policies. These eligible policyholders may then elect to sell their Financial Services Shares by making the Cash Election. However, if you own an eligible policy that is a tax-qualified retirement policy that terminates or goes into "payout" status after the Choices Form is mailed, you will not be able to make the Cash Election. Financial Services Shares will not be issued to holders of tax-qualified retirement policies in "payout" status if issuing shares would result in adverse tax consequences.

Policy Credits are expected to be funded indirectly through the issuance by Financial Services of Financial Services Shares in the initial public offering. Proceeds from the sale of those shares will be invested by Financial Services in Sun Life of Canada to enable Sun Life of Canada to fund the Policy Credits.

In any circumstances where Sun Life of Canada determines that, for tax reasons, the receipt of demutualization benefits in the form of Financial Services Shares or cash would be disadvantageous to an eligible policyholder, the eligible policyholder will receive Policy Credits as its demutualization benefits. Sun Life of Canada will notify these eligible policyholders of this change.

### *Form of Policy Credits*

There are different types of Policy Credits depending on the type of policy:

- for an individual or joint ordinary life insurance policy, the Policy Credit will be in the form of an increase in the paid-up addition cash value or dividend accumulation value, in accordance with the dividend election for the policy,
- for a policy that is in force as extended term life insurance under a non-forfeiture provision of a life insurance policy, the Policy Credit will be in the form of an extension of the coverage expiry date,
- for a policy that is a deferred annuity certificate, the Policy Credit will be in the form of an increase in the deferred annuity payment, and
- for a policy that is an individual accumulation annuity, the Policy Credit will be in the form of an increase in the account value.

Policy Credits will be applied to your policy shortly after demutualization.



SL-0182

### *Value of Policy Credits*

The value of Policy Credits will be determined by multiplying the number of Financial Services Shares allocated to you by the Initial Share Price. See section 4.15, "Estimated Value of Benefits". Policy Credits will be credited in the currency in which your policy is denominated. Sun Life of Canada will deduct any applicable withholding taxes you are required to pay on your Policy Credits. See section 11, "Tax Consequences for Policyholders".

### *Summary of Opinion on Policy Credits*

The Independent Actuary has given an opinion that, as of the date the Initial Share Price is determined, the Policy Credits will be appropriate substitutes for the Financial Services Shares. This opinion is attached as Schedule D to Part 1 of this Policyholder Information Circular.

## 4.11 Cash and Share Elections

### *Principal Jurisdictions – Cash Election*

*You may elect to sell your Financial Services Shares for cash...*

If you are resident in a Principal Jurisdiction (Canada, the United States, the United Kingdom, the Philippines or Bermuda), you may elect to sell the Financial Services Shares issued to you for cash by making the Cash Election. If you wish to sell Financial Services Shares in connection with the initial public offering and you were allocated less than 1,000 shares, you must make the Cash Election for all of them. If you were allocated 1,000 or more shares, you may make the Cash Election for any number of them. If you are a trustee of a United Kingdom group pension scheme or a minor or are receiving Policy Credits, you will not be able to make the Cash Election.

If you are a Designated Canadian Policyholder and you make the Cash Election, Financial Services Shares will not be issued to you, but Sun Life of Canada will pay cash directly to you. See section 4.9, "Cash from Sun Life of Canada". Other terms of the Cash Election apply to you on the same basis that they apply to other eligible policyholders.

### *Secondary Jurisdictions – Share Election*

*...or elect to keep your Financial Services Shares*

If you are resident in a Secondary Jurisdiction (Hong Kong, the Republic of Ireland, the Channel Islands or the Isle of Man) or you are a trustee of a United Kingdom group pension scheme, unless you make the Share Election and elect to keep the Financial Services Shares issued to you, they will be sold for you in the initial public offering. If you wish to make the Share Election and you were allocated less than 1,000 shares, you must elect to keep all of them. If you were allocated 1,000 or more shares, you may elect to keep any number of them. If you are a minor, you will not be able to make the Share Election.

### *Information about Elections*

*The Choices Circular will provide information about how to make the election*

You cannot make the Cash Election or Share Election now. If demutualization is approved at the Special Meeting, Sun Life of Canada will send the Choices Circular to you containing detailed information about how to make the election, as well as the Choices Form on which to make the relevant election. Sun Life of Canada expects to mail the Choices Circular to you in late January or early February 2000. In order for your election to be effective, the Choices Form must be completed and returned to Sun Life of Canada by the date to be specified on the Choices Form. Before making either election, you should carefully consider the tax consequences to you. You may also want to consult a tax advisor.

If a special ownership consideration applies to your policy, you may have to provide additional documentation to make the Cash Election or the Share Election. See section 5.3, "Special Ownership Considerations".

4

***What are the benefits and risks of owning Financial Services Shares?***

Before deciding whether to elect to keep or sell your Financial Services Shares, you should consider the relative benefits of keeping them or selling them for cash. You should also consider whether to sell Financial Services Shares at the time of the initial public offering or to hold them for investment or sale at a later date. The benefits of share ownership include the right to vote at meetings of shareholders of Financial Services and to receive shareholder dividends when declared by the Financial Services Board. You will also benefit financially if the Financial Services Shares increase in value.

But share ownership also involves risks. These risks include the risk that your shares may fall in value, dividends paid on the shares may be reduced or not paid at all, and additional share issuances by Financial Services may reduce your percentage ownership interest. For a full description of the risks involved in ownership of Financial Services Shares, see Part 2 of this Policyholder Information Circular under "Risk Factors". Your choice may also have tax and other consequences. See section 11, "Tax Consequences for Policyholders", and section 12, "Social Benefits Consequences for Policyholders".

The following chart summarizes some important issues to consider when deciding whether to keep or to sell Financial Services Shares for cash in connection with the initial public offering.

| | Financial Services Shares | Cash* |
|---|---|---|
| *Value of shares* | The value of Financial Services Shares may rise or fall from the Initial Share Price, depending on a number of factors. | The amount of cash you receive will be established by the initial public offering. It will equal the number of Financial Services Shares sold in connection with the initial public offering at your request multiplied by the Initial Share Price of the Financial Services Shares. |
| | The Financial Services Shares can be held as an investment and sold for cash at any time in the future. | If you sell all your Financial Services Shares, you will not benefit from any increase in the share price after the initial public offering, nor will you suffer from any fall in that price. |
| *Commissions or fees* | You will pay a commission or fee on any future sale of your Financial Services Shares. | You will not pay any commission or fee on Financial Services Shares sold in connection with the initial public offering.** |
| *Share dividends* | You will receive any dividends declared on your Financial Services Shares. | You will not receive dividends on the Financial Services Shares you sell. |
| *Ownership interests* | Through your Financial Services Shares, you will have an ownership interest in Financial Services. | If you sell all your Financial Services Shares, you will no longer have an ownership interest in Financial Services. |
| *Voting at shareholder meetings* | As a shareholder, you will have one vote per share at meetings of shareholders of Financial Services. | If you sell all your Financial Services Shares, you will not have a vote at meetings of shareholders of Financial Services. |
| *Tax* | Before making a choice, you should consider carefully the tax consequences to you of that choice. | Before making a choice, you should consider carefully the tax consequences to you of that choice. |

* Designated Canadian Policyholders who make the Cash Election will receive their cash directly from Sun Life of Canada.

** There may be a minimal fee payable by eligible policyholders in the Philippines related to the sale of shares through the Philippine Stock Exchange.



SL-0184

Sun Life of Canada is not making any recommendation as to whether you should keep or sell your shares. You must make this decision after taking into account the information in this Policyholder Information Circular and the Choices Circular, which you will be sent in late January or early February 2000, as well as any other relevant factors.

### *How Shares Will be Sold*

If you are resident in a Principal Jurisdiction (other than Canada) and make the Cash Election or are resident in a Secondary Jurisdiction or are a trustee of a United Kingdom group pension scheme and do not make the Share Election (and so are deemed to have made the Default Cash Election) or if you are a minor resident in a Principal Jurisdiction (other than Canada) or in a Secondary Jurisdiction, your Financial Services Shares will be sold in the initial public offering.

If you are resident in Canada and make the Cash Election (but are not a Designated Canadian Policyholder), or you are a minor resident in Canada, Financial Services will purchase and cancel your Financial Services Shares before the initial public offering. Financial Services will issue new Financial Services Shares in the initial public offering in an amount equal to and in replacement of the cancelled shares. The replacement shares will be sold in the initial public offering. If you are a Designated Canadian Policyholder and you make the Cash Election, you will receive your demutualization benefits directly from Sun Life of Canada in the form of cash.

Sun Life of Canada chose these methods because, in general, they result in preferable tax treatment for residents of the relevant countries. See section 11, "Tax Consequences for Policyholders".

You are required to decide in advance of the initial public offering whether you want to sell your Financial Services Shares so that the Underwriters, who will be offering those shares (or, in the case of Canadian eligible policyholders who make the Cash Election, the replacement shares issued by Financial Services) for sale to investors, will know the number of shares to be sold.

If eligible policyholders wish to sell more Financial Services Shares in this manner than can be sold in the initial public offering (including the shares replacing the shares purchased from Canadian eligible policyholders), some of those Financial Services Shares may not be sold. The reasons why this may happen are discussed under section 4.13, "Initial Public Offering – Size and Price of Initial Public Offering". If your Financial Services Shares are not sold, you can sell them after demutualization.

### *Receiving Cash Proceeds*

*Amount of cash you will receive*

The amount of cash proceeds from the sale of Financial Services Shares under the Cash Election or the Default Cash Election will be determined by multiplying the number of Financial Services Shares sold for you by the Initial Share Price at which the Financial Services Shares are sold in connection with the initial public offering. See section 4.15, "Estimated Value of Benefits". Financial Services will deduct any applicable withholding taxes you are required to pay on the sale of your Financial Services Shares in connection with the initial public offering. See section 11, "Tax Consequences for Policyholders".

Eligible policyholders whose shares are sold will be sent a cheque shortly after completion of the initial public offering. The cheque will be in the currency of the country in which the eligible policyholder is resident, except that eligible policyholders resident in Bermuda will receive United States dollars.

4

## 4.12 Representations of Eligible Policyholders Who Sell Shares in Connection with the Initial Public Offering

### *Non-Canadian Policyholders*

Non-Canadian eligible policyholders whose Financial Services Shares are sold in the initial public offering will be deemed to have:

- appointed Financial Services as their agent to effect the sale of their Financial Services Shares to the Underwriters on their behalf and to sign any documents and take any steps as are appropriate to transfer their shares to the Underwriters,
- agreed to sell their shares at the Initial Share Price,
- represented and warranted to Financial Services, Sun Life of Canada and the Underwriters that they own the shares and are able to sell them free of any charge, claim or other restriction on transfer, and
- represented and warranted to Financial Services, Sun Life of Canada and the Underwriters that they have the power, capacity and authority to sell the shares.

You cannot sell your shares unless you are able to make these statements, but in making them, you are entitled to assume that the shares are properly issued to you. If your policy is subject to a title restriction, such as a lien, special rules apply. See section 5, "Distribution Rules".

### *Canadian Policyholders*

Canadian eligible policyholders whose Financial Services Shares are sold in connection with the initial public offering will be deemed to have:

- appointed Financial Services as their agent to effect the sale of their Financial Services Shares to Financial Services on their behalf and to sign any documents and take any steps as are appropriate to transfer their shares to Financial Services,
- agreed to sell their shares at the Initial Share Price,
- represented and warranted to Financial Services that they own the shares and are able to sell them free of any charge, claim or other restriction on transfer, and
- represented and warranted to Financial Services that they have the power, capacity and authority to sell the shares.

You cannot sell your shares unless you are able to make these statements, but in making them, you are entitled to assume that the shares are properly issued to you. If your policy is subject to a title restriction, such as a lien, special rules apply. See section 5, "Distribution Rules".

## 4.13 Initial Public Offering

### *Plan for Initial Public Offering*

*It is expected that Financial Services Shares will be sold to the public in an initial public offering*

Before Sun Life of Canada demutualizes, Financial Services and Sun Life of Canada must enter into agreements – called underwriting agreements – with the Underwriters. The Underwriters are a group of investment dealers and investment banks with operations in major centres around the world. In the underwriting agreements, Financial Services and Sun Life of Canada will agree to complete the initial public offering shortly after demutualization, subject to certain standard conditions. As part of the initial public offering, Financial Services Shares will be sold to the public and Financial Services intends to apply to list the shares on the Stock Exchanges. The Financial Services Shares are expected to be sold in Canada, the United States, Europe and elsewhere. Although Financial Services expects to complete the initial public offering in the first half of 2000, the timing of the initial public

offering will be determined by the Financial Services Board and may be affected by various factors such as adverse market conditions or the financial performance of Sun Life of Canada.

### *Role of the Underwriters*

*The Underwriters' role is to find purchasers for the Financial Services Shares*

The Underwriters' role in the initial public offering is to buy all the Financial Services Shares to be sold and then arrange for investors to buy the Financial Services Shares from them. Before agreeing to buy the shares, the Underwriters will conduct a sales and marketing campaign to solicit interest from potential investors interested in buying Financial Services Shares. The sales and marketing campaign usually lasts a few weeks. Once completed, the Underwriters will agree to purchase the Financial Services Shares at a fixed price, which will be the Initial Share Price, and then offer the Financial Services Shares to the public at the same price.

4

By agreeing to purchase the Financial Services Shares and then to sell them in the initial public offering, the Underwriters assume the risk of finding purchasers for the shares. In return, they charge a fee for their services, which is called an underwriting fee or commission and which is charged on a per share basis. Financial Services will pay all these fees, including fees payable on Mandatory Sale Shares and Financial Services Shares subject to the Cash Election and the Default Cash Election which are sold in connection with the initial public offering.

*The initial public offering process will create a market for the Financial Services Shares*

The Underwriters' marketing efforts will increase awareness of Financial Services Shares with investors, especially among large institutional investors such as pension plans and mutual funds, and with stock analysts. This is designed to create an active trading market after the initial public offering, which will benefit policyholders who keep their Financial Services Shares and who may want to sell them in the future.

### *Size and Price of Initial Public Offering*

*The number of Financial Services Shares sold in the initial public offering and their price will depend on investor demand*

Financial Services and the Underwriters will decide how many Financial Services Shares will be sold in the initial public offering and the price at which they will be sold. In making this decision, Financial Services and the Underwriters will consider many factors, such as the likely strength of demand for the Financial Services Shares, market conditions at the time the shares are priced and Financial Services' future business prospects. For an estimate of the Initial Share Price for the Financial Services Shares if they had been offered in the initial public offering as of September 24, 1999, see section 4.15, "Estimated Value of Benefits". Financial Services will also ensure that the number of Financial Services Shares sold by non-Canadian eligible policyholders does not exceed a level required under the United States Tax Code to enable eligible policyholders in the United States to receive Financial Services Shares on a tax free basis.

Sun Life of Canada expects that the size of the initial public offering will be a minimum of 10% of the total market capitalization of Financial Services. In addition, Financial Services expects to grant to the Underwriters an option to acquire additional Financial Services Shares at the Initial Share Price to cover over-allotments and for market stabilization purposes. This type of option is a common feature of initial public offerings.

*If too many shares are subject to the Cash Election and Default Cash Election, not all of them may be sold*

If the demand for Financial Services Shares is greater than the number of shares eligible policyholders are required or elect to sell and the number required to fund indirectly cash payments to eligible policyholders (including Designated Canadian Policyholders) and Policy Credits, Financial Services may issue new Financial Services Shares in the initial public offering to satisfy the additional demand. The new Financial Services Shares will be sold for cash at the Initial Share Price. If the demand is not sufficient for that purpose or the number of Financial Services Shares to be sold by non-Canadian eligible policyholders would exceed a level required to enable eligible policyholders in the United States to receive their Financial Services Shares on a tax free basis, then the Financial Services Board will reduce the number of Financial Services Shares to be sold in connection with the initial public offering.

Ultimately, it is up to the Financial Services Board to decide the size of the initial public offering. In fact, it may decide to raise funds for use by Financial Services for general corporate purposes and payment of expenses of the initial public offering even though this could mean that not all eligible policyholders who made the Cash Election or Default Cash Election would have their shares sold in connection with the initial public offering. The Financial Services Board might take that course if it decided it was in the best interests of Financial Services to do so.

In any case where the Financial Services Board decides to reduce the number of Financial Services Shares to be sold in connection with the initial public offering, all the Mandatory Sale Shares will be sold first. After that, the Financial Services Board will take into account any shares Financial Services may wish to sell to fund cash payments and Policy Credits and to raise funds for its own use. If necessary, Financial Services will reduce the number of shares to be sold by non-Canadian eligible policyholders who elect to sell their shares until the aggregate number of shares to be sold by policyholders who are required or elect to sell their shares is reduced to the number that would enable eligible policyholders in the United States to receive their Financial Services Shares on a tax free basis. If the number of shares to be sold by eligible policyholders who are required or elect to sell their shares is still greater than the demand for the shares, Financial Services will further reduce the number of shares to be sold by eligible policyholders who elect to sell their shares until the number of shares to be sold matches the demand. In either case, the reduction will be made on the basis of the general principle that smallest holdings will be sold first. This is because those holders would incur proportionately higher selling costs than those with larger allocations. Under that principle, shares will be chosen for sale on the following basis:

- Financial Services Shares will be selected for sale in order of the size of the allocation of Financial Services Shares, beginning with the smallest allocation, and
- if not all the Financial Services Shares of a particular size allocation can be sold, those sold will be chosen by lot.

### *Prospectus*

*What is a prospectus?*

The Financial Services Shares sold in the initial public offering will be sold under a prospectus, a document that gives detailed information about a company whose shares are being sold to the public. The prospectus for the Financial Services Shares will be substantially the same as Part 2 of this Policyholder Information Circular, except that the information in the prospectus will be current to the date of the initial public offering.

### *Indemnity for Prospectus Liability*

*Financial Services and Sun Life of Canada will indemnify eligible policyholders selling Financial Services Shares in the initial public offering*

Eligible policyholders whose Financial Services Shares are sold to the Underwriters in the initial public offering may be liable under applicable securities laws or at common law to purchasers of those shares for any information in the prospectus that is incorrect or incomplete in a material way. Although Financial Services regards the risk of liability of eligible policyholders as very low, Financial Services and Sun Life of Canada will protect eligible policyholders against this risk by indemnifying and defending them against any liability that might arise. Also, Financial Services and Sun Life of Canada will agree not to make a claim against eligible policyholders to pay any liability Financial Services or Sun Life of Canada might have because of any incorrect or incomplete information in the prospectus. Sun Life of Canada will use reasonable efforts to include in the underwriting agreements a similar agreement on the part of the Underwriters. This liability will not apply to policyholders whose shares are purchased by Financial Services before the initial public offering. See section 4.11, "Cash and Share Elections - How Shares Will be Sold".



SL-0188

### *Completion of Initial Public Offering*

*Completion of initial public offering is subject to conditions*

Canadian and other securities regulators must approve the prospectus before the Underwriters can complete the sale of Financial Services Shares in the initial public offering. This approval is likely to occur on the date Sun Life of Canada demutualizes. Financial Services expects that it will take about five business days after the prospectus is approved to complete the initial public offering. The obligation of the Underwriters to purchase the Financial Services Shares for resale to investors and to complete the initial public offering will be subject to a number of standard conditions. If those conditions are not satisfied, the Underwriters will have the right not to proceed with the offering.

### *Summary of Opinion on Access to Public Markets*

Morgan Stanley and RBC Dominion Securities have given an opinion as of September 24, 1999 to the Sun Life of Canada Board and to the Financial Services Board that the measures to be taken by Financial Services in the two years after demutualization – using its reasonable commercial efforts to arrange for the listing of the Financial Services Shares on the Stock Exchanges and to maintain those listings for at least two years after demutualization – are likely to ensure that the eligible policyholders who receive Financial Services Shares will be able to sell those shares within the two years after demutualization on a public market. A copy of this opinion, which describes the information relied on and sets out the applicable assumptions, limitations and qualifications, is attached as Schedule H to Part 1 of this Policyholder Information Circular. This opinion does not constitute a recommendation as to how any eligible policyholder should vote on the Demutualization Resolution or as to whether or not that policyholder should elect to receive cash in lieu of some or all of the Financial Services Shares allocated to that policyholder or to buy or sell Financial Services Shares. This is a summary only, and eligible policyholders should read the complete opinion in order to understand its terms.

## 4.14 Listing on the Stock Exchanges

*Financial Services Shares are expected to be listed and sold on the Stock Exchanges*

Financial Services intends to apply to list the Financial Services Shares on The Toronto Stock Exchange, the New York Stock Exchange, the London Stock Exchange and the Philippine Stock Exchange. Financial Services may also apply to list the Financial Services Shares on The Montreal Exchange depending on the outcome of a proposal to reorganize stock exchanges in Canada. Under the proposal, equity shares of large companies would no longer be listed on the Montreal Exchange. If that were to occur, the Financial Services Shares will not be listed on the Montreal Exchange. Financial Services expects that the listing of the shares will occur on the first business day after Sun Life of Canada demutualizes.

Eligible policyholders whose Financial Services Shares are not sold in connection with the initial public offering may sell them from the date of listing in accordance with the normal settlement rules of the relevant Stock Exchange. The listings will make it easier for holders of Financial Services Shares to sell their shares. The Financial Services Shares will be bought and sold on the Stock Exchanges at prices which reflect the market trading value of Financial Services.

The volume of trading in Financial Services Shares and the prices at which they may be bought and sold on each Stock Exchange may vary. Generally, a more active market will mean that shares are more competitively priced and can be bought or sold in a timely manner. It is expected that the most active markets for the Financial Services Shares will be the Toronto and New York stock exchanges. The London and Philippine stock exchanges are expected to be less active.

## 4.15 Estimated Value of Benefits

### *Summary of Valuation Report and Valuation Opinion*

Sun Life of Canada retained Morgan Stanley and RBC Dominion Securities to prepare the Valuation Report. The Valuation Report, which is required to be prepared under the Canadian Demutualization Regulations, contains a range of estimated public equity market values for Financial Services (on the basis that this range is the same as that for Sun Life of Canada) based solely on estimated prices at which the Financial Services Shares could have been expected to be offered as of September 24, 1999 (the date of the valuation) in an initial public offering of Financial Services Shares conducted in a manner consistent with the Conversion Plan, as if the date of demutualization were September 24, 1999. This range was estimated at September 24, 1999 to have been between approximately Can.$5.6 billion and Can.$8.4 billion

4

***The Initial Share Price of a Financial Services Share is estimated to have been between Can.$14 and Can.$21 at September 24, 1999***

In the Valuation Report, the financial advisors also estimated that the Initial Share Price for the Financial Services Shares would have been between approximately Can.$14 and Can.$21 on the date of the valuation, based on Sun Life of Canada's advice that approximately 400 million Financial Services Shares would have been outstanding on that date.

These are summaries only, and eligible policyholders should read the complete Valuation Report and related opinion in order to understand their terms. A copy of the Valuation Report is attached as Schedule E to Part 1 of this Policyholder Information Circular and a copy of the related opinion is attached as Schedule F to Part 1 of this Policyholder Information Circular. Each describes the information relied on and sets out the applicable assumptions, limitations and qualifications. The Valuation Report and related opinion do not constitute a recommendation as to how any eligible policyholder should vote on the Demutualization Resolution or as to whether or not that policyholder should elect to receive cash in lieu of some or all of the Financial Services Shares allocated to that policyholder or to buy or sell Financial Services Shares.

### *Initial Share Price and Market Trading Price*

Sun Life of Canada advises eligible policyholders that this estimate of the range of the Initial Share Price is not a prediction of what the actual Initial Share Price will be on any other date, including the date of demutualization. Financial Services and the Underwriters still have to agree on the Initial Share Price and that is not expected to happen until some time in April 2000 at the earliest. In agreeing to a price, the Financial Services Board is not bound to set the price within that range. Sun Life of Canada also advises eligible policyholders that this estimate is also not a prediction of the price at which the Financial Services Shares will trade on the Stock Exchanges after completion of the initial public offering. The market trading price could be higher or lower than the estimated Initial Share Price. The actual Initial Share Price as well as the market trading price of the Financial Services Shares will be affected by a number of factors, including:

- the financial results and business prospects of Financial Services, including Sun Life of Canada, and its other businesses, and
- prevailing industry and general economic conditions and equity market values, including the prices at which shares of comparable public companies are trading.

The experience of Morgan Stanley and RBC Dominion Securities in large public offerings of common shares like the proposed initial public offering leads them to believe that the Initial Share Price would be priced at a discount from the expected fully distributed trading value — generally, this is the price at which the Financial Services Shares may be expected to trade within a short period after all marketing and short-term trading activities (of any person) related to the initial public offering have ended and full information about Financial Services is understood by the marketplace.

The factors affecting this discount include the lack of a public market trading record, the lack of investors' familiarity with Financial Services, the absolute size of the offering, the size of the offering relative to the overall capitalization of Financial Services, the performance of Sun Life and expectations as to the performance of Financial Services, marketing considerations, timing considerations and prevailing market conditions in the overall market, as well as the new issue market, at the time of the initial public offering.

## 4.16 Holding Your Financial Services Shares

*You will have to decide how to hold your Financial Services Shares*

If you are resident in a Principal Jurisdiction or a Secondary Jurisdiction and you decide to keep your Financial Services Shares, you will have to decide how to hold them. Although you do not have to decide now, Sun Life of Canada expects your options may include holding them in the Sun Life of Canada Share Account, having them registered in your own name or arranging to have them held through a broker. The Sun Life of Canada Share Account is a special account set up by Sun Life of Canada to allow eligible policyholders to hold their shares in a safe and convenient manner.

If demutualization is approved at the Special Meeting, Sun Life of Canada will send you more information about your options and their relative merits. That information will be included in the Choices Circular, which is expected to be sent to you in late January or early February 2000.

## 4.17 Share Selling Service

*The Share Selling Service will be convenient and cost-effective*

Financial Services intends to establish a Share Selling Service to allow participants who hold their Financial Services Shares in the Sun Life of Canada Share Account to sell them after the initial public offering. The purpose of the Share Selling Service is to provide those eligible policyholders with a convenient and cost-effective way to sell their shares after demutualization without the need to retain a broker. Sun Life expects that the Share Selling Service will start 30 days after completion of the initial public offering. You will not be able to purchase shares through this service.

Participants will be able to sell their Financial Services Shares at the current market price at the time of the sale. You will have to pay a fee when you sell your shares, which will not be subsidized by Financial Services or Sun Life of Canada. However, Financial Services expects to be able to negotiate fees for the use of the service that are lower than the fees you would pay if you hired your own broker, except perhaps a discount broker.

If demutualization is approved at the Special Meeting, Sun Life of Canada will send the Choices Circular to you which will contain more information about the Share Selling Service, including any limitations in the operation of the service and the jurisdictions in which it will be available. The Choices Circular is expected to be sent in late January or early February 2000. In each jurisdiction, the establishment and maintenance of the Share Selling Service is subject to Sun Life of Canada receiving satisfactory regulatory approval and to the feasibility of offering the service on a commercially reasonable basis. Financial Services intends to arrange to offer the service for at least two years but reserves the right to discontinue it at any time. If it does so, it will give at least 90 days' notice before it discontinues the service in any jurisdiction.

By establishing the Share Selling Service, Financial Services is not recommending that eligible policyholders elect to sell or keep their Financial Services Shares. If you are entitled to use the service, you should make that decision based on your own judgment. You may want to consult an investment advisor before making a decision.

## 4.18 Right to Receive Demutualization Benefits

If Sun Life of Canada demutualizes, all eligible policyholders will receive their demutualization benefits, regardless of whether they voted for or against the Demutualization Resolution.

## 5. DISTRIBUTION RULES

*If your policy is subject to a title restriction or special ownership consideration, your receipt of demutualization benefits may be affected*

Your right to receive demutualization benefits and to make the Cash Election or the Share Election may be affected if your eligible policy is subject to a title restriction or special ownership consideration. Sun Life of Canada has developed rules to address those circumstances. Sun Life of Canada has also developed rules to address eligible policyholders who cannot be found. Once you have read this section, if you have any further questions, please contact Sun Life of Canada at one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular.

### 5.1 Title Restrictions

*Your Share Allocation Statement indicates if there is a title restriction on your policy*

5

Your Share Allocation Statement tells you whether Sun Life of Canada's records indicate that your policy is subject to a title restriction. You may already have received a separate letter from Sun Life of Canada on this matter.

#### *Assignments as Security and Liens or Other Security Interests*

If Sun Life of Canada's records show you have assigned your eligible policy in connection with a loan or other matter for purposes of security or it is subject to a lien or other security interest, you will continue to be treated as the owner of the policy. For example, you may have borrowed money against your policy. In that case, Sun Life of Canada must receive a release from your lender of any entitlement it may have to demutualization benefits before distributing any demutualization benefits to you. Sun Life of Canada has asked lenders to eligible policyholders in the United Kingdom, Ireland and Malta to provide this release. In other jurisdictions it is your responsibility to obtain one and provide it to Sun Life of Canada. If Sun Life of Canada has not received a release, this is indicated in the "Special Information" section of your Share Allocation Statement. A policy loan or advance from Sun Life of Canada is not subject to this rule. Sun Life of Canada will retain your demutualization benefits until the title restriction has been removed or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Tax Liens and Garnishments*

If Sun Life of Canada's records show your eligible policy is subject to a lien for unpaid taxes or a court-ordered garnishment - a proceeding in which Sun Life of Canada is required by order of a court to pay amounts due under a policy to a creditor of the policyholder and not to the policyholder - Sun Life of Canada will retain your demutualization benefits. They will not be released until Sun Life of Canada has received notice that the tax lien or garnishment has been removed or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Bankruptcy*

If Sun Life of Canada's records show you have become bankrupt or are subject to other insolvency proceedings, Sun Life of Canada will retain your demutualization benefits. They will not be released until Sun Life of Canada receives satisfactory evidence of discharge of bankruptcy and your trustee in bankruptcy is not asserting an ongoing interest in the demutualization benefits or the question of entitlement to the demutualization benefits has been otherwise settled to Sun Life of Canada's satisfaction.

#### *Other Title Restrictions*

In all cases of title restrictions, including other circumstances not identified above, the Sun Life of Canada Board reserves the right to deal with demutualization benefits in its discretion in good faith and acting reasonably.



SL-0192

## 5.2 Effect of Title Restrictions on Distribution of Demutualization Benefits

Unless you satisfy Sun Life of Canada that any title restriction has been removed or any question of entitlement to receive benefits has been settled by the date to be set out on the Choices Form, your demutualization benefits will be dealt with as follows.

### *Principal Jurisdictions*

If you are resident in a Principal Jurisdiction and Financial Services Shares are issued to you, they will be held on your behalf in the Sun Life of Canada Share Account or by another nominee of Financial Services, and they will not be sold even if you elect to sell them under the Cash Election. Dividends paid on those shares will also be held on your behalf. The shares will not be transferred out of the Sun Life of Canada Share Account, and any dividends paid on the shares will be retained, until the title restriction is removed or otherwise settled to Sun Life of Canada's satisfaction.

### *Secondary Jurisdictions and Other Jurisdictions*

If you are resident in a Secondary Jurisdiction or an Other Jurisdiction, Financial Services Shares will not be issued to you (even if you made the Share Election) or sold in the initial public offering. Instead, Sun Life of Canada will hold on your behalf cash equal to the amount you would have received if Financial Services Shares had been issued to you and sold on your behalf in the initial public offering less any applicable withholding taxes. Sun Life of Canada will hold this cash on your behalf until the title restriction is removed or otherwise settled to Sun Life of Canada's satisfaction.

### *Policy Credits*

If you are entitled to Policy Credits, they will be applied to your policy even if your policy is subject to a title restriction.

### *Interest*

You will not receive interest on cash held on your behalf or on dividends paid on Financial Services Shares.

## 5.3 Special Ownership Considerations

*If your policy is subject to a special ownership consideration, special requirements may need to be satisfied*

If your policy is subject to a special ownership consideration, you may need to provide additional documentation before you can make the Cash Election or the Share Election.

Where applicable, the required documentation and the completed Choices Form must be returned by mail to the address shown on the Choices Form and received at that address by the date to be set out on the Choices Form.

### *Principal Jurisdictions and Secondary Jurisdictions*

#### *Deceased Eligible Policyholders*

If an eligible policyholder dies, the estate of the deceased policyholder will be eligible to receive the demutualization benefits.

*How estate representatives can elect the form of demutualization benefits*

The legally appointed personal representative of the deceased policyholder will generally be permitted to make the Cash Election or Share Election on behalf of the estate by completing the Choices Form provided that:

- the policyholder did not do so before he or she died, and
- the personal representative provides satisfactory evidence of appointment to Sun Life of Canada - for example, letters probate, letters testamentary or letters of administration.

If the requested documents are not received by the date to be set out on the Choices Form, the estate will receive demutualization benefits as follows:

- if the address for the estate on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the estate on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the estate in the initial public offering.

*Trustees*

***How trustees can elect the form of demutualization benefits***

If you hold an eligible policy as a trustee, you may make the Cash Election or Share Election, provided all the trustees for that eligible policy sign the Choices Form.

If the names of all the trustees do not appear on the Choices Form or if any of the names have changed, you must provide to Sun Life of Canada the relevant trust documentation which names the trustees – for example, the trust declaration or the trust agreement. This documentation must be returned with the completed Choices Form.

5

If the required documents are not received by the date to be set out on the Choices Form, the trustee will receive demutualization benefits as follows:

- if the address for the trustee on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the trustee on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the trustee in the initial public offering.

For United Kingdom group pension schemes, special rules apply. See section 4.8, "Financial Services Shares – Principal and Secondary Jurisdictions", and for the tax treatment of United Kingdom group pension schemes, see section 11.3, "Tax Consequences for Policyholders – United Kingdom".

*Joint Owners*

***How joint owners can elect the form of demutualization benefits***

If an eligible policy is owned by more than one person, the joint owners may make the Cash Election or Share Election attributable to that eligible policy. To make the Cash Election or Share Election, all the joint owners must sign the Choices Form.

If the joint owners do not return the Choices Form by the date to be set out on the Choices Form, the joint owners will receive demutualization benefits as follows:

- if the address for the joint owners on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the joint owners on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the joint owners in the initial public offering.

The joint owners of shares will be treated as "tenants in common". As tenants in common, if one of the joint owners dies, his or her interest in the Financial Services Shares passes to the estate of the joint owner who has died, and not to the surviving owners. If you would like to change your ownership to joint tenants with the right of survivorship, you should contact the relevant transfer agent listed in Part 1 of this Policyholder Information Circular after demutualization. As joint tenants with the right of survivorship, if one of the joint owners dies, his or her interest in the Financial Services Shares passes to the surviving joint owners.



SL-0194

*Powers of Attorney/Guardians of Property*

*How attorneys and guardians can elect the form of demutualization benefits*

An attorney or a legal guardian of property may make the Cash Election or Share Election on behalf of an eligible policyholder. The attorney or legal guardian must return the completed Choices Form with the documentation relating to his or her appointment.

If the required documents are not received by the date to be set out in the Choices Form, the eligible policyholder will receive demutualization benefits as follows:

- if the address for the eligible policy on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the eligible policy on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the eligible policyholder in the initial public offering.

*Minors*

*Minors cannot elect to keep their shares*

Eligible policyholders who have not attained the age of majority in their jurisdiction of residence by the deadline for receipt of the Choices Form will have their shares sold on their behalf in connection with the initial public offering. However, if a guardian of property has been appointed, that person may make the Cash Election or Share Election. See "Powers of Attorney/Guardians of Property".

*Corporations*

*How corporations can elect the form of demutualization benefits*

In order for a corporation to make a valid Cash Election or Share Election, the Choices Form must be signed by a duly authorized officer or attorney of the corporation. The corporation must also provide a copy of its signing resolution (or by-law) along with a certificate of incumbency with the completed Choices Form.

If the required documents are not received by the date to be set out in the Choices Form, the corporation will receive demutualization benefits as follows:

- if the address for the corporation on Sun Life of Canada's records is in a Principal Jurisdiction, in the form of Financial Services Shares, and
- if the address for the corporation on Sun Life of Canada's records is in a Secondary Jurisdiction, in the form of cash proceeds from Financial Services Shares sold on behalf of the corporation in the initial public offering.

***Other Jurisdictions***

In all cases of special ownership, eligible policyholders in the Other Jurisdictions will be required to sell their Financial Services Shares in the initial public offering and will receive Mandatory Sale Proceeds.

***Other Special Ownership Considerations***

In all cases of special ownership, including other circumstances not identified here, the Sun Life of Canada Board reserves the right to deal with demutualization benefits in its discretion in good faith and acting reasonably.

***Governments and Government Agencies***

Under the Canadian Insurance Act, a Canadian or non-Canadian government or government agency is not entitled to be registered as a shareholder or to vote any shares held by it. To avoid contravening these statutory provisions, governments or government agencies in a Principal Jurisdiction or Secondary Jurisdiction should sell their Financial Services Shares.

## 5.4 Conflicting Rights or Fiduciary Duties

***Fiduciary duties***

Sun Life of Canada may withhold demutualization benefits allocated to an eligible policyholder if it knows that another person, other than the eligible policyholder, may have rights to the demutualization benefits, that an eligible policyholder may be subject to trust or fiduciary duties or obligations or is a nominee with respect to the demutualization benefits or that a regulatory authority may impose terms and conditions with respect to the benefits. Sun Life of Canada will distribute the demutualization benefits to the policyholder or other person entitled to them once Sun Life of Canada is satisfied that the question of entitlement has been resolved or that the policyholder will comply with its trust or fiduciary duties or obligations or any terms and conditions imposed on it.

## 5.5 Policyholders Who Cannot Be Located

5

### *Entitlement to Demutualization Benefits*

***Who is a lost policyholder?***

Eligible policyholders whose current addresses are not known to Sun Life of Canada - in Part 1 of this Policyholder Information Circular, called lost policyholders - are still entitled to demutualization benefits. This section explains how Sun Life of Canada will deal with their demutualization benefits.

### *Principal Jurisdictions*

If Financial Services Shares are issued to a lost policyholder in a Principal Jurisdiction (other than to a trustee of a United Kingdom group pension scheme or a minor), they will be registered in the name of the lost policyholder and will not be sold in connection with the initial public offering. However, a share certificate will not be issued until that policyholder ceases to be a lost policyholder. The trustee of a United Kingdom group pension scheme can avoid this result if it gives Sun Life of Canada information about its current address and makes the Share Election before the deadline for receipt of the Choices Form.

Financial Services Shares issued to lost policyholders in the Principal Jurisdictions and not claimed will be cancelled on the date that is 35 months after the date Sun Life of Canada demutualizes. However, if legally entitled to do so, these policyholders can still claim their Financial Services Shares after that date and new Financial Services Shares will be issued to them at that time. Lost policyholders will also be entitled to claim dividends declared on their shares before cancellation and an amount equal to the amount of dividends to which the policyholder would have been entitled after the date of cancellation had the shares not been cancelled, less any applicable withholding taxes. Any new Financial Services Shares issued to lost policyholders will take into account the effect of any consolidation, subdivision or reclassification of the Financial Services Shares since demutualization.

If at the time these policyholders claim their Financial Services Shares they reside in an Other Jurisdiction, they will be required to sell their shares. They will receive the cash proceeds from the sale of their shares based on the then current market price of the Financial Services Shares, after deducting commissions and any applicable withholding taxes. The Financial Services Board will decide how this sale will occur.

If the common shareholders of Financial Services exchange or convert their Financial Services Shares for securities, property or cash after cancellation of a lost policyholder's Financial Services Shares but before the lost policyholder claims its Financial Services Shares, the lost policyholder will not be issued Financial Services Shares. Instead, it will receive the same type of consideration (securities, property or cash) that other common shareholders previously received or, at Financial Services' discretion, an equivalent amount in cash.

### *Secondary Jurisdictions*

All lost policyholders whose addresses are shown on Sun Life of Canada's records to be in a Secondary Jurisdiction will have their Financial Services Shares sold on their behalf in the initial public offering and will generally be entitled to the cash proceeds from this sale less any applicable withholding taxes. In order to avoid the sale of their shares, they must give Sun Life of Canada information about their current address and make the Share Election before the deadline for receipt of the Choices Form.

### *Other Jurisdictions and Minors*

All lost policyholders whose addresses are shown on Sun Life of Canada's records to be in an Other Jurisdiction or who are minors will have their Financial Services Shares sold on their behalf in connection with the initial public offering and will generally be entitled to the cash proceeds from this sale less any applicable withholding taxes.

### *Policy Credits*

Lost policyholders who are entitled to Policy Credits will have their Policy Credits applied to their policies as of the date of demutualization.

### *Claiming Demutualization Benefits*

Lost policyholders must confirm their current mailing address to Sun Life of Canada and submit other documentation as may be required before being able to claim their Financial Services Shares, any amounts payable with respect to dividends on those shares or the cash proceeds from the sale of those shares.

There is an exception where Financial Services Shares or cash claimed by lost policyholders has been delivered or transferred to a government or governmental agency, authority or official under escheat, abandoned or unclaimed property legislation. In that case, Financial Services will only provide or pay to the claiming policyholder Financial Services Shares and any amounts payable with respect to dividends or, if those shares have been sold, the proceeds of the sale, which may be recoverable by Financial Services, on the request of the lost policyholder, from the government or governmental agency, authority or official.

### *Interest*

In all cases, lost policyholders will not receive interest on amounts owing to them or on dividends declared on their Financial Services Shares.

# 6. HOW TO VOTE

The purpose of the Special Meeting is to enable eligible policyholders to consider and to vote on the Demutualization Resolution. Before Sun Life of Canada can demutualize, at least two-thirds of the votes cast by eligible policyholders at the Special Meeting must be cast in favour of the Demutualization Resolution.

## 6.1 Only Eligible Policyholders are Entitled to Vote

*Who can vote?*

Only eligible policyholders (and their proxyholders) are entitled to vote at the Special Meeting. Each eligible policyholder is entitled to one vote at the Special Meeting, regardless of the number or size of eligible policies owned. If an eligible policy is jointly-owned, the joint owners together are entitled to one vote only.

## 6.2 There are Two Ways to Vote

*Vote by proxy through the mail or in person*

You can vote on the Demutualization Resolution in one of two ways:

- by completing, signing, dating and returning by mail, or delivering, the Voting Form included with this Policyholder Information Circular, or
- by attending the Special Meeting in person.

6

### *Vote by Proxy through the Mail*

If you are not able to attend the Special Meeting, you can appoint another person to vote on your behalf - known as appointing a proxyholder - by completing the Voting Form.

You can choose another person to vote on your behalf in one of two ways.

#### *Appoint the Person Named in the Voting Form to Vote on Your Behalf*

You can appoint the Chairman of the Special Meeting to vote on your behalf at the Special Meeting. Except in unforeseen circumstances, the Chairman of the Special Meeting will be Donald A. Stewart, who is also the Chairman of the Sun Life of Canada Board and Chief Executive Officer of Sun Life of Canada. As the Chairman is already named on the form, you can appoint the Chairman simply by completing and signing the Voting Form and returning it in the manner noted under section 6.4, "Returning the Voting Form". The Chairman will be at the Special Meeting and is prepared to vote on your behalf at the Special Meeting.

*You should specify how you want your proxyholder to vote at the Special Meeting*

If you appoint the Chairman and designate a Yes or No vote on your Voting Form, the Chairman must cast that Yes or No vote on your behalf regarding the Demutualization Resolution in accordance with your choice. **If you return the Voting Form, but do not specify how you wish to vote, the Chairman will vote Yes on your behalf for the Demutualization Resolution and will vote on any other matter that may properly come before the Special Meeting in accordance with the best judgment of the Chairman.**

#### *Appoint Another Person to Vote on Your Behalf*

**You can appoint any other person to vote on your behalf at the Special Meeting. To do so, you should print that person's name in the blank space on the Voting Form.** That person does not have to be a policyholder of Sun Life of Canada, but to vote on your behalf, that person must attend the Special Meeting. If you have not mailed the Voting Form, that person must bring the completed Voting Form to the Special Meeting in order to vote at the Special Meeting.

The person you appoint must vote in accordance with your instructions as indicated on the Voting Form. If you do not specify how you wish your proxyholder to vote, the proxyholder may vote either Yes or No on your behalf on the Demutualization Resolution, at the discretion of the proxyholder.

***Attend the Special Meeting***

You may attend the Special Meeting in person and vote. In order to register to vote in person at the Special Meeting, you should bring with you to the Special Meeting as identification your Share Allocation Statement.

If you are disabled and require special assistance at the Special Meeting, please call Sun Life of Canada at 1 800 SUN LIFE (1 800 786-5433) from in Canada and collect to 1 506 862-2197 from outside Canada.

## 6.3 Discretionary Authority

***The Chairman has discretion to vote on new matters at the Special Meeting***

If any changes are made to matters in the notice of Special Meeting or if any new matters properly come before the Special Meeting, and if you have appointed the Chairman of the Special Meeting to vote on your behalf, the Chairman will have the discretion to vote on those matters in accordance with the best judgment of the Chairman. At the date of this Policyholder Information Circular, the management of Sun Life of Canada knows of no such changes or other matters.

## 6.4 Returning the Voting Form

To be valid, your completed, signed and dated Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. If you do not date your Voting Form, it will be deemed to be dated the date it is mailed to you.

You can also deliver your Voting Form to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999.

If the Special Meeting is adjourned, your Voting Form (if not already received by Monday, December 13, 1999) must have arrived at least 48 hours (excluding Saturdays, Sundays and holidays) before any continuation of the Special Meeting after an adjournment.

***Faxed forms will not be accepted***

Voting Forms returned by fax will not be accepted.

If you have lost your Voting Form, you can obtain a new one by calling one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular.

## 6.5 Revocation of Voting Forms

***You may revoke previous Voting Forms***

You may revoke your Voting Form by mailing or delivering a new Voting Form with a later date. New Voting Forms can be obtained by calling one of the telephone numbers listed on the inside back cover of this Policyholder Information Circular. In order to be valid and revoke a previous Voting Form, the new Voting Form must be received at the address shown on the reverse of the Voting Form by Monday, December 13, 1999. You may also revoke your Voting Form by giving written instructions, signed by you or by someone who is authorized by you in writing to do so, and:

- mailing the written instructions to Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada or to the address shown on the inside back cover of your guide for receipt by Monday, December 13, 1999, or

- depositing the written instructions at Sun Life of Canada's head office, Secretary's Department, 150 King Street West, 14th Floor, Toronto, Canada by 5:00 p.m. (Toronto time) on Monday, December 13, 1999 or with the Chairman of the Special Meeting before the start of the Special Meeting or any continuation of the Special Meeting after an adjournment.

You may also revoke your Voting Form in any other manner permitted by law.

New Voting Forms or written instructions revoking Voting Forms sent by fax will not be accepted.

## 6.6 Results of Vote

*CIBC Mellon Trust Company will supervise registration and voting*

CIBC Mellon Trust Company will supervise registration and voting by eligible policyholders and proxyholders at the Special Meeting. The results of the vote will be announced at the Special Meeting and afterwards by news release.

## 6.7 Solicitation of Votes

*Sun Life of Canada will solicit votes*

This Policyholder Information Circular is being provided to you as part of the solicitation of proxies by management of Sun Life of Canada to be used at the Special Meeting and at any continuation of the Special Meeting after an adjournment. Sun Life of Canada expects that the solicitation will be made primarily by mail but votes may also be solicited personally by its employees and through advertising. Sun Life of Canada may also engage firms to assist it with the solicitation of votes from eligible policyholders.

## 7. POLICYHOLDER COMMUNICATIONS

*Sun Life of Canada is committed to answering any questions on demutualization*

Sun Life of Canada encourages all eligible policyholders to vote. To help you make an informed decision, Sun Life of Canada wants to ensure that you receive complete information about demutualization.

To achieve these objectives, Sun Life of Canada has provided, and is continuing to provide, information about demutualization to participating policyholders and other interested parties through the initiatives described below.

### 7.1 News Releases

On January 27, 1998, Sun Life of Canada issued a news release announcing that the Sun Life of Canada Board had directed management to prepare a plan for demutualization. Since that initial news release, Sun Life of Canada has issued further news releases as plans for the demutualization progressed and information concerning the demutualization became available. Sun Life of Canada will continue to provide information to keep participating policyholders informed and up-to-date on the progress of demutualization.

### 7.2 Annual Report to Policyholders

Sun Life of Canada's first direct communication about demutualization was its 1997 Annual Report to Policyholders, sent to policyholders worldwide in 1998. In that report, Sun Life of Canada advised of the Sun Life of Canada Board's decision to consider demutualization.

### 7.3 Information Brochures

A consumer brochure was produced in 1998 for distribution through Call Centres, the Web site and Sun Life of Canada's sales representatives. The brochure provided an overview of demutualization and was available in English, French and Chinese.

### 7.4 Information Mailing to Policyholders

Sun Life of Canada sent information packages on demutualization to holders of individual participating policies between January and May 1999. The packages included a brochure on demutualization and what it might mean for eligible policyholders and a Policyholder Information Form, which asked policyholders to confirm information such as their names and addresses.

### 7.5 Market Research Study

Sun Life of Canada hired an international research firm, AC Nielsen-DJC Research, to conduct a market research study to determine participating policyholders' level of knowledge and understanding of demutualization. In January to May 1999, telephone interviews were conducted with several hundred participating policyholders in each of Canada, the United States, the United Kingdom and Hong Kong. In addition, several hundred face-to-face interviews were conducted in the Philippines. The research was used to determine whether Sun Life of Canada's eligible policyholders had any unanswered questions or concerns about demutualization that should specifically be addressed in future communications. Frequently asked questions related to the value of benefits policyholders would receive and the timing and tax treatment of receipt of benefits.

### 7.6 Notice to Policyholders with Lapsed Policies

From December 1998 to February 1999, Sun Life of Canada notified policyholders whose policies had lapsed that they had the opportunity to exercise their contractual right to reinstate their policies and, by doing so, possibly to become eligible to receive demutualization benefits.

## 7.7 Policyholder Information Sessions

Policyholder information sessions were held in major centres in Canada, Manila and Hong Kong in February and March 1999. The purpose of the sessions was to provide information on Sun Life of Canada's possible demutualization to policyholders and other interested observers, to obtain comments from them on demutualization and to provide them with the opportunity to ask questions of Sun Life of Canada senior management. Issues and concerns identified at these sessions were taken into account in preparing the Conversion Plan and this Policyholder Information Circular.

## 7.8 Call Centres

*Call Sun Life of Canada with any questions on demutualization*

In 1998, Sun Life of Canada expanded its Canadian Call Centre and established Call Centres in other jurisdictions to answer questions of eligible policyholders and other interested parties on demutualization. Sun Life of Canada's Call Centres provide an on-going, "live" resource to answer any questions about demutualization. The Call Centres can be reached by calling the following numbers:

| Country | If calling within the country | If calling from outside the country |
|---|---|---|
| Canada | 1 800 786-5433 | 1 506 862-2197 |
| United States | 1 888 891-8145 | 1 617 483-4207 |
| United Kingdom | 0845 606-6622 | 44 117 980-7258 |
| Philippines | 878-9800 (Metro Manila)<br>1 800 1 888-8786 (Provinces) | 632 878-9800 |
| Hong Kong | 2103-8988 | 852 2103-8188 |

If you do not live in one of these countries, you should call one of the numbers in the right hand column.

7

## 7.9 Web Site

Sun Life of Canada's Web site can be found at www.sunlife.com or if you are in the United Kingdom at www.sunlifeofcanada.com.

*Sun Life of Canada's Web site has a demutualization section*

Sun Life of Canada's Web site provides user-friendly access to information about demutualization. The main page of Sun Life of Canada's corporate Web site, as well as the homepages of each of Sun Life of Canada's national office sites, contains a demutualization link that leads to the special section on demutualization. Policyholders can submit questions or express concerns or views about the demutualization process through the Web site.

For your convenience, Sun Life of Canada's Web site also has a link to OSFI's Web site.

## 7.10 United Kingdom and Related Transfers

In August 1999, Sun Life of Canada mailed to policyholders affected by the proposed transfer of its United Kingdom insurance business to Sun Life Assurance Company of Canada (U.K.) Limited, a wholly-owned subsidiary of Sun Life of Canada, a circular describing that transfer. In Part 1 of this Policyholder Information Circular, this company is referred to as Sun Life of Canada (U.K.). Policyholders were entitled to appear at a hearing to consider the transfer, which was held before the High Court of Justice in England on September 21, 1999.

Also in August 1999, Sun Life of Canada mailed to policyholders affected by the proposed transfers of its insurance business in the Republic of Ireland, Guernsey and Jersey, also to Sun Life of Canada (U.K.), circulars describing those transfers. Policyholders were entitled to appear at a court hearing held in Jersey, which was held on September 27, 1999, and are entitled to appear at court hearings in Ireland and Guernsey, which are scheduled for October 11 and 12, 1999, respectively.

## 7.11 Hong Kong Transfer

In October or November 1999, Sun Life of Canada expects to mail to its policyholders in Hong Kong a circular describing the proposed transfer of its insurance business in Hong Kong to Sun Life of Canada (International) Limited, a wholly-owned subsidiary of Sun Life of Canada. In Part 1 of this Policyholder Information Circular, this company is referred to as Sun Life of Canada (International). Policyholders are entitled to appear at a hearing to consider the transfer, which is expected to be held before the High Court of Hong Kong in November or December 1999.

## 7.12 Philippines Transfer

Sun Life of Canada expects to write to its policyholders in the Philippines later this year or early in 2000 to describe the transfer of the assets of its insurance business in the Philippines. This transfer is planned to occur shortly before or as soon as reasonably practicable after demutualization.

## 7.13 Further Information

If you would like additional copies of this Policyholder Information Circular, any of the documents accompanying it or any other public disclosure document of Sun Life of Canada, you may telephone Sun Life of Canada at one of the Call Centre numbers listed in section 7.8, e-mail Sun Life of Canada through the Web site or visit the demutualization section on Sun Life of Canada's Web site.

# 8. FINANCIAL SERVICES AND CORPORATE REORGANIZATION

## 8.1 Financial Services

*Financial Services will become the holding company of Sun Life of Canada*

As part of the demutualization, Financial Services will become the holding company of Sun Life of Canada and Sun Life of Canada will become a wholly-owned subsidiary of Financial Services. Financial Services, a company incorporated under the Canadian Insurance Act, is currently a wholly-owned subsidiary of Sun Life of Canada.

Subject to compliance with any applicable regulatory requirements, Financial Services may carry on other activities as the Financial Services Board may approve. Financial Services does not have any present intention to issue any insurance policies or otherwise to insure risks directly.

Financial Services expects to change its name to Sun Life Financial Services of Canada Inc. before the Special Meeting. However, before it can do so, it must comply with the requirements of the Canadian Insurance Act relating to name changes.

## 8.2 Corporate Reorganization

*Sun Life of Canada will be reorganized on demutualization*

Sun Life of Canada intends to complete a corporate reorganization in connection with the demutualization, subject to receipt of regulatory and other approvals. After completion of the corporate reorganization, its United Kingdom and related life insurance business and its life insurance business in the Philippines and Hong Kong will be carried on by subsidiaries of Sun Life of Canada.

*Effect of reorganization in Canada, United States, Philippines and Bermuda*

Sun Life of Canada will continue as the insurer for all policies outstanding before demutualization in Canada, the United States, Bermuda and the Philippines and will be the insurer for all new policies issued in Canada, the United States and Bermuda after demutualization.

### *United Kingdom and Related Insurance Business*

*Sun Life of Canada will reorganize its United Kingdom and related insurance operations*

At the time of demutualization, Sun Life of Canada will transfer its United Kingdom insurance business and that of Confederation Life Insurance Company (U.K.) Limited to Sun Life of Canada (U.K.). At the same time, Sun Life of Canada will transfer its insurance businesses in the Republic of Ireland and the Channel Islands to Sun Life of Canada (U.K.).

The transfers will take place in compliance with applicable United Kingdom and other relevant insurance legislation or, if the Irish and Channel Islands transfers have not been approved at the time of demutualization, those transfers will occur through indemnity reinsurance. The transfers require local regulatory and court approvals, as well as the approval of the Minister of Finance of Canada.

A full description of the transfers is contained in separate circulars sent to United Kingdom and other affected policyholders in August 1999.

As part of the regulatory process to approve the transfers of its United Kingdom and related insurance business, Sun Life of Canada has:

- consulted extensively with applicable regulatory authorities in the United Kingdom, Ireland and Canada,
- received reports from the appointed actuary for the United Kingdom insurance business which conclude that the transfers make adequate provision for meeting the reasonable benefit expectations of affected policyholders and that the transfers will not adversely affect the security of policyholders to any material extent, and
- received reports from independent actuaries in the United Kingdom and Canada which conclude that the reasonable expectations of policyholders should not be adversely affected by the transfers and that the terms of the transfers ensure adequate security of policyholders.

Case 1:04-cv-01726-FMA Document 82-2 Filed 06/11/2007 Page 63 of 70

hearing for the purpose of approving the U.K. transfer took place before the High Court of Justice in England on September 21, 1999. At that time, the Court approved the U.K. transfer. The Jersey transfer has also received court approval. Court hearings to approve the Irish and Guernsey transfers have been scheduled for October 11 and 12, 1999, respectively. The U.K. and other transfers will become effective only if the demutualization of Sun Life of Canada is completed.

After the transfers become effective, Sun Life of Canada (U.K.) will replace Sun Life of Canada as the insurer under policies issued both before and after demutualization in those jurisdictions.

### *Philippines*

*Sun Life of Canada will reorganize its operations in the Philippines*

Subject to regulatory approval, Sun Life of Canada will transfer the assets of its insurance business in the Philippines (other than its policies) to Sun Life of Canada (Philippines), Inc., a wholly-owned subsidiary of Sun Life of Canada. In this Policyholder Information Circular, this company is called Sun Life of Canada (Philippines). This transfer is planned to occur shortly before or as soon as reasonably practicable after demutualization.

At the time of transfer, Sun Life of Canada will arrange for its policy obligations in the Philippines to be reinsured by Sun Life of Canada (Philippines) through indemnity reinsurance. Indemnity reinsurance is a form of reinsurance by which the reinsurer of a policy agrees to indemnify the issuer of the policy in return for a payment or payments from the issuer.

Sun Life of Canada will continue to be ultimately responsible for all policies issued in the Philippines and outstanding before the transfer. Any policies issued in the Philippines after the transfer will be issued by Sun Life of Canada (Philippines) and it and not Sun Life of Canada will be the insurer under those policies.

### *Hong Kong*

*Sun Life of Canada will reorganize its insurance operations in Hong Kong*

Subject to regulatory and court approval, at the time of or as soon as reasonably practicable after demutualization, Sun Life of Canada will transfer its insurance business in Hong Kong to Sun Life of Canada (International) Limited, a wholly-owned subsidiary of Sun Life of Canada. In this Policyholder Information Circular, that company is called Sun Life of Canada (International).

The transfer will take place in compliance with applicable Hong Kong insurance legislation. The transfer requires regulatory and court approval in Hong Kong, as well as the approval of the Minister of Finance of Canada.

A full description of the Hong Kong transfer will be contained in a circular which is expected to be sent to Hong Kong policyholders in October or November 1999.

As part of the Hong Kong regulatory process, Sun Life of Canada:

- has consulted extensively with regulatory authorities in Hong Kong and Canada, and
- has received reports from independent actuaries in Hong Kong and Canada which conclude that policyholder security under the Hong Kong transfer will be more than acceptable, the Hong Kong transfer preserves the contractual rights of holders of participating policyholders, and the Hong Kong transfer will preserve the reasonable expectations of future policy benefits under participating policies being transferred to Sun Life of Canada (International).

A hearing for the purpose of approving the Hong Kong transfer is expected to take place before the High Court of Hong Kong in November or December 1999. The Hong Kong transfer will become effective only if the demutualization of Sun Life of Canada is completed.

After the transfer becomes effective, Sun Life of Canada (International) will replace Sun Life of Canada as the insurer under policies issued both before and after demutualization in Hong Kong.

### *Other Jurisdictions*

Sun Life of Canada will continue as insurer under policies issued both before and after demutualization in all other jurisdictions.

### *Alternative Arrangements*

If at the time of demutualization the planned transfer to a subsidiary of Sun Life of Canada of insurance business in Hong Kong, Ireland or the Channel Islands has not taken place, Sun Life of Canada, rather than the subsidiary, will establish and maintain the special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization in the jurisdiction. Those arrangements will be structured on a basis determined by the Appointed Actuary with the approval of OSFI and will remain in place pending completion of the transfer of insurance business.

8

# 9. ONGOING RIGHTS OF PARTICIPATING POLICYHOLDERS

## 9.1 Protection of Policyholders' Interests

*Your interests under your policy will continue to be protected*

After demutualization, you will continue to own your policy. In addition, policyholders' interests under their policies will continue to be protected after demutualization.

Your policy benefits will not be reduced and your policy premiums will not be affected by the demutualization.

Your policy dividends – which in some jurisdictions, including the United Kingdom, are known as bonuses – will continue to be declared from time to time at the discretion of the Sun Life of Canada Board or the directors of a Sun Life of Canada subsidiary. As has always been the case, however, policy dividends are not guaranteed.

As an additional protection, Sun Life of Canada and its subsidiaries will put in place special arrangements designed to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under participating policies issued before demutualization.

The remainder of section 9 summarizes how policyholders' interests are protected. For a more detailed description, see section 10, "Summaries of Actuarial Opinions", along with Schedule C and Schedule D to Part 1 of this Policyholder Information Circular.

## 9.2 Restructuring of Participating and Other Accounts

Sun Life of Canada is required by the Canadian Insurance Act to maintain accounts for its participating policies which are separate from those for its non-participating policies and other businesses. Sun Life of Canada maintains these accounts for each major territory in which it does business. Each of these accounts records the policies, assets, liabilities and any surplus attributable to that type of business in the territory.

Sun Life of Canada will complete the corporate reorganization and restructure its accounts on demutualization so that future earnings which are not required to support participating policies issued before demutualization will be available to Financial Services and its shareholders. Careful consideration has been given to the amounts of assets, and earnings on assets, which must be maintained by Sun Life of Canada and its insurance subsidiaries to support these participating policies and to special arrangements designed to protect reasonable expectations of policyholders in respect of future dividends and other non-guaranteed policy benefits, and to meet contractual obligations, under these policies.

9

### *Participating Policies of Sun Life of Canada (Canada, United States and Philippines)*

*Assets will be allocated to accounts for contractual obligations*

Following demutualization, Sun Life of Canada will continue to be responsible for all participating policies issued before demutualization other than those being transferred to its subsidiaries in the United Kingdom and Hong Kong. The Conversion Plan will require Sun Life of Canada to establish and maintain territorial accounts for these policies issued in Canada (including Bermuda and certain other countries), the United States and the Philippines. Sun Life of Canada will allocate sufficient assets in each of these territorial accounts to protect reasonable expectations of future policy dividends and other non-guaranteed policy benefits, and to meet its contractual obligations, under these policies.

*Reasonable future dividend expectations will be protected*

Within each territorial account for participating policies issued before demutualization, a separate special sub-fund, known as the individual sub-fund, will be set up for the individual life insurance policies in the account. These policies receive policy dividends, when declared from time to time by the Sun Life of Canada Board. Sun Life of Canada will allocate assets to these individual sub-funds on a basis that reflects the current scale of policy dividends. Future dividends will be based on the future experience of those policies. Sun Life of Canada will keep records of the policy activity in these individual sub-funds, including premiums, claims and policy dividends, as well as the investment income, taxes, and expenses relating to these policies. The Conversion Plan will permit Sun Life of Canada to use the amounts in these individual sub-funds only for the purpose of supporting those policies, including to pay benefits, expenses, taxes and policy dividends. Accordingly, following demutualization, policy dividends should be similar to the policy dividends that would have been paid if demutualization had not occurred.

*Accounts for new participating policies*

Sun Life of Canada will also establish territorial accounts for participating policies issued by it after demutualization in Canada (including Bermuda) and the United States. Sun Life of Canada will allocate assets in each of these territorial accounts which it believes will be sufficient to support new participating policies issued by it after demutualization. In the Philippines, participating policies will be issued after demutualization only by Sun Life of Canada (Philippines), a wholly-owned subsidiary of Sun Life of Canada.

*Shareholders' account*

All the assets of Sun Life of Canada that are not set aside in its accounts for participating policies or transferred to its insurance subsidiaries in the corporate reorganization will be allocated to the account for its shareholder, Financial Services. In this way, eligible policyholders will benefit from the fact that the value of the Financial Services Shares allocated to them will reflect the value of the assets which are not required to protect reasonable expectations of future policy dividends and other non-guaranteed benefits, or to meet contractual obligations, under participating policies issued before demutualization. Eligible policyholders who continue to be shareholders of Financial Services will also benefit from the availability of earnings on these assets allocated to the shareholders' account. All Sun Life of Canada's assets will continue, nevertheless, to be available following demutualization to meet its policy obligations.

9

### *Transferred Participating Policies (United Kingdom and Hong Kong)*

*Safeguards for participating policies transferred to subsidiaries*

Arrangements will be put in place in Sun Life of Canada's subsidiaries in the United Kingdom and Hong Kong that are designed to safeguard participating policies issued by Sun Life of Canada before demutualization and transferred to those subsidiaries. These arrangements will protect reasonable expectations of future policy dividends, or bonuses, and other non-guaranteed policy benefits, under these transferred policies. All the assets of these subsidiaries will nevertheless be available following demutualization to meet their respective policy obligations. If the transfer of any of the insurance businesses of Sun Life of Canada in the Republic of Ireland, the Channel Islands or Hong Kong is not completed at the time of demutualization, Sun Life of Canada will put arrangements in place to protect the interests of the affected policies until the transfer of business is made.

***Account Arrangements Generally***

The arrangements with respect to the establishment and maintenance of the accounts for participating policyholders and shareholders of Sun Life of Canada and its insurance subsidiaries are complex. Following the initial restructuring of the participating accounts on demutualization and the corporate reorganization, there will be some limited circumstances in which transfers between these accounts and the shareholders' accounts for Sun Life of Canada and its insurance subsidiaries may be required or permitted. For a more detailed description, including information about the expected sizes of these accounts, see Part 2 of this Policyholder Information Circular under "Restructuring of Participating and Other Accounts on Demutualization".

## 9.3 Dividend Policy for Participating Policies

***Participating Policies of Sun Life of Canada (Canada, United States and Philippines)***

On demutualization, Sun Life of Canada will have a dividend policy for participating individual life insurance policies which reflects the new policyholder account arrangements and protections for policies issued by it before demutualization. This dividend policy, which is described below, will provide that policy dividends will be calculated separately for these policies and for participating individual life insurance policies issued by Sun Life of Canada after demutualization. Policies issued by Sun Life of Canada (Philippines) after the corporate reorganization will not be covered by this dividend policy.

*The basis for determining dividends on pre-demutualization policies will be substantially the same as before demutualization*

The full text of this dividend policy for participating individual life insurance policies is in Part 3 of Exhibit D of the Conversion Plan attached as Schedule A to Part 1 of this Policyholder Information Circular. Under this policy, participating individual life insurance policies sold by Sun Life of Canada before demutualization will be eligible to receive policy dividends which will be paid from the individual sub-funds maintained for the benefit of these policies, as described under section 9.2, "Restructuring of Participating and Other Accounts". The basis for determining policy dividends on these policies will be substantially the same as before demutualization. Policy dividends will generally reflect the experience of these policies over time, including the investment return, taxes and administrative expenses in connection with these policies and the rate of mortality of persons insured under these policies.

9

Policy dividends on participating policies issued by Sun Life of Canada after demutualization will be distributed only from the earnings of those policies in the accounts maintained separately for them. These dividends will generally depend on such factors as the growth in the number of those policies, the experience of those policies and the capital requirements of Sun Life of Canada.

Under its dividend policy, the Sun Life of Canada Board will continue to establish dividend scales from time to time, and review them at least once each year.

***Transferred Participating Policies (United Kingdom and Hong Kong)***

Sun Life of Canada's subsidiaries in the United Kingdom and Hong Kong will establish dividend, or bonus, policies for the benefit of participating policies transferred to them, taking into account the special protections put in place for those policies. Policyholders in those countries have received or will receive separate information about the dividend policies and special protections which will apply to them.



SL-0209

## 9.4 Voting Rights

***How will demutualization affect voting rights of participating policyholders?***

After demutualization and completion of the corporate reorganization, participating policyholders and shareholders of Financial Services will have the following voting rights.

***Participating Policyholders***

*Canada, United States and Bermuda*

Policyholders holding participating policies issued by Sun Life of Canada in Canada, the United States and Bermuda will continue to have the right to vote as a participating policyholder of Sun Life of Canada.

*United Kingdom and Related Jurisdictions*

Policyholders holding participating policies issued by Sun Life of Canada in the United Kingdom, the Republic of Ireland, the Channel Islands and the Isle of Man will no longer have the right to vote, including on any matters involving Sun Life of Canada. That is because those policies will no longer be participating policies of Sun Life of Canada, but will be participating policies of Sun Life of Canada (U.K.).

*Philippines*

Policyholders holding participating policies issued by Sun Life of Canada in the Philippines will continue to have the right to vote as participating policyholders of Sun Life of Canada.

*Hong Kong*

Policyholders holding participating policies issued by Sun Life of Canada in Hong Kong will no longer have the right to vote, including on any matters involving Sun Life of Canada. That is because those policies will no longer be participating policies of Sun Life of Canada, but will be participating policies of Sun Life of Canada (International).

*Other Jurisdictions*

Policyholders holding participating policies issued by Sun Life of Canada in all other jurisdictions will continue to have the right to vote as a participating policyholder of Sun Life of Canada.

9

***Participating Policyholders Voting in Sun Life of Canada***

Each participating policyholder entitled to vote in Sun Life of Canada will have one vote, regardless of the number of or size of policies owned.

*Voting Together with Financial Services*

After demutualization, participating policyholders will vote together with Financial Services, the sole shareholder of Sun Life of Canada, on all matters on which participating policyholders and shareholders are entitled to vote in Sun Life of Canada, other than certain matters described below. Financial Services will be entitled to one vote for each common share of Sun Life of Canada held, or a total of approximately 400 million votes. It is expected that Sun Life of Canada will have approximately 750,000 participating policyholders who will be entitled to vote in Sun Life of Canada after demutualization.



SL-0210

*Voting Separately*

Participating policyholders will be entitled separately to elect at least one-third of the Sun Life of Canada Board. Financial Services will be entitled separately to elect the remainder of the Sun Life of Canada Board. Each member of the Sun Life of Canada Board has been designated as a policyholders' director or a shareholders' director for the remaining term of his or her office after demutualization, as follows:

| Policyholders' Directors | Shareholders' Directors |
|---|---|
| Dian N. Cohen | Prof. M. Colyer Crum |
| Bertin F. Nadeau | Stanley H. Hartt |
| Ronald W. Osborne | The Hon. Donald S. Macdonald |
| Sir Bob Reid | John M. MacLeod |
| William W. Stinson | Angus A. MacNaughton |
| W. Vickery Stoughton | John D. McNeil |
| | Alfred Powis |
| | Donald A. Stewart |
| | David G. Vice |
| | Jeannine Guillevin Wood |

***These individuals will be the members of the Sun Life of Canada Board***

Participating policyholders will also be entitled to vote separately on various fundamental corporate transactions such as an amalgamation or a sale of all or substantially all the assets or policies of Sun Life of Canada.

***Shareholders of Financial Services***

Eligible policyholders who receive Financial Services Shares in the demutualization and continue to hold them will be entitled to vote as shareholders of Financial Services. The other shareholders of Financial Services, who will include investors who purchase Financial Services Shares in the initial public offering, in the market or in future offerings of Financial Services Shares, will also have the right to vote. Each shareholder of Financial Services will be entitled to one vote for each Financial Services Share held.

9

## 10. SUMMARIES OF ACTUARIAL OPINIONS

### 10.1 Actuarial Opinions

All eligible policyholders are urged to read the Actuarial Opinions and to consider them in the context of all the other information in this Policyholder Information Circular.

### 10.2 Appointed Actuary

Sun Life of Canada has appointed Robert Wilson, a Fellow of the Canadian Institute of Actuaries, as the Appointed Actuary. Under the Canadian Insurance Act, part of the Appointed Actuary's role is to value Sun Life of Canada's policy liabilities at the end of each financial year and to provide an opinion as to whether the amount of policy liabilities makes appropriate provisions for all obligations to policyholders.

The Canadian Demutualization Regulations require the Appointed Actuary to give an opinion on specified actuarial aspects of the demutualization that affect policyholders.

***Summary of Opinion of Appointed Actuary***

In the opinion of Robert Wilson, in his capacity as the Appointed Actuary:

- the benefits to be provided to eligible policyholders and the method used to apportion the value of Sun Life of Canada among eligible policyholders are fair and equitable to those policyholders,
- the assets which will be allocated to the participating accounts of Sun Life of Canada on the demutualization of Sun Life of Canada are adequate:
  - to meet contractual obligations under the policies in respect of which the participating accounts are maintained,
  - to meet the reasonable expectations of the holders of those policies in respect of future dividends and other non-guaranteed policy benefits, and
  - to support future participating policies expected to be allocated to those accounts, and
- the future financial strength and vitality of Sun Life of Canada and the security of policyholders will not be materially adversely affected by demutualization.

The opinion of the Appointed Actuary is attached as Schedule C to Part 1 of this Policyholder Information Circular.

10

### 10.3 Independent Actuary

As part of any major transaction, OSFI generally requires insurance companies to select an independent actuary to consider and explain the impact of the proposed transaction on policyholders and to provide an opinion that the proposed transaction complies with the requirements of the Canadian Insurance Act.

The Canadian Demutualization Regulations require an independent actuary to give an opinion on the same actuarial aspects of the demutualization as the Appointed Actuary is required to address. Nicholas Bauer of Eckler Partners Ltd. is the Independent Actuary.



SL-0212